**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

RICHARD LYNN SCOTT,

      Plaintiff,

      v.                              Civil Action No.

BOOZ ALLEN HAMILTON, INC.,
a Delaware corporation with its
principal place of business in Virginia

CHARLES EDWARD LITTLEJOHN,
an individual,

      Defendants

_____/

## COMPLAINT

Plaintiff Richard Lynn Scott ("Plaintiff" or "Scott"), by and through undersigned counsel, brings this action against Defendants Booz Allen Hamilton, Inc. ("Booz Allen") and Charles Edward Littlejohn ("Littlejohn"), and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action arising from Booz Allen's systemic failure to safeguard confidential taxpayer information. Booz Allen's failure to secure its computer systems, monitor and restrict employee access, and properly limit access to Internal Revenue Service ("IRS") networks and databases resulted in the unlawful access, theft, and public dissemination of confidential tax return information concerning more than four hundred thousand American taxpayers, including Plaintiff and his family.

2. This indifference on the part of Booz Allen, a company entrusted with highly sensitive IRS data, resulted in a massive data theft perpetrated by its employee, Littlejohn.

1

3. Littlejohn's theft was not an isolated incident. Over an extended period and on multiple occasions, Littlejohn used elevated credentials granted to him through his employer, Booz Allen, to access, extract, copy, and ultimately disclose hundreds of thousands of confidential tax returns and tax-return records, including Plaintiff's, without authorization and in violation of federal law ("the Breach").

4. The data "provides an unprecedented look inside the financial lives" of American taxpayers, including Plaintiff. [1]

5. Littlejohn disclosed portions of the stolen data to *ProPublica* and other media outlets. *ProPublica* thereafter published articles based on that information, including at least one discussing Plaintiff's tax return information.

6. The Breach has been described in legal commentary as the largest known data theft in IRS history. [2]

7. At all relevant times, Littlejohn's access to IRS systems was made possible solely through Booz Allen and its federal contracts with the Department of the Treasury ("The Treasury") and the IRS. Booz Allen hired, vetted, supervised, and retained Littlejohn, granted him privileged access to unmasked taxpayer databases, and was responsible for implementing and maintaining administrative, technical, and supervisory safeguards governing that access. The unlawful disclosure of Plaintiff's tax return information was not merely the result of an isolated act. It was enabled by systemic safeguard failures and negligent supervision within the contractor framework under which Booz Allen operated.

---

[1] *See* Jesse Eisinger, Jeff Ernsthausen & Paul Kiel, *The Secret IRS Files: Trove of Never-Before-Seen Records Reveal How the Wealthiest Avoid Income Tax*, PROPUBLICA (June 8, 2021), https://www.propublica.org/article/the-secret-irs-files-trove-of-never-before-seen-records-reveal-how-the-wealthiest-avoid-income-tax
[2] *See* Joseph Viviano, Action Steps Following the Largest-Ever IRS Data Breach, JDSUPRA (Apr. 25, 2024), https://www.jdsupra.com/legalnews/action-steps-following-the-largest-ever-6242298/

8. Accordingly, Plaintiff brings this action to recover damages resulting from: (i) Booz Allen's negligence, including negligent hiring, supervision, retention, and failure to implement adequate safeguards to protect confidential taxpayer information; (ii) Booz Allen's negligent misrepresentations regarding the adequacy of its data protection controls; (iii) the invasion of Plaintiff's privacy through the public disclosure of his confidential financial information; and (iv) Littlejohn's intentional, malicious, and outrageous misconduct.

## JURISDICTION AND VENUE

9. This is a civil action over which this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), as the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

10. Plaintiff Richard Lynn Scott is a natural person and a citizen of the State of Florida. Plaintiff is domiciled in Naples, Florida and is therefore a citizen of Florida for purposes of diversity jurisdiction.

11. Defendant Booz Allen Hamilton, Inc. is a corporation organized under the laws of the State of Delaware and maintains its principal place of business in McLean, Virginia. Accordingly, Booz Allen Hamilton, Inc. is a citizen of Delaware and Virginia for purposes of 28 U.S.C. § 1332.

12. Upon information and belief, Defendant Charles Edward Littlejohn is a citizen of a state other than Florida. Littlejohn is currently incarcerated at the Federal Correctional Institution in Marion, Illinois.

13. Complete diversity of citizenship exists between Plaintiff and Defendants.

14. The amount in controversy exceeds $75,000, exclusive of interest and costs, as Plaintiff seeks compensatory damages for economic loss, including security and monitoring costs, identity-protection expenses, other mitigation measures undertaken in response to the breach, and punitive

damages where permitted by law.

15. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District and Plaintiff suffered injury in this District.

## PARTIES

16. Plaintiff is a natural person and citizen of the State of Florida. He resides in Naples, Florida. Plaintiff is a duly elected United States Senator for the State of Florida and has long served as a business leader and public servant. A navy veteran and self-made entrepreneur, he built one of the nation's largest healthcare companies prior to his public service. Plaintiff brings this action solely in his individual capacity to recover for personal injuries arising from the unlawful access and disclosure of his confidential tax return information.

17. Defendant Booz Allen is a Delaware corporation with its principal place of business in McLean, Virginia. Booz Allen is a large government contractor providing consulting, cybersecurity, data analytics, and information technology services to federal agencies, including The Treasury and the IRS.[3] At all relevant times, Booz Allen employed thousands of personnel nationwide and was entrusted with access to highly sensitive federal systems and confidential taxpayer information in connection with its IRS contracts.

18. Defendant Littlejohn is a natural person who, at various times between approximately 2008 and 2021, was employed by Booz Allen and assigned to perform work under Booz Allen's contracts with The Treasury and the IRS. Upon information and belief, Littlejohn is a citizen of a

---

[3] The IRS is organized to carry out the responsibilities of the Secretary of the Treasury under 26 U.S.C. § 7801. That provision vests the Secretary with "full authority to administer and enforce" the internal revenue laws and empowers the Secretary to create agencies to enforce those laws. Pursuant to this grant, the IRS was established to administer and enforce the internal revenue statutes. 26 U.S.C. § 7801 (granting the Secretary of the Treasury authority to administer and enforce the internal revenue laws); *see* Internal Revenue Service, *The Agency, Its Mission & Statutory Authority*, IRS.GOV, https://www.irs.gov/about-irs/the-agency-its-mission-and-statutory-authority (last visited Feb. 27, 2026).

4

state other than Florida. At all relevant times, Booz Allen granted Littlejohn access to IRS systems and databases containing confidential tax returns and return information of thousands of American taxpayers, including Plaintiff's confidential tax return information. Littlejohn performed work at IRS facilities, including the New Carrollton Federal Building in Lanham, Maryland, which houses significant IRS information technology functions. On or about October 12, 2023, Littlejohn pled guilty in the United States District Court for the District of Columbia to one count of unauthorized disclosure of tax return information, in violation of 26 U.S.C. § 7213(a)(1), arising from his unlawful inspection and disclosure of confidential taxpayer information obtained through his employment with Booz Allen. On or about January 29, 2024, he was sentenced to a five-year term of imprisonment and is presently serving that sentence.

## FACTUAL ALLEGATIONS

### A. Booz Allen Makes Billions as a Federal Cybersecurity Contractor

19. Booz Allen holds itself out as a global leader in cybersecurity and risk mitigation. In fact, it claims to represent every federal agency and to be the "leading provider of cybersecurity to the federal government." As such, Booz Allen asserts the ability to understand advanced cybersecurity threats and vulnerabilities across various platforms.[4]

20. In February 2018, the Department of Homeland Security awarded Booz Allen a six-year contract valued at approximately $621 million to develop and implement the Continuous Diagnostics and Mitigation ("CDM") program, a government-wide cybersecurity initiative that included protection of IRS systems.

21. Also in 2018, Booz Allen secured an additional task order under the CDM and Evolving

---

[4] *Booz Allen Recognized as the Leading Provider of Cybersecurity to the Federal* Government, BOOZ ALLEN HAMILTON (Nov. 19, 2024), https://investors.boozallen.com/news-releases/news-release-details/booz-allen-recognized-leading-provider-cybersecurity-federal
.

Federal Enterprise Network Defense ("DEFEND") Program valued at approximately $1.03 billion, requiring it to enhance cybersecurity capabilities for multiple federal agencies, including The Treasury and the IRS. In securing this task order, Booz Allen claimed to be "the leading provider of professional security services." It touted its ability to design innovative cyber solutions to enable agencies to detect evolving threats, make informed risk-based decisions, and act expeditiously.[5]

22. In 2023, Booz Allen obtained a position under the IRS Enterprise Development Operations Services ("EDOS") contract, a multi-year agreement potentially worth billions of dollars, to assist in modernizing IRS systems and supporting tax administration operations.

23. Through these contracts, Booz Allen agreed to perform cybersecurity, IT, and tax administrative work for the IRS. Accordingly, it was entrusted with access to IRS databases containing confidential tax returns and return information of millions of American taxpayers, including Plaintiff's confidential tax return information.

24. Booz Allen affirmatively undertook responsibility to safeguard sensitive federal data systems, including sensitive tax returns collected by the IRS.

**B. Booz Allen's Documented Cybersecurity Failures and Insider Risks**

25. Despite its cybersecurity contracts, Booz Allen had a documented history of significant internal security failures.

26. For more than a decade, repeated incidents revealed weaknesses in Booz Allen's data protection practices, including unauthorized disclosures, internal data exposure, and insider misuse of sensitive information.

27. These incidents made clear that insider threats—particularly involving employees with

---

[5] *Booz Allen Leads New Frost & Sullivan Security Report,* BOOZ ALLEN HAMILTON (Aug. 1, 2019), https://newsroom.boozallen.com/news-releases/news-release-details/booz-allen-leads-new-frost-sullivan-security-report-1/

elevated system access—were foreseeable risks requiring robust monitoring, auditing, and safeguards.

28. Upon information and belief, Booz Allen failed to implement adequate monitoring mechanisms to detect anomalous or mass queries of IRS taxpayer databases by its personnel.

29. Booz Allen also failed to implement reasonable restrictions or real-time auditing oversight sufficient to detect or prevent large-scale extraction of taxpayer return information.

30. The risk that an employee with broad system access could misuse confidential data was not theoretical; it was a well-known and widely documented cybersecurity threat across federal systems.

31. That risk was underscored by prior high-profile insider incidents involving Booz Allen personnel. In 2013, Edward Snowden, then a Booz Allen employee assigned to work on National Security Agency ("NSA") systems, used his authorized credentials to access and download thousands of classified documents, which he later disclosed to journalists. The disclosures were widely described as one of the most significant intelligence leaks in U.S. history. Snowden was subsequently charged under the Espionage Act and fled the United States. He currently resides in Russia, where he was granted citizenship in 2022.

32. Then again in 2016, Booz Allen computer analyst Harold Martin was arrested for stealing approximately 50 terabytes of classified government data while holding elevated system access. Authorities characterized the incident as the largest theft of classified information in United States history. The stolen information allegedly included the personal details of government employees, "Top Secret" email chains, and "specific operational plans against a known enemy of the United States and its allies." [6] Martin later pled guilty to unlawfully retaining national defense

---

[6] Dustin Volz, *Booz Allen Is Reviewing Security After the Arrest of a Second NSA Contractor*, TIME (Oct. 27, 2016), https://time.com/4548734/booz-allen-harold-martin-edward-snowden

information.

33. In 2017, an unnamed Booz Allen employee left a cache of more than 60,000 files on a publicly accessible Amazon server, including passwords to a federal government system containing sensitive information, and the security credentials of a lead senior engineer. The roughly 28GB of data also contained at least a half dozen unencrypted passwords belonging to government contractors with Top Secret Facility Clearance. It remained available for unrestricted public access for at least three months. This breach was purportedly related to Booz Allen's government customer, the National Geospatial-Intelligence Agency.

34. Another significant data breach occurred in 2022. Booz Allen allowed a single employee to download, among other things, the names, Social Security numbers, and date of birth for thousands of Booz Allen employees. According to Booz Allen, the personnel information had been improperly stored on an internal SharePoint site.

35. Booz Allen's failures here did not occur in a vacuum. They reflect a broader pattern of disregarding core obligations attendant to its role as a government contractor. In 2023, for example, Booz Allen agreed to pay the United States more than $377 million to resolve allegations of improper billing on government contracts.

36. These incidents involved insider misuse of privileged access credentials which is precisely the type of risk presented when contractors grant expansive database access to employees without sufficient monitoring, auditing, and supervisory controls.

37. Following such widely publicized insider breaches, it was reasonably foreseeable that employees entrusted with elevated access to sensitive federal databases, including IRS taxpayer systems, could misuse that access absent robust safeguard mechanisms.

38. Despite the significant prior insider incidents and the well-documented risks they

8

exposed, Booz Allen continued to assign employees broad system access privileges without implementing adequate anomaly detection, bulk-query monitoring, or real-time extraction safeguards sufficient to detect and prevent misuse.

39. Plaintiff had no role in selecting Booz Allen as a federal contractor and had no authority to negotiate or influence the terms of Booz Allen's contracts with the IRS or The Treasury. Instead, Plaintiff was legally obligated to provide his tax information to the IRS and reasonably relied on the government and its contractors to implement adequate protections.

**C. Littlejohn's Misuse of Privileged Access While Employed by Booz Allen**

40. Between approximately 2018 and 2021, Littlejohn was employed by Booz Allen and assigned to perform work under Booz Allen's contracts with The Treasury and the IRS.

41. Booz Allen hired, vetted, trained, supervised, and retained Littlejohn for these positions and granted him access credentials to IRS systems containing unmasked taxpayer return information.

42. In connection with his assigned duties, Booz Allen provided Littlejohn with hardware, software, network credentials, and database permissions that enabled him to query, inspect, and retrieve confidential tax return information.

43. Booz Allen permitted Littlejohn access to unmasked taxpayer data under 26 U.S.C. § 6103(n), which permits contractors to access return information under specified safeguards.

44. Littlejohn performed his IRS-related work pursuant to Booz Allen's federal contracts and under its supervision. Booz Allen assigned his projects, evaluated his performance, and maintained authority over his continued employment and access privileges throughout the relevant period. The scope of his database access was granted through the contractor framework under which Booz Allen operated, and Booz Allen retained the ability to restrict, monitor,

9

suspend, or revoke that access.

45. While employed by Booz Allen and operating under its credentials, Littlejohn accessed and extracted confidential tax return information belonging to numerous American taxpayers, including that of Plaintiff. Upon information and belief, these extractions included bulk or repeated database queries unrelated to any legitimate assigned work task.

46. In late 2018, Littlejohn used his Booz Allen credentials to access President Trump's and related individuals and entities tax returns.

47. Also in late 2018, Littlejohn used his Booz Allen credentials and computer to upload President Trump's tax returns to a private website. He then downloaded that data to his personal computer and then stored it on his personal data storage device.

48. In 2020, Littlejohn stole additional tax information related to President Trump.

49. And in July 2020, Littlejohn broadened his crime. He started running searches related to the country's highest-net-worth individuals. He was able to retrieve information for a fifteen-year period. Littlejohn appropriated the information by using his Booz Allen credentials and computer to upload the data from the IRS website to his personal website.

50. Beginning in or about May 2019, and continuing through at least late 2020, Littlejohn repeatedly contacted and unlawfully disclosed confidential taxpayer return information to multiple national media organizations, including *The New York Times* and *ProPublica*.[7] His disclosures occurred in stages, including initial transmissions of tax return data in 2019, supplemental disclosures in early 2020, and additional bulk transmissions in or about September

---

[7] *See* Russ Buettner, Susanne Craig & Mike McIntire, *Long-Concealed Records Show Trump's Chronic Losses and Years of Tax Avoidance*, THE NEW YORK TIMES (Sept. 27, 2020), https://www.nytimes.com/interactive/2020/09/27/us/donald-trump-taxes.html; *see also* Jesse Eisinger, Jeff Ernsthausen & Paul Kiel, *The Secret IRS Files: Trove of Never-Before-Seen Records Reveal How the Wealthiest Avoid Income Tax*, PROPUBLICA (June 8, 2021), https://www.propublica.org/article/the-secret-irs-files-trove-of-never-before-seen-records-reveal-how-the-wealthiest-avoid-income-tax;

2020 involving thousands of taxpayers. These repeated disclosures resulted in the publication of numerous articles publicly disseminating sensitive tax return information of various individuals, including Plaintiff.[8]

51. Booz Allen permitted Littlejohn to repeatedly conduct searches for high-net-worth individuals and to upload that confidential data—spanning a fifteen-year period—to his own website.

52. On October 12, 2023, Littlejohn pled guilty in the United States District Court for the District of Columbia to one count of unauthorized disclosure of tax return information in violation of 26 U.S.C. § 7213(a)(1). In the factual basis supporting his plea, he admitted that Booz Allen authorized him to access vast amounts of unmasked taxpayer data pursuant to his contractor role, and that he unlawfully disclosed that information.

53. On January 29, 2024, Littlejohn was sentenced to five-year term of imprisonment. On that same date, Plaintiff publicly issued a victim impact statement addressing the harm caused by Littlejohn's criminal conduct.

54. At the time of the plea and sentencing, publicly available information focused on Littlejohn's unlawful disclosures and the Breach of IRS data systems. The proceedings did not address or analyze the adequacy of Booz Allen's safeguard practices governing database access under its federal contracts.

55. Although Plaintiff understood he had been the victim of criminal misconduct, he was unaware that systemic safeguard failures by Booz Allen may have contributed to—and ultimately enabled—the Breach.

56. Plaintiff was among the taxpayers whose confidential tax return information was

---

[8] *See* Factual Basis for Plea ¶¶ 7–13, *U.S. v. Littlejohn*, No. 1:23-cr-00343 (D.D.C. Oct. 12, 2023), ECF No. 9.

accessed and disclosed. The Breach resulted in a loss of privacy, economic loss, security-related and mitigation expenses and other damages to Plaintiff.

57. As a federal cybersecurity and tax administration contractor, Booz Allen was responsible for implementing and maintaining administrative, technical, and supervisory controls governing how its personnel accessed and interacted with sensitive taxpayer databases.

58. Upon information and belief, Booz Allen failed to implement or adhere to adequate monitoring systems capable of detecting anomalous or bulk database queries performed by its personnel. Booz Allen failed to implement or adhere to reasonable audit controls sufficient to detect repeated access to taxpayer records unrelated to assigned work tasks, failed to implement or adhere to real-time alerts triggered by high-volume data extraction, and failed to restrict, detect, or prevent suspicious outbound data transfers associated with employee credentials.

59. Littlejohn's ability to conduct bulk or repeated database queries and to extract confidential taxpayer information over an extended period without detection, and without being stopped, reflects systemic monitoring and oversight failures within the contractor environment through which Booz Allen operated.

60. The harm to thousands of Americans including Plaintiff is ongoing. Upon information and belief, both *ProPublica* and *The New York Times* continue to hold Plaintiff's confidential taxpayer information spanning fifteen years. Plaintiff and his family are concerned that their personal information could appear in yet another news story sometime in the future.

**D. Littlejohn's Incompetence in Handling Privileged IRS Access**

61. Littlejohn's incompetence arose from his demonstrated inability to responsibly handle elevated, unsupervised access to sensitive taxpayer databases.

62. Over an extended period, Littlejohn repeatedly accessed taxpayer records.

63. Littlejohn executed large-scale and repeated database queries, extracted confidential records, and stored sensitive data outside authorized systems. These actions were not isolated or momentary errors. They reflected a sustained misuse of privileged access over months and years.[9]

64. An employee who repeatedly uses elevated credentials to retrieve confidential information for unauthorized purposes is, by conduct, incompetent and unsuitable to be entrusted with continued access to sensitive federal systems.

65. The prolonged and undetected nature of Littlejohn's data extraction demonstrates that he could not be safely trusted with unmonitored access to IRS databases.

66. Given the sensitivity of the data and the repeated previous breaches involving Booz Allen, it should have been foreseeable that, absent effective supervision, such access could result in disclosure and injury to affected taxpayers. The repetition and severity of Littlejohn's unauthorized access and dissemination of protected taxpayer information only further highlights the fact that Booz Allen should have anticipated such a threat.

67. Booz Allen's failure to detect and halt Littlejohn's sustained misuse of access privileges permitted his incompetence to manifest in the disclosure of Plaintiff's confidential tax return information.

**E. Booz Allen's Awareness of Foreseeable Insider Risk and Failure to Act**

68. Insider misuse of privileged system access is a well-recognized cybersecurity risk, particularly concerning federal agencies that maintain repositories of highly sensitive taxpayer and national security information.

69. As a multibillion-dollar federal cybersecurity and intelligence contractor, Booz Allen marketed itself as a leader in insider-threat detection, anomaly monitoring, and risk mitigation.

---

[9] *See* Factual Basis for Plea ¶¶ 7–13, *United States v. Littlejohn*, No. 1:23-cr-00343 (D.D.C. Oct. 12, 2023), ECF No. 9.

By virtue of its expertise, contracts, and prior internal incidents, Booz Allen possessed specialized knowledge regarding the dangers posed by employees with elevated, unmonitored database access.

70. Booz Allen's own history confirmed that insider misuse was not hypothetical. Prior publicized incidents involving Booz Allen personnel—including large-scale unauthorized data retention and disclosure events—demonstrated the concrete risk that employees with broad system credentials could misuse sensitive government information.

71. Given that history and the nature of the IRS databases at issue, Booz Allen knew or, at a minimum, should have known that employees granted expansive query authority posed a foreseeable risk absent robust monitoring, audit trails, anomaly detection, and access segmentation controls.

72. Upon information and belief, database logging and audit functionality would have recorded Littlejohn's repeated access to high-profile taxpayer accounts, the execution of broad or bulk queries, and access patterns inconsistent with routine assigned work tasks.

73. Reasonable cybersecurity supervision—including periodic audit review, threshold alerts for high-volume queries, anomaly detection triggers, or supervisory escalation protocols—would have identified abnormal access patterns associated with Littlejohn's credentials before disclosure occurred.

74. The duration and scale of Littlejohn's unauthorized data extraction, which spanned months and involved large volumes of taxpayer information, demonstrate that Booz Allen either knew of the irregular access activity or failed to implement even baseline monitoring mechanisms necessary to detect it.

75. Booz Allen's failure to implement reasonable detection, review, and escalation

14

procedures in light of known insider-threat risks constitutes constructive knowledge of the danger posed by unmonitored privileged access and reflects a reckless disregard for the foreseeable misuse of sensitive taxpayer data.

**F. January 26, 2026, Treasury Determination and Contract Termination**

76. On January 26, 2026, The Treasury publicly announced the cancellation of all contracts with Booz Allen.

77. At the time of cancellation, Booz Allen held 31 separate Treasury contracts totaling approximately $4.8 million in annual spending and approximately $21 million in total obligations.

78. In the official Treasury press release, Secretary of the Treasury Scott Bessent stated:

> President Trump has entrusted his cabinet to root out waste, fraud, and abuse, and canceling these contracts is an essential step to increasing Americans' trust in government. Booz Allen failed to implement adequate safeguards to protect sensitive data, including the confidential taxpayer information it had access to through its contracts with the Internal Revenue Service.[10]

79. This marked the first public formal determination by The Treasury that Booz Allen itself had failed to implement adequate safeguards to protect confidential taxpayer information.

80. Prior to The Treasury's press release, public reporting regarding the IRS data breach largely centered on Littlejohn's criminal conduct and the unauthorized disclosures themselves.

81. The plea proceedings and contemporaneous media coverage did not disclose or resolve whether Booz Allen had failed to implement required administrative, technical, or supervisory safeguards in connection with its federal contracts.

82. The January 26, 2026, Treasury announcement expressly attributed responsibility to Booz Allen's failure to implement adequate administrative, technical, and physical safeguards under its federal contracts. This statement publicly and officially linked Booz Allen's contractual

---

[10] Press Release, *Treasury Cancels Contracts with Booz Allen Hamilton* (Jan. 26, 2026), U.S. DEP'T OF THE TREASURY, https://home.treasury.gov/news/press-releases/sb0371

safeguard obligations to the taxpayer data breach.

83. It was not until this official determination and contract termination that Plaintiff became aware that Booz Allen's own negligent safeguard failures may have been a substantial contributing cause of the disclosure of his confidential tax return information.

84. Prior to January 26, 2026, Plaintiff reasonably understood the Breach to be the result of an individual criminal actor's misconduct rather than systemic negligence by Booz Allen.

85. Plaintiff had no knowledge, and no reasonable basis to discover, that Booz Allen had allegedly failed to implement adequate safeguards required under its federal contracts.

## CAUSES OF ACTION

### COUNT I
**Negligence (Negligent Hiring, Supervision, Retention, and Failure to Safeguard)
Against Defendant Booz Allen**

86. Plaintiff realleges and incorporates paragraphs 1-85 of this Complaint.

87. Booz Allen owed Plaintiff a duty of reasonable care to implement and maintain appropriate administrative, technical, and supervisory safeguards to protect confidential tax return information accessed through its federal contracts with The Treasury and the IRS.

88. Booz Allen further owed a duty to exercise reasonable care in the hiring, vetting, supervision, monitoring, and retention of employees granted elevated access to sensitive federal databases.

89. At all relevant times, Booz Allen employed and supervised Littlejohn and granted him privileged access to unmasked taxpayer return information pursuant to its contracts with The Treasury and the IRS.

90. Booz Allen breached its duties by, inter alia by:

- Failing to implement adequate monitoring and anomaly detection systems;

16

- Failing to conduct reasonable audit review of database queries;

- Failing to restrict or segment elevated access privileges;

- Failing to detect abnormal or bulk data extraction activity;

- Failing to supervise and control employee access to confidential taxpayer data;

- Failing to exercise reasonable care in hiring and/or retaining Littlejohn in a position of elevated, unsupervised access.

91. Insider misuse of privileged access was a foreseeable risk in federal data environments, particularly given Booz Allen's prior experience with insider-related security incidents.

92. Booz Allen knew or should have known that employees granted expansive, unmonitored access to sensitive taxpayer data posed a foreseeable risk of misuse and that failure to implement adequate safeguards posed a substantial risk of unauthorized disclosure.

93. As a direct and proximate result of Booz Allen's negligent conduct, Littlejohn was able to access, extract, and disclose Plaintiff's confidential tax return information. But for Booz Allen's conduct, or lack thereof, Plaintiff's confidential tax return information would not have been disclosed.

94. It was not until January 26, 2026, when The Treasury publicly issued its determination that Booz Allen had failed to implement adequate safeguards to protect confidential taxpayer information, that Plaintiff reasonably discovered that Booz Allen's own negligent acts and omissions were a substantial contributing cause of his injuries.

95. Plaintiff suffered invasion of privacy, loss of personal security, economic loss, security-related and mitigation expenses, concern over ongoing dissemination of his financial information, and fear of future misuse of his confidential data, and other damages as a direct and proximate

result of Booz Allen's negligence.

WHEREFORE, Plaintiff demands judgment against Booz Allen for compensatory damages, costs, and such further relief as the Court deems just and proper.

## COUNT II
### Vicarious Liability / Respondeat Superior
### Against Defendant Booz Allen

96. Plaintiff realleges and incorporates paragraphs 1-95 of this Complaint.

97. At all relevant times, Littlejohn was an employee of Booz Allen acting within the scope of his employment and performing work assigned pursuant to Booz Allen's contracts with The Treasury and the IRS.

98. Booz Allen granted Littlejohn access credentials, hardware, and database permissions necessary to perform IRS-related work.

99. Littlejohn's access to Plaintiff's confidential tax return information was made possible solely through the authority, credentials, and instrumentalities provided to him in the course and scope of his employment with Booz Allen.

100. Upon information and belief, Littlejohn's access to and extraction of taxpayer data occurred while he was using access credentials granted through his employment with Booz Allen and while performing work assigned under Booz Allen's contract with the IRS.

101. To the extent Littlejohn's conduct occurred within the scope of his employment, or was made possible by the authority and access conferred upon him by Booz Allen, Booz Allen is vicariously liable for the resulting damages.

102. As a direct and proximate result of Littlejohn's access, extraction, and disclosure of Plaintiff's confidential tax return information, Plaintiff suffered loss of privacy, public dissemination of sensitive financial information, loss of personal security, economic loss,

18

security-related and mitigation expenses, and ongoing concern over further dissemination of his financial information, and fear of future misuse of his confidential data.

103. Plaintiff did not know, and could not reasonably have known, that Booz Allen's employment relationship and supervisory control over Littlejohn were a substantial contributing cause of his injuries until January 26, 2026, when The Treasury publicly identified deficiencies in Booz Allen's safeguard practices.

WHEREFORE, Plaintiff demands judgment against Booz Allen under respondeat superior principles, together with compensatory damages, costs, and such other relief as the Court deems just and proper.

## COUNT III
### Invasion of Privacy – Public Disclosure of Private Facts
### Against Defendants Booz Allen and Littlejohn

104. Plaintiff realleges and incorporates paragraphs 1-103 of this Complaint.

105. Plaintiff's tax return information constitutes highly sensitive and confidential financial information protected from disclosure under federal law.

106. Tax return information includes detailed personal financial data, including income, deductions, liabilities, and related financial disclosures, which are not publicly available and are not required to be publicly disclosed by virtue of Plaintiff's public office.

107. While Plaintiff serves as a United States Senator, he brings this action in his individual capacity, and the confidentiality of his personal tax returns is not waived or diminished by his public service.

108. Littlejohn accessed and unlawfully disclosed Plaintiff's confidential tax return information without authorization.

109. Littlejohn's disclosure of Plaintiff's private tax return information was highly

offensive to Plaintiff, as it would be to any reasonable person, and constituted an invasion of privacy independent of any public debate or political commentary

110.  The specific financial details disclosed by Littlejohn were not matters of legitimate public concern insofar as they consisted of confidential tax return information obtained through unlawful access to protected IRS databases rather than through lawful public filings or voluntary disclosure.

111.  Booz Allen's negligent safeguard failures enabled and facilitated the unlawful access and disclosure.

112.  As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of privacy, loss of personal security, economic loss, security-related and mitigation expenses, and ongoing concern over further dissemination of his financial information, and fear of future misuse of his confidential data.

WHEREFORE, Plaintiff demands compensatory damages and all appropriate relief.

**COUNT IV**
**Intentional Infliction of Emotional Distress**
**Against Defendant Littlejohn**

113.  Plaintiff realleges and incorporates paragraphs 1-112 of this Complaint.

114.  Over an extended period of time, Littlejohn deliberately, methodically, and repeatedly accessed, extracted, retained, and transmitted Plaintiff's confidential tax return information, knowing that such information was among the most sensitive and legally protected personal financial data maintained by the federal government.

115.  Littlejohn accessed protected IRS databases, executed targeted queries, transferred confidential data to external storage devices, and affirmatively provided that data to media organizations during the Breach.

20

116. Littlejohn knew that tax return information is strictly confidential under federal law and that unauthorized disclosure would expose affected individuals, including Plaintiff, to public scrutiny, reputational harm, financial exposure, and significant personal distress.

117. In Littlejohn's sworn factual basis that he executed as part of his plea agreement, Littlejohn admitted that he deliberately accessed and disclosed confidential tax return information over an extended period of time, fully aware that such disclosures were unlawful and would expose affected individuals to public dissemination of their private financial data.[11]

118. The risk of further dissemination continues. Littlejohn accessed some fifteen years' worth of tax data and upon information and belief several media companies retain that confidential information. A news story or public dissemination could be forthcoming any day—or years from now.

119. Littlejohn's conduct was intentional, malicious, and undertaken with reckless disregard for the harm to Plaintiff that would be caused by public disclosure of his private tax return information.

120. The deliberate act of the Breach of Plaintiff's highly sensitive financial records constitutes extreme and outrageous conduct that exceeds all bounds of decency tolerated in a civilized society, particularly where such conduct involves abuse of privileged access to protected government systems.

121. As a direct result of Littlejohn's actions, Plaintiff suffered loss of personal security, concern over ongoing dissemination of his financial information, and fear of future misuse of his confidential data.

---

[11] *See* Factual Basis for Plea ¶¶ 7–13, *United States v. Littlejohn*, No. 1:23-cr-00343 (D.D.C. Oct. 12, 2023), ECF No. 9.

122. The concern suffered by Plaintiff and his family was substantial, enduring, and not trivial or transitory.

WHEREFORE, Plaintiff demands compensatory and punitive damages against Littlejohn, together with such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable as a matter of right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Richard Lynn Scott, respectfully requests that this Court enter judgment in his favor and against Defendants Booz Allen Hamilton, Inc. and Charles Edward Littlejohn, and award the following relief:

A. Compensatory damages in an amount to be determined at trial for loss of privacy and all other legally cognizable damages suffered by Plaintiff;

B. Consequential damages resulting from the unlawful access, extraction, and dissemination of Plaintiff's confidential tax return information, including economic loss and security-related mitigation expenses;

C. Punitive damages against Defendants to the extent permitted by law, for conduct that was willful, malicious, reckless, or demonstrated a conscious disregard for the rights of Plaintiff;

D. Pre-judgment and post-judgment interest as permitted by law;

E. Costs of this action;

F. Such other and further relief as the Court deems just and proper.

Date: March 23, 2026                     Respectfully submitted,

                                         */s/ Jessica Furst Johnson*
                                         Jessica Furst Johnson
                                         Florida State Bar No. 43929
                                         Nadin Linthorst*
                                         New York State Bar No. 5559042
                                         Dennis Polio*
                                         District of Columbia Bar No. 198054
                                         Lex Politica PLLC
                                         611 Pennsylvania Ave SE #353
                                         Washington, DC, 20003
                                         Telephone: 512-354-1785
                                         jessica@lexpolitica.com
                                         nlinthorst@lexpolitica.com
                                         dpolio@lexpolitica.com

                                         COUNSEL FOR PLAINTIFF

                                         * *Motion for admission* pro hac vice *forthcoming*

23