## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

RICHARD LYNN SCOTT,
     Plaintiff,

v.    Case No. 2:26-CV-00845-JES-DNF

BOOZ ALLEN HAMILTON INC.,

CHARLES EDWARD LITTLEJOHN,
     Defendant[s].

_____

## DEFENDANT BOOZ ALLEN HAMILTON INC.'S MOTION TO DISMISS COUNTS I, II, AND III OF THE FIRST AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendant Booz Allen Hamilton Inc. ("Booz Allen"), pursuant to Federal Rule of Civil Procedure 12(b)(6), moves to dismiss Counts I, II, and III of the First Amended Complaint. In support thereof, Booz Allen states as follows:

### INTRODUCTION

The unauthorized disclosure of Senator Scott's tax return information was criminal. Charles Littlejohn used his position as an IRS contractor to steal and disclose the confidential tax return information of wealthy Americans, including Senator Scott. Littlejohn pleaded guilty and is serving the maximum five-year prison sentence. His actions betrayed his co-workers, the public servants with whom he worked, the taxpayers whose information he stole, and every American.

1

Littlejohn deserves the condemnation he has received. But this lawsuit is a misdirected response to that conduct. It seeks to hold Booz Allen responsible for a crime Littlejohn committed alone, for entirely personal reasons, and in direct contravention of his training, Booz Allen's interests, and the IRS protocols designed to prevent such misconduct. He used personal devices, private websites, and virtual machines to steal data directly from IRS systems, then destroyed the evidence to conceal what he had done. No act of Booz Allen caused Senator Scott's injuries. Booz Allen condemned the crime, cooperated with the DOJ investigation, provided information contributing to Littlejohn's prosecution, and opposed his attempt to evade the maximum sentence.

This lawsuit also comes too late. Senator Scott's claims accrued no later than November 4, 2021—when ProPublica published his confidential tax return information—yet he did not file this lawsuit until March 2026, months after the statute of limitations had expired.

In addition to untimeliness, each of Senator Scott's three counts independently fails as a matter of law.

Count I (negligence) does not state a viable claim under any of its four negligence theories. The First Amended Complaint ("FAC") does not and cannot allege that Booz Allen knew or should have known of Littlejohn's criminal intent— either at the time of hiring or at any point thereafter. Its breach and causation allegations are boilerplate, unsupported by any specific facts, and affirmatively contradicted by the documents the FAC itself incorporates by reference.

2

Count II (vicarious liability) is not a standalone cause of action. Even if it were, the FAC's own allegations establish that Littlejohn acted far outside the scope of his employment—on personal devices, for personal reasons, and in a criminal manner antithetical to Booz Allen's business interests.

Count III (invasion of privacy) fails because invasion of privacy is an intentional tort, and the FAC alleges only that Booz Allen's *negligence* enabled Littlejohn's disclosure—not that Booz Allen itself committed any intentional acts. That is fatal to the claim.

For the reasons set forth below, the Court should dismiss Counts I, II, and III of the First Amended Complaint with prejudice.

## BACKGROUND[1]

Plaintiff Richard Lynn Scott is a United States Senator for the State of Florida. ECF No. 14 (FAC) ¶ 16. Defendant Booz Allen Hamilton Inc. is a government contractor that provides services to federal agencies, including the IRS. *Id.* ¶ 17.

Charles Littlejohn is the criminal wrongdoer who stole and disclosed Senator Scott's confidential tax return information. *Id.* ¶¶ 2–6. During the relevant time, the IRS authorized Littlejohn, pursuant to 26 U.S.C. § 6103(n), to access taxpayer data on IRS databases, and he "received regular training about protecting taxpayer data and about the potential criminal consequences of inspecting or disclosing, without authorization, taxpayer returns and return information." *United States v. Littlejohn*, No.

---

[1] The facts found in the FAC are assumed true only for this Motion.

1:23-cr-343 (D.D.C. Oct. 12, 2023), ECF No. 9 (Ex. 1) ¶¶ 3–4. Littlejohn betrayed that trust. While working at the IRS, Littlejohn searched IRS databases for the tax return information of America's "highest-net-worth individuals." FAC ¶ 49. These queries were "unrelated to any legitimate . . . work task." *Id.* ¶ 45. He thereafter "extracted confidential tax return information belonging to numerous American taxpayers, including that of" Senator Scott. *Id.* ¶ 45. Littlejohn downloaded this data directly from the IRS databases. *Id.* ¶¶ 43–45; Ex. 1 ¶ 3.

Littlejohn took elaborate steps and used "specialized technical skills" to evade the IRS controls and protocols that were designed to prevent this type of criminal conduct, including controls that could "detect and prevent large downloads or uploads from IRS devices or systems." Ex 1 ¶¶ 6, 11, 15. He used "two virtual machines (essentially simulated versions of physical computers)" to upload the stolen taxpayer information to a private website. *Id.* ¶ 11. He then "promptly destroyed these machines" to "conceal his activities"—in one case, just minutes after stealing a data set. *Id.* He deleted "[a]lmost all of the files in [his] user profile on his assigned IRS laptop computer" before returning it to the IRS. *Id.* ¶ 14(a). And he "promptly contacted the domain registration service to cancel the private website's domain registration" after uploading the data. *Id.* ¶ 14(c). In short, Littlejohn "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice," and his conduct was "purposefully calculated, and likely, to thwart the investigation or prosecution of his offenses." *Id.* ¶ 14.

Littlejohn then disclosed the stolen data to reporters, including a "bulk transmission[] in or about September 2020" to ProPublica. FAC ¶ 50; Ex. 1 ¶ 12. This "disclosure of the tax returns and return information . . . was not authorized, and was knowing and willful." Ex. 1 ¶ 16. Based on Littlejohn's unauthorized disclosures, ProPublica then published articles about the tax filings and financial holdings of certain Americans. FAC ¶¶ 4–5. One of those articles discussed Senator Scott's tax return information. *Id.* ¶¶ 5, 50. ProPublica published that article, titled *How These Ultrawealthy Politicians Avoided Paying Taxes*, on November 4, 2021. Ex. 2. The article included a photograph of Senator Scott and noted that he "declined to comment" for the story. *Id.*

Littlejohn was prosecuted for his crime. On October 12, 2023, he pleaded guilty in the United States District Court for the District of Columbia to one count of unauthorized disclosure of tax return information in violation of 26 U.S.C. § 7213(a)(1) and admitted that he had "abused a position of trust" to further his criminal activity. FAC ¶ 52; Ex. 1 ¶ 15. On January 29, 2024, Littlejohn received the statutory maximum sentence: five years in federal prison. FAC ¶ 53. Senator Scott appeared at the sentencing and issued a victim impact statement. *Id.*

On March 23, 2026—more than four years after his tax return information was published, and more than two years after Littlejohn's sentencing—Senator Scott filed this lawsuit. ECF 1.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Nor is it enough for a plaintiff to plead facts that are "'merely consistent with' a defendant's liability," as such allegations fall short of being facially plausible. *Id.* (quoting *Twombly*, 550 U.S. at 557).

Beyond requiring plausible factual allegations, a motion to dismiss under Rule 12(b)(6) is the appropriate vehicle for disposing of stale claims. "Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate if it is apparent from the face of the complaint that the claim is time-barred." *Trump v. Clinton*, 161 F.4th 671, 684 (11th Cir. 2025) (citation modified).

In evaluating a motion to dismiss, the Court's review is not limited to the four corners of the complaint. Courts consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). Under the incorporation-by-reference doctrine, a court may consider evidence if "(1) the plaintiff refers to certain documents in the complaint, (2) those documents are central to the plaintiff's claim, and (3) the documents' contents are undisputed." *Baker v. City of Madison, Alabama*, 67

F.4th 1268, 1276 (11th Cir. 2023) (citation modified). "Evidence is 'undisputed' in this context if its authenticity is unchallenged." *Id.* And where an incorporated document "is clear and obviously contradicts the plaintiff's alleged facts," courts accept the incorporated document rather than the complaint's account. *Id.* at 1277–78. Likewise, where an exhibit attached to a complaint "contradicts general and conclusory allegations, the exhibit governs." *Remembrance Grp., Inc. v. Centazzo*, No. 2:21-CV-675-JES-MRM, 2022 WL 1406673, at *1 (M.D. Fla. May 4, 2022).

## ARGUMENT

### I. Count I Should Be Dismissed Because Senator Scott Does Not and Cannot State a Negligence Claim Against Booz Allen.

Count I fails for two independent reasons. First, it is time-barred: Senator Scott's injury occurred in November 2021, but he did not sue until months after the clock ran. Second, every negligence theory in the FAC—hiring, supervision, retention, and failure to safeguard—fails on the merits, because the FAC does not plausibly allege Booz Allen knew or should have known of Littlejohn's criminal intent at the time of hiring, does not plausibly allege that Booz Allen knew or should have known of his unfitness yet failed to act thereafter, and does not plausibly allege breach or causation.

#### A. Count I Is Time-Barred.

##### 1. Injury Triggers the Statute of Limitations for Negligence.

Under Florida law, "the time within which an action shall be begun under any statute of limitations runs from the time the cause of action accrues," and "[a] cause of action accrues when the last element constituting the cause of action occurs." Fla.

Stat. § 95.031(1). For negligence claims, the last element is injury. *See R.R. v. New Life Cmty. Church of CMA, Inc.*, 303 So. 3d 916, 921 (Fla. 2020). That is when the statute of limitations begins to run—not when the plaintiff learns the full extent of his damages and not when he identifies a potential wrongdoer.[2] *See id.* at 921, 923 (holding that "negligence and respondeat superior claims like the ones at issue here would accrue at the time of injury" and that "the statutory framework leaves no room for supplemental common law accrual rules"); *McConley v. Wells Fargo Bank, N.A.*, No. 4:24cv484-MW-MAF, 2025 WL 3190880, at *6 (N.D. Fla. Oct. 15, 2025), *report and recommendation adopted*, No. 4:24cv484-MW/MAF, 2025 WL 3033907 (N.D. Fla. Oct. 29, 2025) ("Plaintiff's claims accrued in 2015 when he suffered injury, not when he ultimately discovered in further detail how the injury was facilitated by his son and others involved in the criminal conspiracy.").

Florida law is equally clear that a plaintiff's ignorance of the identity of the alleged wrongdoer does not delay accrual. *See Int'l Bhd. of Carpenters & Joiners of Am., Local 1765 v. United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus., Local No. 803*, 341 So. 2d 1005, 1006 (Fla. 4th DCA 1976). Although this may foreclose some claims, "[h]arsh results represent a trade-off which the Legislature has decided it is willing to make in exchange for the burying of stale claims." *Id.* For this reason,

---

[2] While Florida law provides a delayed discovery doctrine for "cases of fraud, products liability, professional and medical malpractice, and intentional torts based on abuse," the Florida Supreme Court has held that this doctrine does not extend beyond those enumerated categories. *New Life Cmty. Church of CMA, Inc.*, 303 So. 3d at 921 (quoting *Davis v. Monahan*, 832 So. 2d 708, 710 (Fla. 2002)). The delayed discovery doctrine thus does not apply to the negligence claims asserted in the FAC.

8

"when construing statutes of limitations, courts generally will not write in exceptions when the legislature has not." *Putnam Berkley Grp., Inc. v. Dinin*, 734 So. 2d 532, 533 (Fla. 4th DCA 1999) (quoting *Fed. Ins. Co. v. Sw. Fla. Ret. Ctr., Inc.*, 707 So. 2d 1119, 1122 (Fla. 1998)).

### 2.    The Untimeliness of Count I Is Apparent on Its Face.

The FAC's own allegations establish that Count I is time-barred under any reading of the facts. The FAC alleges that Littlejohn "disclosed portions of the stolen data to ProPublica and other media outlets" and that "ProPublica thereafter published articles based on that information, including at least one discussing Plaintiff's tax return information." FAC ¶ 5. That article—titled *How These Ultrawealthy Politicians Avoided Paying Taxes*—was published on November 4, 2021.[3] Ex. 2. This leaves no doubt that the alleged injury occurred no later than November 4, 2021. The article included a photograph of Senator Scott. It described his confidential taxpayer information in detail. And it noted that "Scott declined to comment"—meaning Senator Scott was aware of the article's contents at publication. *Id.* He cannot plausibly allege he was unaware of the unauthorized disclosure of his tax returns thereafter.

Count I thus accrued by November 4, 2021. Fla. Stat. § 95.031(1). "The statute of limitations for negligence claims accruing prior to March 24, 2023, is four years."[4]

---

[3] The Court may consider this article on a motion to dismiss because (1) Senator Scott refers to it in the FAC, (2) the article is central to his claims, and (3) its contents are undisputed. *Baker*, 67 F.4th at 1276–77.

[4] In 2023, the Florida legislature reduced the statute of limitations to two years for "[a]n action founded on negligence." Fla. Stat. § 95.11(5)(a). The change affects claims that accrued after March 24, 2023. *See* Laws 2023, c. 2023-15, § 28.

*McConley*, 2025 WL 3190880, at *6. The statute of limitations on Count I therefore expired on November 4, 2025. Senator Scott did not file this lawsuit until March 2026, *i.e.*, four months too late.[5]

Even if the Court were to disregard the ProPublica article entirely—and it should not do so—Count I would still be untimely. The FAC itself alleges that Senator Scott "publicly issued a victim impact statement addressing the harm caused by Littlejohn's criminal conduct" at Littlejohn's sentencing on January 29, 2024. FAC ¶ 53. Senator Scott's injury therefore had occurred—and his negligence claim had accrued—by that date at the latest. Under the 2023 amendment to Florida's statute of limitations, if a negligence claim accrues after March 24, 2023, the statute of limitations is shortened to two years. Fla. Stat. § 95.11(5)(a). As a result, assuming the injury occurred by the date of Littlejohn's sentencing on January 29, 2024, the statute of limitations would have expired on January 29, 2026. Senator Scott waited to file this lawsuit until March 2026—again, too late.

The FAC alleges Senator Scott did not become aware of Booz Allen's ties until a January 26, 2026 statement by the Secretary of the Treasury. FAC ¶¶ 82–83. That implausible allegation should not be credited, as Senator Scott publicly participated in

---

[5] The FAC's allegation of "ongoing" harm, FAC ¶ 60, cannot save this claim. Florida law distinguishes between a continuing violation and the continuing effects of a completed violation, and only the former extends the limitations period. *Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003). The FAC alleges that Littlejohn stole and disclosed Senator Scott's taxpayer information by September 2020. FAC ¶ 50. Littlejohn's tortious conduct was therefore complete by that date. *Id.* Any ongoing or future harms to Senator Scott—including the continued retention of his data by media organizations or their additional publication of stories—are merely the continuing effects of Littlejohn's completed crime, which do not extend the statute of limitations. *Lovett*, 327 F.3d at 1183.

Littlejohn's sentencing. FAC ¶ 53. Regardless, the statute of limitations is triggered by injury—not identification of a wrongdoer. *New Life Cmty. Church of CMA, Inc.*, 303 So. 3d at 921. That Senator Scott claims not to have identified Booz Allen until January 2026 is legally irrelevant. Count I is time-barred and should be dismissed.

## B.      Senator Scott Fails to Plead a Viable Theory of Negligence.

Senator Scott advances four negligence theories—hiring, supervision, retention, and failure to safeguard—each of which fails. *See* FAC ¶¶ 86–94. The FAC does not and cannot allege that Booz Allen could or should have discovered Littlejohn's criminal intent at hiring or learned of his unfitness thereafter, and its simultaneous allegation that Littlejohn acted within the scope of his employment defeats the supervision, retention, and failure-to-safeguard theories. All four theories independently fail because the FAC does not plausibly allege breach or causation. Count I should be dismissed in its entirety.

### 1.      Senator Scott Fails to State a Claim for Negligent Hiring.

Under Florida law, a negligent hiring claim requires a plaintiff to prove three elements: "(1) the employer was required to make an appropriate investigation of the employee and failed to do so; (2) an appropriate investigation would have revealed the unsuitability of the employee for the particular duty to be performed or for employment in general; and (3) it was unreasonable for the employer to hire the employee in light of the information he knew or should have known." *Byndom v. Waffle House*, No. 25-11410, 2026 WL 913631, at *5 (11th Cir. Apr. 3, 2026) (quoting *Garcia v. Duffy*, 492 So. 2d 435, 440 (Fla. 2d DCA 1986)). The focus is on the employer's

11

knowledge "*before* . . . the employee is hired." *Malicki v. Doe*, 814 So. 2d 347, 362 n.15 (Fla. 2002) (emphasis added). And the touchstone is "reasonable foreseeability," *i.e.*, whether "*the specific danger* that ultimately manifested itself . . . reasonably could have been foreseen at the time of hiring." *Id.* at 362 (emphasis added).

The FAC vaguely alleges that Booz Allen "hired [and] vetted" Littlejohn. FAC ¶¶ 7, 41. But the FAC fails to allege any specific facts suggesting that Booz Allen could or should have discovered Littlejohn's specific criminal intent at the time of hiring. There is no allegation that anything in Littlejohn's background, references, or pre-employment record would have revealed his plan to steal taxpayer data. And notwithstanding the fact that the FAC alleges Littlejohn had worked at Booz Allen on IRS contracts during prior intervals of employment dating back to 2008, *id.* ¶ 18, the FAC does not allege that Littlejohn engaged in any form of misconduct before he was rehired in 2018, *id.* ¶ 40, much less any specific conduct that would have made his specific criminal intent foreseeable at the time of rehiring. To the contrary, the Factual Basis for Littlejohn's Plea—incorporated by reference in the FAC, *see id.* ¶¶ 50 n.8, 52 & 63 n.9—refutes any suggestion that Littlejohn's criminal intent was discoverable before Booz Allen hired him.[6] Not only did Littlejohn hide his criminal intent before he was hired, but he also took extraordinary steps to "conceal his activities," including using virtual machines that he "promptly destroyed" after the theft, uploading data to

---

[6] The Court may consider the Factual Basis for Littlejohn's Plea on a motion to dismiss because (1) Senator Scott refers to it in the FAC, (2) the Factual Basis for Littlejohn's Plea is central to Senator Scott's claims, and (3) its contents are undisputed. *See Baker*, 67 F.4th at 1276–77.

private websites whose domain registrations he immediately cancelled, and deleting files from his IRS laptop "just prior to" returning it, all of which is flatly inconsistent with the suggestion that his criminal intent was discoverable at the time of hiring. *See* Ex. 1 ¶¶ 6, 11, 14. Littlejohn himself admitted that he "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation of his offenses," and that his conduct was "purposefully calculated, and likely, to thwart the investigation or prosecution of his offenses." *Id.* ¶ 14.

These facts render implausible any allegation that Booz Allen could have discovered Littlejohn's criminal intent at hiring, and the FAC pleads none to the contrary. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). Negligent hiring liability does not attach for ignorance of the "unknown and unusual . . . inclinations of an employee." *Garcia*, 492 So. 2d at 442 (quotation marks omitted).

### 2. Senator Scott Fails to State a Claim for Negligent Supervision, Retention, or Failure to Safeguard.

Liability for negligent supervision, retention, or failure to safeguard would arise only if Booz Allen knew or should have known of Littlejohn's unfitness, but "fail[ed] to take further action such as 'investigating, discharge or reassignment.'" *Malicki*, 814 So. 2d at 362 n.15 (quoting *Garcia*, 492 So. 2d at 438–39). The FAC vaguely alleges that Booz Allen should have had better "monitoring and anomaly detection systems," that Booz Allen should have better "supervis[ed] and control[led] employee access to confidential taxpayer data," and that Booz Allen should have known of the risk because of prior data leak "incidents" involving other employees. FAC ¶¶ 27, 28, 89,

13

90. But none of this is specific to the foreseeable risks posed *by Littlejohn*, which is what the law requires to state a claim. *See, e.g.*, *Byndom*, 2026 WL 913631, at *5 (to establish a claim for negligent retention, a plaintiff must show that "the employer knew of or should have known of problems *with a particular employee's fitness* that arose after the employee was hired" (emphasis added)). The FAC does not allege that any prior incident involved Littlejohn, tax return information, data theft from IRS databases, or even Booz Allen's relationship with the IRS more broadly. FAC ¶¶ 31–34. Booz Allen employs thousands nationwide. FAC ¶ 17. It is not foreseeable that any given employee will commit what the FAC calls "the largest known data theft in IRS history" merely because a different employee was involved in a different incident at a different time with a different agency. *Id.* ¶ 6. Such abstract risks are insufficient to establish foreseeability under Florida law. *See Byndom*, 2026 WL 913631, at *7.

The FAC also vaguely asserts that Booz Allen would have known about Littlejohn's crime had it implemented different "monitoring and anomaly detection systems," "audit review of database queries," or other procedures. FAC ¶ 89. But the FAC does not plausibly allege that any specific supervision or control would have revealed Littlejohn's specific scheme. Nor could it do so. Instead, the Factual Basis for Littlejohn's Plea—incorporated by reference in the FAC—contradicts this assertion: Littlejohn downloaded Senator Scott's tax return information from *IRS systems*, not Booz Allen's, and used private computers, private data storage systems, and private websites to steal and disclose the information he obtained from IRS systems to

14

ProPublica.[7] *See* FAC ¶¶ 43–45; Ex. 1 ¶¶ 3–7, 10–11. Littlejohn also went to extensive lengths to "conceal his activities" and "thwart" any investigation into his crime. *See* Ex. 1 ¶¶ 11, 14. He destroyed virtual machines within minutes of using them, cancelled private website registrations, and deleted files from his IRS laptop before returning it. *See id.* ¶ 14(a)–(c). On a motion to dismiss, it is proper for the Court to accept this clear and specific account, which contradicts the generalized allegations of the FAC. *See Baker*, 67 F.4th at 1277–78 (where evidence incorporated by reference in the complaint "obviously contradicts" the plaintiff's allegations, courts "accept the [incorporated evidence's] depiction instead of the complaint's account").

In short, the FAC offers nothing more than Senator Scott's unsupported assertion of alleged supervisory failures, and such generalized allegations are insufficient to survive a motion to dismiss. *See Barmapov-Segev v. City of Miami*, No. 19-23742-CIV, 2019 WL 6170332, at *6 (S.D. Fla. Nov. 20, 2019).

In addition, and in the alternative, the negligent supervision, retention, and failure to safeguard theories fail because each requires the employee to have been acting "outside the course and scope of [his] employment." *Purcell v. City of Fort Lauderdale*, No. 21-CV-61006, 2025 WL 1825254, at *3 (S.D. Fla. July 2, 2025) (collecting cases). But Senator Scott pleads the opposite. The FAC plainly alleges that, "[a]t all relevant times, Littlejohn was an employee of Booz Allen acting within the

---

[7] Although Senator Scott summarily claims that Littlejohn "us[ed] his Booz Allen . . . computer to upload" stolen IRS data, FAC ¶ 49, Littlejohn's factual basis for his plea establishes that Littlejohn used "his assigned IRS laptop," as well as a "personal computer" and "two virtual machines" to "conceal his activities." Ex. 1 ¶¶ 6, 11, 14(a); *see also Baker*, 67 F.4th at 1277–78.

scope of his employment." FAC ¶ 96. Indeed, the FAC goes further: it asserts a standalone count for vicarious liability, which by definition requires Littlejohn to have been acting *within* the scope of his employment when he committed his crimes. *See Robelo v. United Consumers Club, Inc.*, 555 So. 2d 395, 396 (Fla. 3d DCA 1989) ("A principal becomes liable for the tortious actions of its agent only if the agent acts within the scope of the agency."). Senator Scott cannot have it both ways. His allegation that Littlejohn acted within the scope of his employment defeats his negligent supervision, retention, and failure to safeguard theories, and, as a result, Count I must be dismissed.

### 3.    All Four Negligence Theories Fail Because Senator Scott Does Not Adequately Plead Breach or Causation.

Even assuming Booz Allen owed a cognizable duty, the FAC fails to plausibly allege either breach or causation. Each deficiency independently requires dismissal.

*First*, the FAC does not and cannot adequately plead breach. Its breach allegations are boilerplate. Senator Scott alleges Booz Allen breached its duty by "[f]ailing to implement adequate monitoring and anomaly detection systems," "[f]ailing to conduct reasonable audit review of database queries," "[f]ailing to restrict or segment elevated access privileges," and "[f]ailing to detect abnormal or bulk data extraction activity." FAC ¶ 89. But even setting aside that *Booz Allen* had no ability to independently monitor or audit *IRS databases*, labels are not facts. These "conclusory" assertions cannot survive a motion to dismiss absent "additional factual allegations" to support them. *Crowe v. Managed Care of N. Am., Inc.*, No. 23-61065-CIV, 2024 WL 6863341, at *6 (S.D. Fla. Aug. 16, 2024).

The FAC's allegations track nearly verbatim the kind of generalized pleading that courts in this Circuit routinely reject. In *Crowe*, for example, the court dismissed a negligence claim where the plaintiffs alleged the defendant failed to "exercise reasonable care and implement adequate security systems, protocols and practices sufficient to protect" individuals' private information and to "detect the [d]ata [b]reach while it was ongoing." *Id.* The court held that these allegations were "all conclusory," requiring dismissal without "additional factual allegations" to support them. *Id.* Senator Scott's FAC suffers from the same defect. Not one paragraph identifies what specific monitoring protocols were deficient, what specific audit procedures should have been in place but were not, or what specific access-segmentation controls Booz Allen allegedly failed to implement.

The FAC insinuates that because Littlejohn's crimes occurred, Booz Allen's controls must have been deficient. But that reasoning is impermissibly circular. As the *Crowe* court explained, "the existence of a breach, by itself, does not show that systems were inadequate." *Id.* Littlejohn's conduct—even accepting the FAC's allegation that his crime continued "over an extended period without detection," FAC ¶ 59—is not itself evidence of *how* Booz Allen breached any duty. The FAC's breach allegations thus amount to nothing more than the impermissible inference that because harm resulted, the defendant must have been negligent—exactly the kind of post hoc reasoning that *Crowe* rejected. *See also Allgood v. PaperlessPay Corp.*, No. 3:20-cv-516, 2022 WL 846070, at *10–11 (M.D. Fla. Mar. 22, 2022) (dismissing negligence claim in data-breach action where plaintiffs alleged inadequate safeguards of sensitive

17

information but offered no specific factual allegations to make the claim more plausible than any alternative explanation for the breach, and holding that such generalized allegations "raise the possibility" of liability but "do not cross the line from possible to plausible").

*Second*, the FAC does not and cannot adequately plead causation. It alleges Booz Allen could have prevented Littlejohn's crimes with different monitoring systems. *See* FAC ¶¶ 71–73. But even setting aside that *Booz Allen* had no ability to independently monitor *IRS databases*, a "possible" story is not one that is "plausible on its face." *Chaparro*, 693 F.3d at 1337.

The primary support Senator Scott offers for causation is that "[u]pon information and belief, database logging and audit functionality would have recorded Littlejohn's repeated access" and that "[r]easonable cybersecurity supervision . . . would have identified abnormal access patterns." FAC ¶¶ 72–73. Courts routinely refuse to credit such hypothetical assertions. "Conclusory allegations made upon information and belief are not entitled to a presumption of truth." *Scott v. Experian Info. Sols., Inc.*, No. 18-CV-60178, 2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018). The FAC's reliance on Secretary Bessent's statement that Booz Allen allegedly "failed to implement adequate safeguards" fares no better. FAC ¶ 78. This statement does not explain *how* any alleged safeguard failure caused the disclosure of Senator Scott's tax return information. As the court recognized in *Allgood*, 2022 WL 846070, at *11, allegations that raise only "the possibility" that a defendant's conduct "could have caused" the plaintiff's harm are "not the same thing as a plausible claim." That is the

18

case here. Senator Scott has not alleged facts making it plausible—rather than merely possible—that different monitoring systems would have stopped Littlejohn.

Worse still, these allegations obviously contradict the Factual Basis for Littlejohn's Plea, which is incorporated by reference in the FAC and demonstrates that Littlejohn deliberately circumvented the supervision and detection measures that the FAC alleges would have prevented his crime. *See Baker*, 67 F.4th at 1278. Littlejohn "queried the database using more generalized parameters . . . in order to avoid detection by the IRS." Ex. 1 ¶ 5. He "elected to upload the data to a personal, private website . . . to avoid IRS protocols designed to detect and prevent large downloads or uploads from IRS devices or systems." *Id.* ¶ 6. He used "virtual machines" to conceal his activities and "promptly destroyed these machines." *Id.* ¶ 11. And he deleted "[a]lmost all of the files in [his] user profile on his assigned IRS laptop computer" before returning it to the IRS, while also canceling the domain registration for his private website. *Id.* ¶ 14(a)–(c). In short, the Factual Basis for Littlejohn's Plea shows that Littlejohn was a sophisticated criminal actor who specifically designed his scheme to evade the very monitoring systems Senator Scott now claims would have caught him. The FAC's bald assertion that "reasonable cybersecurity supervision" would have detected Littlejohn is thus pure speculation. FAC ¶ 73.

Because the FAC fails to plausibly allege either breach or causation, Count I must be dismissed in its entirety.

19

**II.     Count II Should Be Dismissed Because Senator Scott Does Not and Cannot State a Claim for Vicarious Liability.**

Count II asserts vicarious liability for Littlejohn's crimes based solely on his employment. But vicarious liability "is not itself a cause of action"; it is merely a theory of liability. *Turner Murphy Co. v. Specialty Constructors, Inc.*, 659 So. 2d 1242, 1245 (Fla. 1st DCA 1995). Federal courts applying Florida law have consistently so held. *See McKenzie v. United States Tennis Ass'n Inc.*, No. 6:22-CV-615-PGB-LHP, 2023 WL 3058036, at *8 (M.D. Fla. Apr. 24, 2023) (collecting cases); *Colite Int'l Inc. v. Robert L. Lipton, Inc.*, No. 05-60046-CIV, 2006 WL 8431505, at *12 (S.D. Fla. Jan. 20, 2006) ("no such cause of action exists for respondeat superior"); *Chunhong Jia v. Boardwalk Fresh Burgers & Fries, Inc.*, No. 8:19-cv-2527-T-33CPT, 2020 WL 5628734, at *2–3 (M.D. Fla. Sept. 21, 2020) (dismissing standalone respondeat superior count with prejudice). Because Count II asserts respondeat superior as a freestanding claim, it fails to state a cognizable cause of action and must be dismissed with prejudice.

Even assuming *arguendo* Count II were cognizable, it fails because the FAC does not and cannot plausibly allege Littlejohn acted within the scope of his employment. The plaintiff must show the employee's conduct was "activated at least in part by a purpose to serve the master." *Trabulsy v. Publix Super Mkt., Inc.*, 138 So. 3d 553, 555 (Fla. 5th DCA 2014); *accord Byndom*, 2026 WL 913631, at *4. Conduct falls outside the scope of employment when it occurs "within an independent course of conduct not intended by the employee to serve any purpose of the employer." Restatement (Third) of Agency § 7.07(2). This principle applies with particular force to criminal

acts, which "are in nature different from what servants in a lawful occupation are expected to do." Restatement (Second) of Agency § 231 cmt. a.

The FAC's own allegations defeat any inference that Littlejohn acted within the scope of his employment. The FAC admits Littlejohn uploaded stolen data "to a private website" that he controlled, downloaded it "to his personal computer," and "stored it on his personal data storage device." FAC ¶ 47. His "extractions included bulk or repeated database queries *unrelated to any legitimate assigned work task*." FAC ¶ 45 (emphasis added). He then contacted news organizations and transmitted the data to journalists "without authorization." FAC ¶¶ 3, 50. These are the acts of a rogue individual pursuing an entirely personal agenda, not those of an employee performing assigned duties. While the FAC also alleges Littlejohn used "access credentials granted through his employment," FAC ¶¶ 97–99, that is plainly insufficient. "The mere fact that the [employee] had access to [a database] through [his] employment with the [employer] is insufficient to establish that the conduct was actuated by a purpose to serve the employer." *Santarlas v. Minner*, No. 5:15-CV-103-OC-30PRL, 2015 WL 5896243, at *2 (M.D. Fla. Oct. 7, 2015).

The incorporated Factual Basis for Littlejohn's Plea confirms that he acted alone and in concealment. Littlejohn used a private website to exfiltrate data specifically "to avoid IRS protocols designed to detect and prevent large downloads or uploads," Ex. 1 ¶ 6; stored stolen data on "personal data storage devices," *id.*; "promptly destroyed" virtual machines used to steal data to "conceal his activities," *id.* ¶ 11; deleted "[a]lmost all of the files in [his] user profile on his assigned IRS laptop"

before returning it, *id.* ¶ 14(a); and canceled the private website's domain registration immediately after uploading the data, *id.* ¶ 14(c). These facts squarely contradict any inference that Littlejohn was acting within the scope of his employment, and the Court should credit them over the FAC's conclusory allegations. *See Baker*, 67 F.4th at 1277.

What is more, the FAC does not and cannot allege Littlejohn's crime served Booz Allen because that crime was directly at odds with Booz Allen's interests. The FAC itself alleges that Booz Allen is a "global leader in cybersecurity" holding significant federal contracts to safeguard sensitive data—including IRS taxpayer data—for DHS, the Treasury, and other agencies. FAC ¶¶ 19–24. Unauthorized disclosure of taxpayer information is plainly antithetical to that mission.[8] And far from benefiting Booz Allen, the FAC itself alleges that Littlejohn's conduct caused government officials to take adverse action *against* Booz Allen. *Id.* ¶¶ 76–78.

The Factual Basis for Littlejohn's Plea confirms as much. Littlejohn "received regular training about protecting taxpayer data," Ex. 1 ¶ 4, yet "abused a position of trust" and used "highly specialized technical skills in furthering his criminal activity," *id.* ¶ 15. His disclosure was "not authorized, and was knowing and willful." *Id.* ¶ 16. No reasonable inference can be drawn that Littlejohn's crimes were intended, even in part, to serve Booz Allen.

---

[8] The FAC asserts that Littlejohn "admitted" in the Factual Basis of Littlejohn's Plea that "Booz Allen authorized him to access" taxpayer data. FAC ¶ 52. The Factual Basis itself contradicts this misleading assertion. *See* Ex. 1 ¶ 3 (noting that Littlejohn was authorized to access IRS databases under 26 U.S.C. § 6103(n), which is administered directly by the IRS, not a private company); *see also Baker*, 67 F.4th at 1277–78 (where evidence incorporated by reference in the complaint "obviously contradicts" the plaintiff's allegations, courts "accept the [incorporated evidence's] depiction instead of the complaint's account").

Because the only plausible inference from the FAC's own allegations and the document it incorporates is that Littlejohn did not act to benefit Booz Allen—but instead pursued a wholly independent criminal scheme in direct contravention of his employer's business, policies, and contractual obligations—Count II must be dismissed.

**III.    Count III Should Be Dismissed Because Senator Scott Does Not and Cannot State a Claim for Invasion of Privacy.**

Count III fails for two independent reasons. First, it is time-barred: the FAC fixes the invasion no later than fall 2021, and the four-year limitations period expired months before this suit was filed. Second, invasion of privacy is an intentional tort, and the FAC alleges only that Booz Allen's negligence enabled Littlejohn's disclosure—not that Booz Allen intended it. That is equally fatal to the claim.

### 1.    The Untimeliness of Count III Is Apparent on Its Face.

Under Florida law, the statute of limitations for an invasion of privacy claim is four years, and it "begins to run when there has been notice of an invasion of legal rights." *Haskins v. City of Ft. Lauderdale*, 898 So. 2d 1120, 1123 (Fla. 4th DCA 2005). This four-year period "bars an action for invasion of privacy that is commenced more than four years after the invasion, *even if plaintiff learns of the invasion less than four years prior to the commencement of the action*." *Id.* (emphasis added). Actual knowledge is therefore irrelevant; what matters is when the invasion occurred.

The FAC alleges Littlejohn completed his disclosure of taxpayer information "in or about September 2020." FAC ¶ 50. Senator Scott's legal rights were thus

23

invaded no later than September 2020, and the four-year limitations period expired by September 2024—more than a year before this action was filed.

Even assuming *arguendo* the Court were to construe ProPublica's third-party publication of Senator Scott's tax return information—rather than Littlejohn's disclosure—as the operative event triggering the statute of limitations, the result is the same. The FAC alleges that ProPublica published an article discussing Senator Scott's tax return information. FAC ¶ 5. As noted above, that article, titled *How These Ultrawealthy Politicians Avoided Paying Taxes*, is properly before the Court on a motion to dismiss because Senator Scott references it in the FAC, it is central to his claim, and its contents are undisputed. *See Baker*, 67 F.4th at 1276. The article was published on November 4, 2021. Ex. 2. It included a photograph of Senator Scott, described his tax return information, and noted that Senator Scott had "declined to comment" when ProPublica contacted him before publication. Senator Scott thus cannot plausibly allege that his legal rights were invaded any later than November 4, 2021, meaning that the four-year limitations period expired no later than November 4, 2025, *i.e.*, nearly five months before the FAC was filed. Count III must be dismissed as untimely.

### 2. Senator Scott Fails to Plead the Requisite Intent.

Count III asserts a claim for invasion of privacy by public disclosure of private facts against both Booz Allen and Littlejohn. FAC ¶¶ 103–110. Under Florida law, the elements of that tort are "1) the publication, 2) of private facts, 3) that are offensive, and 4) are not of public concern." *Woodard v. Sunbeam Television Corp.*, 616 So. 2d 501, 503 (Fla. 3d DCA 1993). Critically, invasion of privacy is an intentional tort. *Rowell v.*

*Holt*, 850 So. 2d 474, 478 n.1 (Fla. 2003); *Chase Manhattan Inv. Servs., Inc. v. Miranda*, 658 So. 2d 181, 182 (Fla. 3d DCA 1995). Florida courts therefore routinely dismiss invasion-of-privacy claims where a plaintiff alleges only that the defendant negligently allowed a third party to access private information, rather than alleging that the defendant itself intentionally disclosed it. *See In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1226 (S.D. Fla. 2022) (dismissing claim with prejudice where plaintiffs "plead that Defendants' negligent 'failure to safeguard and protect'" information "resulted in the disclosure"); *Carlisi v. Sprintcom, Inc.*, No. 06-60751-CIV, 2006 WL 8432613, at *2 (S.D. Fla. Sept. 6, 2006) (same); *Farmer v. Humana, Inc.*, 582 F. Supp. 3d 1176, 1188 (M.D. Fla. 2022) (same).

Count III fails for precisely this reason. The FAC alleges that Littlejohn—not Booz Allen—intentionally accessed and disclosed Senator Scott's tax return information. FAC ¶ 106. As to Booz Allen, the FAC alleges only that "Booz Allen's *negligent* safeguard failures enabled and facilitated the unlawful access and disclosure." FAC ¶ 109 (emphasis added). That allegation is fatal. Because invasion of privacy is an intentional tort, "no cause of action can exist for the negligent commission of an intentional tort." *Carlisi*, 2006 WL 8432613, at *2. The FAC does not allege—and on these facts cannot allege—that Booz Allen itself intentionally disclosed Senator Scott's private information. Count III should therefore be dismissed as to Booz Allen.

## CONCLUSION

For the foregoing reasons, Booz Allen respectfully requests that the Court dismiss Counts I, II, and III of the First Amended Complaint with prejudice.

## Local Rule 3.01(g) Certificate

Pursuant to Local Rule 3.01(g), counsel for Defendant Booz Allen Hamilton Inc. conferred with counsel for Plaintiff via videoconference on May 1, 2026, regarding the relief sought in this motion. Plaintiff opposes Defendant's motion.

Dated: May 5, 2026

<div style="margin-left:40%">

Respectfully submitted,
/s/ *A. Lee Bentley, III*
A. Lee Bentley, III
Fla. Bar No. 1002269
Giovanni P. Giarratana
Fla. Bar No. 125848
Sarah Chen
Fla. Bar No. 1069100
**Bradley Arant Boult Cummings LLP**
1001 Water Street, Suite 1000
Tampa, Florida 33602
Ph: (813) 559-5500
Fax: (813) 229-5946
Primary E-mail: lbentley@bradley.com
Primary E-mail: ggiarratana@bradley.com
Primary E-mail: schen@bradley.com
Secondary E-mail: jbrandt@bradley.com

*Counsel for Defendant Booz Allen Hamilton Inc.*

</div>

26

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 5th day of May 2026, a true and correct copy of the foregoing was electronically filed in the United States District Court, Middle District of Florida, using the CM/ECF system which will serve all counsel of record.

<div align="right">

 */s/ A. Lee Bentley, III*
Counsel for Defendant

</div>