UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RICHARD LYNN SCOTT,                          CASE NO. 2:26-cv-00845-KCD-KRH

      PLAINTIFF,

vs.

BOOZ ALLEN HAMILTON, INC., AND
CHARLES EDWARD LITTLEJOHN,

      DEFENDANTS.

_____/

**DEFENDANT CHARLES EDWARD LITTLEJOHN'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
COUNTS III AND IV OF THE FIRST AMENDED COMPLAINT AND
REQUEST FOR AN EVIDENTIARY HEARING**

**INTRODUCTION**

1.      Defendant, Charles Edward Littlejohn (hereinafter "Littlejohn"), moves to dismiss Counts III and IV of the First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(3), and 12(b)(6). This Court lacks personal jurisdiction over Mr. Littlejohn, venue is improper in this District, both claims are time-barred under Florida law, and the Complaint fails to state claims upon which relief can be granted. Mr. Littlejohn respectfully requests an evidentiary hearing.[1]

---

[1] Whether to hold an evidentiary hearing is in the sound discretion of the district court. *See Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990); *Amerifactors Financial Group, LLC v. Enbridge, Inc.*, Case No.: 6:13-cv-1446-Orl-22TBS, 2013 WL 5954777 at *4 (M.D. Fla. Nov. 7, 2013) (citing *Gregory v. EBF & Assocs., L.P.*, 595 F. Supp.2d 1334, 1336 (S.D. Fla. 2009)).

2.      Mr. Littlejohn is a resident of the District of Columbia who worked in Washington, D.C. and Maryland during the relevant time period. He has no meaningful contacts with Florida that would support the exercise of personal jurisdiction. The sole connection alleged is that Plaintiff resides in Florida and allegedly suffered injury there, a paradigm of impermissible "tag" jurisdiction forbidden by controlling Supreme Court precedent.

3.      Further, venue is improper under 28 U.S.C. § 1391(b) because the conduct giving rise to Plaintiff's claims occurred entirely outside this judicial district, and Mr. Littlejohn does not reside here. Count III accrued no later than November 4, 2021, when ProPublica published an outline of Plaintiff's legal tax strategy(s). Count IV accrued when the same injury occurred. Plaintiff filed this action in March 2026, more than four years later, rendering both claims untimely under Florida's two- and four-year statutes of limitations.

4.      Moreover, Count III fails because Plaintiff cannot plausibly allege the requisite element of newsworthiness, and Count IV fails because the alleged conduct, however wrongful, does not rise to the level of extreme and outrageous behavior required under Florida law. For these reasons, Counts III and IV should be dismissed with prejudice.

## STATEMENT OF FACTS

5.      The facts relevant to this motion are drawn from the First Amended Complaint and documents incorporated by reference therein, which the Court must accept as true for jurisdictional and pleading purposes only. Mr. Littlejohn was

employed by Booz Allen Hamilton, Inc., during various intervals between 2008 and 2021. At all relevant times, he resided and worked in Washington, D.C., and performed work at IRS facilities in Lanham, Maryland. Booz Allen Hamilton, Inc., is headquartered in Virginia. Plaintiff Richard Lynn Scott is a resident of Naples, Florida.

6.      Between 2018 and 2021, Mr. Littlejohn accessed confidential tax return information from IRS databases, including information belonging to Plaintiff and thousands of other individuals. Mr. Littlejohn accessed this data using IRS systems while working at IRS facilities. He disclosed portions of the data to two (2) news organizations; the one involved in the instant case being ProPublica.

7.      On November 4, 2021, ProPublica published an article titled "How These Ultrawealthy Politicians Avoided Paying Taxes," which discussed, by way of a cursory outline, Plaintiff's legal tax strategy(s). The article included a photograph of Plaintiff and noted that he "declined to comment."

8.      The United States Attorney's Office in the District of Columbia, filed an information on September 29, 2023, raising the general allegations against Mr. Littlejohn that have been outlined in the amended complaint.

9.      On October 12, 2023, Mr. Littlejohn pleaded guilty in the United States District Court for the District of Columbia to one count of unauthorized disclosure of tax return information in violation of 26 U.S.C. § 7213(a)(1). On January 29, 2024, he was sentenced to five years in federal prison.

10.    Plaintiff appeared at the sentencing and issued a victim impact statement. Plaintiff filed the original Complaint on March 23, 2026. The First Amended Complaint was filed on March 26, 2026.

## LEGAL STANDARD

### Fed. R. Civ. P. 12(b)(2), Personal Jurisdiction

When a defendant challenges personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing that jurisdiction exists. *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). If the court were to resolve the motion without an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdiction. *Madara*, 916 F.2d at 1514 (citing *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988)); *ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 763 (10th Cir. 2011). The court must construe all reasonable inferences in the plaintiff's favor, but the plaintiff cannot rest on bare allegations. *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (quoting *Oxford Asset Mgmt. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)).

To establish personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the forum state's long-arm statute and that the exercise of jurisdiction comports with federal due process. *Vermeulen v. Renault U.S.A., Inc.*, 975 F.2d 746, 753 (11th Cir. 1992), op. modified and superseded on other grounds, 985 F.2d 1534 (11th Cir. 1993); *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). Florida's long-arm statute authorizes jurisdiction to the full extent permitted by the Constitution, collapsing the two-step

inquiry into a single due process analysis. *Shuangxi Zhang v. Individuals*, No. 26-cv-20013-BLOOM/Elfenbein, 2026 U.S. Dist. LEXIS 141809, at *22 (S.D. Fla. May 19, 2026) (citing *Electronics For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349-50 (Fed. Cir. 2003)).

Due process requires that the defendant have "minimum contacts" with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945); *Mut. Serv. Ins. Co. v. Frit Indus.*, 358 F.3d 1312, 1319 (11th Cir. 2004). The defendant's contacts must be such that he "should reasonably anticipate being haled into court" in the forum. *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220-21 (11th Cir. 2009) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Jurisdiction may be either general or specific. *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 808 (11th Cir. 2010). General jurisdiction exists only where the defendant's contacts are so "continuous and systematic" as to render the defendant "essentially at home" in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). Specific jurisdiction requires that the defendant "purposefully directed" activities at the forum state and that the lawsuit arises out of or relates to those contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Critically, the plaintiff cannot be the only link between the defendant and the forum. *Marrero v. State Farm Fire & Cas. Co.*, No. 3:20-cv-1147-MMH-JBT, 2021 U.S. Dist. LEXIS 97838, at *5 (M.D. Fla. May 24, 2021) (quoting *Walden v. Fiore*, 571 U.S. 277, 286 (2014)). The

defendant's own conduct must form the necessary connection with the forum state. *Id.* And "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Walden*, 571 U.S. at 286.

**<u>Fed. R. Civ. P. 12(b)(3), Improper Venue</u>**

A motion to dismiss for improper venue under Rule 12(b)(3) challenges whether the case was filed in a proper district under 28 U.S.C. § 1391. *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 56 (2013). The plaintiff bears the burden of showing that venue is proper. *HME Providers, Inc. v. Heinrich*, No. 6:09-cv-2186-Orl-31GJK, 2010 U.S. Dist. LEXIS 13890, at *4 (M.D. Fla. Feb. 18, 2010) (citing *Aung Lin Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004)).

The court must construe the venue statute strictly, and "significant events or omissions material to [the plaintiff's] claim[ … must] have occurred in the district in question." *Infinite Growth Grp., L.L.C. v. Infinite Growth Assocs., L.L.C.*, No. 2:10-cv-85-FtM-29DNF, 2010 U.S. Dist. LEXIS 81154, at *4 (M.D. Fla. Aug. 11, 2010) (quoting *Daniel v. Am. Bd. of Emerg. Med.*, 428 F.3d 408, 432 (2d Cir. 2005)).

Under 28 U.S.C. § 1391(b), a civil action may be brought in: (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred; or (3) if there is no district in which an action may otherwise be brought, any judicial district in which any defendant is subject

to personal jurisdiction. 28 U.S.C. § 1391. For venue purposes, a natural person resides in the judicial district in which that person is domiciled. *Id*.

**Fed. R. Civ. P. 12(b)(6), Failure to State a Claim**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Fed. R. Civ. P. 12. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). When a statute of limitations defense is apparent from the face of the complaint, dismissal under Rule 12(b)(6) is proper. *Wainberg v. Mellichamp*, 93 F.4th 1221, 1224 (11th Cir. 2024). The defendant bears the burden of demonstrating that the time bar is clear from the pleadings. *Steward v. Int'l Longshoreman's Ass'n, Local No. 1408*, 306 F. App'x 527, 530 (11th Cir. 2009).

## ARGUMENT

### A. This Court Lacks Personal Jurisdiction Over Mr. Littlejohn Because He Has No Meaningful Contacts with Florida

Mr. Littlejohn is subject to neither general nor specific jurisdiction in Florida.

**General Jurisdiction Does Not Exist**

For a natural person, general jurisdiction attaches only in the state of domicile. *Daimler AG*, 571 U.S. at 122, 126; *see also Walden*, 571 U.S. at 290. Mr. Littlejohn is

domiciled in the District of Columbia. He has never resided in Florida, owns no property in Florida, maintains no business in Florida, has no systematic or continuous contacts with Florida, and the alleged injury(s) were not directed at Florida. Accordingly, he is not subject to general jurisdiction here.

## Specific Jurisdiction Does Not Exist

The First Amended Complaint alleges no conduct by Mr. Littlejohn that was purposefully directed at Florida. *Walden*, 571 U.S. at 285. The allegedly tortious conduct, accessing IRS databases and disclosing tax information to ProPublica, occurred entirely in Washington, D.C., and Maryland. Mr. Littlejohn did not travel to Florida, communicate with anyone in Florida, or target Florida residents as a class. Mr. Littlejohn's factual basis for plea (attached as **Exhibit A**) makes clear that the conduct as to how the tax data was identified for extraction was generalized and non-specific to Plaintiff, Richard Lynn Scott:

> In or about late 2018, Defendant accessed tax return and return information for a high-ranking government official, Public Official A, and related entities and individuals. **Rather than directly search** an IRS database for Public Official A's tax return and return information, **Defendant queried the database using more generalized parameters that would nevertheless collect** Public Official A's tax return and return information (as well as **return and return information for related entities and individuals) in the resulting data set**. . . .
>
> * * *
>
> In or about July and August 2020, **Defendant accessed unmasked IRS data associated with thousands of the nation's wealthiest people,** including returns and return information dating back over 15 years.
>
> Defendant thereafter uploaded this data to a private website on multiple occasions using a method similar to the one he employed in removing tax return and return information associated with Public Official A.

Defendant's **Exhibit A**, Factual Basis for Plea, pp.1-3, ¶¶ 5, 10-11 (emphasis added).

Page **8** of **26**

Mr. Littlejohn never sought information related to Plaintiff as an individual. Moreover, aside from Public Official A, the en masse data was handed over to one news organization, ProPublica, which independently decided whom to identify for its articles. There are no supporting facts that Mr. Littlejohn directed his activities to specifically identify Plaintiff or control, direct, or instruct the ProPublica to publish information specifically about Plaintiff. Plaintiff, due to his wealth, fell into a generalized parameter of the dataset that included "thousands of the nation's wealthiest people." *Id.*

Thus, Plaintiff's sole theory for personal jurisdiction is that he suffered injury in Florida because he resides there. But this is precisely the kind of "random, fortuitous, or attenuated" contact that due process forbids as a basis for jurisdiction. *Walden*, 571 U.S. at 286 (quoting *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 475 (1985)).

The Eleventh Circuit has rejected jurisdiction where the only forum connection was the plaintiff's residence. In *Francosteel Corp. v. M/V Charm*, the court emphasized that the defendant must have purposely established minimum contacts with the forum state such that he or she should reasonably anticipate being haled into court there. *Francosteel Corp. v. M/V Charm*, 19 F.3d 624, 627-28 (11th Cir. 1994). Mere knowledge that consequences of one's conduct might be felt in a particular state does not suffice. *See O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 318-23 (3d Cir. 2007) (collecting cases).

Similarly, in *Lesnick v. Hollingsworth & Vose Co.*, the Fourth Circuit held that Maryland courts could not exercise personal jurisdiction over an out-of-state

component supplier whose only connection to Maryland was knowledge that its products would eventually reach the state through another company's distribution. *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945-46 (4th Cir. 1994). The court reiterated that mere placement of goods into the stream of commerce, with knowledge that they will reach the forum, does not constitute purposeful availment. *Id.* at 947.

Here, Mr. Littlejohn's conduct was directed at neither Florida nor Plaintiff specifically, and he had no control over what the news organization published or whom it included. If Plaintiff happened to read the resulting article while residing in Florida, that is a unilateral act by Plaintiff and the news organization, not a contact by Mr. Littlejohn with Florida.

Allowing jurisdiction based solely on where the plaintiff felt the effects of a defendant's out-of-state conduct would eviscerate the purposeful availment requirement. Accordingly, this Court lacks specific jurisdiction over Mr. Littlejohn, and Counts III and IV must be dismissed pursuant to Rule 12(b)(2).

**<u>Venue Is Improper in the Middle District of Florida</u>**

Should the Court find personal jurisdiction, venue is independently improper under 28 U.S.C. § 1391(b). None of the three venue provisions are satisfied. First, venue is not proper under 28 U.S.C. § 1391(b)(1) because Mr. Littlejohn does not reside in Florida. For venue purposes, a natural person resides in the judicial district where he is domiciled. 28 U.S.C. § 1391. Mr. Littlejohn's domicile is in the District of Columbia. Moreover, because the defendants do not all reside in the same state, subsection (b)(1) is unavailable. *Id.*

Second, venue is not proper under § 1391(b)(2) because no substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. *Infinite Growth Grp., LLC v. Infinite Growth Assocs., LLC*, No. 2:10-cv-85-FtM-29DNF, 2010 LX 38311 (M.D. Fla. Aug. 11, 2010) (quoting *Daniel v. American Bd. of Emergency Medicine*, 428 F.3d 408, 432 (2d Cir. 2005)).

The operative conduct underlying both Counts III and IV occurred in Washington, D.C., and Maryland. Mr. Littlejohn accessed IRS databases while working at IRS facilities in those locations. He disclosed the relevant stolen data to ProPublica outside of Florida. The plea proceedings and sentencing took place in the District of Columbia. No material event occurred in Florida. Plaintiff cannot satisfy § 1391(b)(2) by pointing to his residence in Naples, Florida, or his alleged subjective experience of emotional distress here.

In tort actions, the locus of injury may be relevant to venue, but only when it represents a substantial part of the events giving rise to the claim. *Watson v. Cmty. Educ. Ctrs., Inc.*, No.: 2:10-cv-00778-36SPC, 2011 U.S. Dist. LEXIS 89520, at *6-7 (M.D. Fla. Aug. 11, 2011). Courts have recognized that in privacy and emotional distress cases, the injury is felt where the plaintiff resides, but venue still requires that significant operative events occurred in the district. *Trump v. Simon & Schuster, Inc.*, Case No: 3:23-cv-2333-MCR/ZCB, 2023 U.S. Dist. LEXIS 135566, at *12-13 (N.D. Fla. Aug. 4, 2023); *Daniel v. Am. Bd. of Emerg. Med.*, 428 F.3d 408, 432-33 (2d Cir. 2005).

Plaintiff's alleged emotional reaction to those disclosures is not itself an event giving rise to venue under the statute. As the Eleventh Circuit explained in *Jenkins Brick Co. v. Bremer*, venue focuses on "the relevant activities of the defendant, not of the plaintiff." *Kuehne v. FSM Capital Mgmt., LLC*, No. 12-80880-CIV, 2013 WL 1814903, at *2 (S.D. Fla. Apr. 29, 2013) (quoting *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371-72 (11th Cir. 2003)). Because all of Mr. Littlejohn's relevant conduct occurred outside this District, venue is improper under § 1391(b)(2).

Third, venue is not proper under § 1391(b)(3) because there are other districts in which this action could have been brought, rendering the fallback provision inapplicable. 28 U.S.C. § 1391. Venue would be proper, for example, in the District of Columbia, where Mr. Littlejohn resides and where the operative conduct occurred. *Id*. Because venue is improper, Counts III and IV should be dismissed under Rule 12(b)(3). In the alternative, the Court should transfer this action to a proper venue under 28 U.S.C. § 1406(a).

### B.  Counts III and IV are Time-Barred under Florida's Four-Year Statute of Limitations

**Count III: Invasion of Privacy**

Under Florida law the statute of limitations for an invasion of privacy claim is four (4) years, and it begins to run "when there has been notice of an invasion of legal rights." *Lion Life, L.L.C. v. Regions Bank*, Case No. 12-81145-CIV, 2013 U.S. Dist. LEXIS 75218, at *5 (S.D. Fla. May 29, 2013) (citing *Breitz v. Lykes-Pasco Packing Co.*, 561 So. 2d 1204, 1205 (Fla. 2d DCA 1990)).

That four-year period bars an action for invasion of privacy commenced more than four (4) years after the invasion, even if plaintiff learns of the invasion less than four (4) years prior to the commencement of the action. *Viera v. City of Lake Worth*, Case No. 19-80158-CIV-MARRA/MATTHEWMAN, 2020 U.S. Dist. LEXIS 268980, at *16 (S.D. Fla. Mar. 31, 2020). Here, the invasion occurred no later than November 4, 2021, when ProPublica published the article discussing Plaintiff's legal tax strategies. The article included Plaintiff's photograph and noted that he "declined to comment," demonstrating Plaintiff's awareness of the publication at the time.[2] Plaintiff claims that his legal rights were invaded. If true, the injury accrued the moment his legal tax strategy information was publicly disclosed on November 4, 2021.

The four-year statute of limitations expired on November 4, 2025. Plaintiff filed his action in March 2026, about four (4) months after the limitations period had run. Count III is therefore time-barred and must be dismissed. Plaintiff cannot avoid this conclusion by arguing that he did not discover Mr. Littlejohn's role until later. Nor did Plaintiff take any steps, unlike others in his circumstances, to investigate or pursue litigation against the IRS or Treasury in response to the published news articles. *See Griffin v. I.R.S. et al.*, No. 22-CV-24023-SCOLA/GOODMAN (S.D. Fla. 2022); *Warren v. Booz Allen Hamilton Inc.*, Case No. 8:24-cv-01252-LKG (D. Md. 2024); *Safe Harbor Int'l LLC v. Booz Allen Hamilton Inc., et al.*, Case No. 8:25-cv-00139-LKG (D.

---

[2]   https://www.propublica.org/article/how-these-ultrawealthy-politicians-avoided-paying-taxes (last visited August 3, 2026).

Md. 2025); *MacNeil v. Booz Allen Hamilton Inc.*, Case No. 8:25-cv-0963-LKG (D. Md. 2025).

In Florida, the statute runs from the date of the invasion, not from the date the plaintiff learns of it. *Chidiac v. Cadillac Gage Co.*, 541 So. 2d 650, 650-51 (Fla. 3d DCA 1989); Fla. Stat. § 770.07. Moreover, the Factual Basis for Littlejohn's Plea, filed in October 2023, identified the conduct and linked it to disclosures to news organizations, including ProPublica. Plaintiff appeared at Mr. Littlejohn's sentencing in January 2024 and issued a victim impact statement, further demonstrating his knowledge of Mr. Littlejohn's role well before the limitations period expired. *See* Defendant's **Exhibit B**, Sentencing hearing transcript, pp. 32-35.

## Count IV: Intentional Infliction of Emotional Distress

Florida law does not provide a delayed discovery rule for negligence or intentional tort claims outside specifically enumerated categories such as fraud and medical malpractice. For intentional infliction of emotional distress, a cause of action accrues when the last element occurs, here, when Plaintiff suffered the alleged emotional distress. Fla. Stat. § 95.11. Plaintiff alleges that he suffered emotional distress as a result of the disclosure of his legal tax strategy information. That distress necessarily began no later than November 4, 2021, when the ProPublica article was published and Plaintiff became aware of it. Even assuming Plaintiff's distress continued or intensified over time, the cause of action accrued when the injury first occurred. *Boyce v. Cluett*, 672 So. 2d 858, 859 (Fla. 4th DCA 1996).

In Florida, the statute of limitations for an intentional tort is four years. Fla. Stat. § 95.11. Because the injury occurred no later than November 4, 2021, the limitations period expired on November 4, 2025. Plaintiff's March 2026 filing therefore came too late, and Count IV is time-barred and must be dismissed.

**Florida's Tort Reform Act, House Bill 837**

HB 837, enacted on March 24, 2023, reduced the statute of limitations for negligence and tort actions from four (4) years down to two (2) years for any matter that accrues after March 24, 2023. *See* Fla. Stat. § 95.11(5).

The suggestion that the identity of the alleged tortfeasor is the last element triggering accrual is misplaced. *Grayson v. No Labels*, No. 6:20-cv-1824-Orl-40LRH, 2021 U.S. Dist. LEXIS 129240, at *7-8 (M.D. Fla. Jan. 26, 2021) ("The last cause of action necessary for the accrual of a defamation claim is publication, and therefore the date of publication—not the date of discovery—triggers the statute of limitations.") (citing *Wagner, Nugent, Johnson, Roth, Romano, Erikson & Kupfer, P.A. v. Flanagan*, 629 So. 2d 113, 114-15 (Fla. 1993); Fla. Stat. §§ 95.031, 95.11, and 770.07).

Taking it one step further, even assuming *arguendo* that identity is the last element constituting the accrual of the cause of action (which it is not), this argument too fails. Here, the United States disclosed the information regarding the criminal charges against Mr. Littlejohn on September 29, 2023. *United States v. Littlejohn*, Case No. 1:23-cr-00343-ACR (D.D.C. 2023) at Doc. 1. If the identity of Mr. Littlejohn triggers the statute of limitations, then a two (2)-year period applies. *See* Fla. Stat. § 95.11(5). Two years from September 29, 2023, would be September 29, 2025, yet

Plaintiff filed the original underlying complaint on March 23, 2026, nearly six (6) months after the limitations period expired.

### C. **Count III Fails to State a Claim for Invasion of Privacy**

**Public Disclosure of Private Facts**

Even if jurisdiction, venue, and timeliness were established, Count III fails on the merits because Plaintiff cannot satisfy the elements of a claim for invasion of privacy by public disclosure of private facts under Florida law. In Florida, the elements of this tort are: (1) publication, (2) of private facts, (3) that are offensive, and (4) that are not of public concern. *Lopez v. Kendall Healthcare Grp., Ltd.*, 429 So. 3d 659, 665 (Fla. 3d DCA 2026).

Critically, invasion of privacy is an intentional tort. *G4S Secure Sols. USA, Inc. v. Golzar*, 208 So. 3d 204, 208 (Fla. 3d DCA 2016). A plaintiff must demonstrate that the defendant intentionally published private information, not merely that the defendant's negligence enabled a third party to do so. *Farmer v. Humana, Inc.*, 582 F. Supp. 3d 1176, 1188 (M.D. Fla. 2022). Courts applying Florida law routinely dismiss invasion-of-privacy claims where the plaintiff alleges only that the defendant negligently allowed a third party to access or disclose private information. *Id.* (citing *Burrows v. Purchasing Power, LLC*, No. 1:12-cv-22800-UU, 2012 U.S. Dist. LEXIS 186556 *19-20 (S.D. Fla. Oct. 18, 2012)).

In such cases, the defendant did not commit the requisite intentional act of publication. Here, Mr. Littlejohn provided a bulk dataset of taxpayer information to

ProPublica, the organization relevant here. Mr. Littlejohn did not control, direct, instruct, or even manage how ProPublica would use the dataset, and he did not know who—which individuals, persons, or businesses—were within the dataset he provided to ProPublica. Nor was there any assurance that the information in the dataset was significant enough even to be highlighted in a future article.

**Mr. Littlejohn Did Not "Publish" Plaintiff's Information to the General Public**

The publication element requires that the defendant make the private information known to the public at large or to so many persons that the matter must be regarded as substantially certain to become public. *Carlisi v. Sprintcom, Inc.*, No. 06-60751-CIV-DIMITROULEAS, 2006 U.S. Dist. LEXIS 113325, at *7 (S.D. Fla. Sep. 1, 2006) (requiring disclosure to more than one or a few) (citing *Santiesteban v. Goodyear Tire & Rubber Co.*, 306 F.2d 9, 11 (5th Cir. 1962)).[3] While Mr. Littlejohn disclosed a dataset of tax information that happened to include Plaintiff's tax information to ProPublica, he did not himself publish it to the general public. The ProPublica article was authored, edited, and published by ProPublica, an independent news organization that exercised its own editorial judgment in deciding what and whether to publish, how to frame the information, and when to release it.

For clarity, the datasets that Mr. Littlejohn provided to ProPublica that contained Plaintiff's information was not sold to them for profit or personal gain, nor

---

[3] *Bonner v. Prichard*, 661 F.2d 1206 (11th Cir. 1981) (establishing that all decisions made by the former Fifth Circuit before the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit).

did the datasets make it to any underground black market where personal identifiable information (PII) is bought and sold to fraudsters. Rather, the information was provided only to ProPublica—a news organization that, despite its First Amendment freedoms, could be held liable for disseminating PII. *See Ross v. Midwest Commc'ns, Inc.*, 870 F.2d 271, 275 (5th Cir. 1989) (punting on the issue of "how much 'breathing room' is available to protect an editor, who publishes information that was potentially but not actually newsworthy, from retrospective judicial blue-pencilling.").

Even so, when the articles were published, none of Plaintiff's sensitive PII was disclosed. Florida courts have distinguished between disclosure to a limited audience and publication to the public at large. *Williams v. Minneola*, 575 So. 2d 683, 689 (Fla. 5th DCA 1991). Providing information to a journalist does not constitute publication by the source if the journalist exercises independent editorial control over whether and how to publish the material.

Moreover, the First Amended Complaint does not allege Mr. Littlejohn published anything himself. His conduct consisted of providing information to journalists, not of publication.

**The Information Published Was a Matter of Public Concern**

Under Florida law, information is not actionable as an invasion of privacy if it relates to matters of public interest. *Seminole Tribe v. Times Publ'g Co.*, 780 So. 2d 310, 318 n.1 (Fla. 4th DCA 2001) (citing *Valentine v. C.B.S., Inc.*, 698 F.2d 430, 432-33 (11th Cir. 1983)). Plaintiff is a United States Senator and prominent public figure.

The ProPublica article addressed the tax practices of wealthy individuals and how they lawfully minimize their tax obligations, a matter of significant public interest and legitimate journalistic inquiry. The article did not disclose intimate personal details unrelated to Plaintiff's public role; rather, it examined how public officials benefit from tax laws they help create or influence. Courts have long recognized that the financial affairs of public officials, particularly those related to conflicts of interest or the fairness of tax policy, are matters of legitimate public concern. *Plante v. Gonzalez*, 575 F.2d 1119 (5th Cir. 1978); *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566 (6th Cir. 2002). Indeed, Plaintiff, as a United States Senator, must disclose his financial information yearly. *See* https://efdsearch.senate.gov/search/, **Florida | Senator | Rick Scott | Annual** financial disclosures | including **Blind Trusts | Period Transactions | Other Documents | 01/01/2017 through 08/03/2026** (last visited August 3, 2026); *see also* Defendants **Exhibit C**, disclosure reference table.

The ProPublica article explicitly framed the disclosure in terms of public policy, noting that wealthy politicians "have the power to decide how much the rest of us pay and the power to spend the money" while potentially "not paying their fair share."[4] This framing demonstrates that the publication addressed a matter of public concern, the fairness and transparency of the federal tax system, rather than gratuitously invading Plaintiff's privacy for prurient or commercial purposes. Plaintiff cannot

---

[4]   https://www.propublica.org/article/how-these-ultrawealthy-politicians-avoided-paying-taxes (last visited August 3, 2026).

invoke the tort of invasion of privacy to suppress information that bears directly on his fitness for public office and his role in shaping the laws that govern other taxpayers.

Indeed, analyzing Plaintiff's mandatory financial disclosures as a United States Senator reveals that there is much more "sensitive" financial data published to the public than what was outlined in the ProPublica article. *Id*. Moreover, reviewing the same data, Plaintiff and his family's wealth has steadily increased since the publication of his legal tax strategies, cutting against any claims of harm.

Plaintiff's claims for damages incurred or expected to be incurred also fall flat. Again, none of Plaintiff's PII that would even necessitate credit monitoring was disclosed by ProPublica. Moreover, the disclosure was made to a news reporting agency that has a duty in and of itself not to disclose PII or risk a claim for damages. *See, e.g.*, Md. Code Ann., Cts. & Jud. Proc. § 3-2304 (publication of personal information prohibited); *see also M.G. v. Time Warner, Inc.*, 89 Cal. App. 4th 623 (2001).

**The Alleged Facts Were Not "Private" in the Relevant Sense**

Florida law protects only information that is truly private, not information that is already public or that the plaintiff has disclosed voluntarily. *Woodard v. Sunbeam Television Corp.*, 616 So. 2d 501, 503 (Fla. 3d DCA 1993); *Cape Publ'ns, Inc. v. Hitchner*, 549 So. 2d 1374, 1377-78 (Fla. 1989). Here, Plaintiff, for several years, publicly disclosed his own tax returns while running for and maintaining the position of Governor of the State of Florida.[5]

---

[5] *See* https://www.jacksonville.com/story/news/nation-world/2010/10/09/scott-releases-his-tax-returns/15928271007/ (last visited August 3, 2026);

While tax returns are generally confidential under federal law, the information disclosed here consisted of tax strategies and financial structures commonly used by wealthy individuals and widely discussed in public policy debates. The ProPublica article did not reveal personal details about Plaintiff's private life. Rather, ProPublica analyzed the legal tax avoidance strategies employed by many wealthy individuals. The article placed this information in the context of public policy debates about tax fairness, making it part of the public discourse rather than an intrusion into Plaintiff's seclusion.

Tax information related to a Senator's personal financial practices and potential conflicts of interest falls squarely within this category. For these reasons, Count III fails to state a claim for invasion of privacy and should be dismissed pursuant to Rule 12(b)(6).

**Count IV Fails to State a Claim for Intentional Infliction of Emotional Distress**

Count IV likewise fails on the merits because Plaintiff has not plausibly alleged the extreme and outrageous conduct required to sustain a claim for intentional infliction of emotional distress under Florida law. To establish intentional infliction of emotional distress, a plaintiff must prove: (1) the defendant engaged in extreme and

---

https://www.nbcmiami.com/news/local/florida-governor-rick-scotts-personal-assets-shielded-from-public/1925796/ (last visited August 3, 2026); https://www.tampabay.com/news/politics/stateroundup/gov-rick-scott-releases-2013-tax-returns-questions-remain/2202480/ (last visited August 3, 2026); https://www.miamiherald.com/news/politics-government/state-politics/article215680265.html (last visited August 3, 2026); https://www.miamiherald.com/news/politics-government/state-politics/article217391445.html (last visited August 3, 2026).

outrageous conduct; (2) the conduct was intentional or reckless; (3) the conduct caused emotional distress; and (4) the distress was severe. *Legrande v. Emmanuel*, 889 So. 2d 991, 994-95 (Fla. 3d DCA 2004) (quoting *Clemente v. Horne*, 707 So. 2d 865 (Fla. 3d DCA 1998)).

The threshold requirement, extreme and outrageous conduct, is rigorous and demanding. *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278-79 (Fla. 1985). Florida courts have emphasized that the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *Id.* Conduct that is merely wrongful, unlawful, or even criminal does not automatically satisfy this standard. *Id.*

### Mr. Littlejohn's Conduct, While Criminal, Does Not Meet the "Extreme and Outrageous" Standard

The question under Florida law is not whether the conduct was illegal or harmful; it is whether the conduct was so extreme and outrageous as to be utterly intolerable in a civilized society. *Leach v. Dist. Bd. of Trs. of Palm Beach*, 244 F. Supp. 3d 1334, 1337-38 (S.D. Fla. 2017) (quoting *Metro. Life Ins. Co.*, 467 So. 2d at 278-79). "The question of whether conduct is sufficiently outrageous enough to support an [IIED] claim is a question of law, not a question of fact." *Glegg v. Van Den Hurk*, 379 So. 3d 1171, 1174 (Fla. 4th DCA 2024). When resolving the question, "Florida courts have construed the parameters of this cause of action extremely narrowly. Whether a

claim for intentional infliction of emotional distress will be held is highly dependent on the allegations in the particular case." *Leach*, 244 F. Supp. 3d at 1338.

Here, Mr. Littlejohn did not personally harass Plaintiff, threaten him, or engage in a campaign of targeted abuse. He did not exploit a position of power or trust *over Plaintiff*; rather, he abused his access to IRS systems. His conduct was directed at exposing legal tax loopholes utilized by individuals that fell within a generalized dataset, not at singling out Plaintiff for individualized treatment.

The disclosure of Plaintiff's tax information to journalists does not rise to the level of extreme and outrageous conduct. Courts have required far more egregious conduct, such as prolonged harassment, threats of violence, exploitation of fiduciary relationships involving direct personal control, or conduct calculated to cause severe psychological harm through particularly cruel or degrading means. *Williams v. Worldwide Flight Servs.*, 877 So. 2d 869, 870 (Fla. 3d DCA 2004).

**The Conduct Was Not Directed at Plaintiff Individually**

Florida courts have recognized that even when conduct is specifically targeted at the plaintiff, reflecting a purpose to cause that individual distress, it can still fall short of intentional infliction of emotional distress. *Stoddard v. Wohlfahrt*, 573 So. 2d 1060, 1062 (Fla. 5th DCA 1991). Here, by contrast, Mr. Littlejohn's conduct never specifically targeted Plaintiff. The tax data of thousands of individuals was obtained through a generalized parameter, and it was ProPublica—not Mr. Littlejohn—that framed the effort as one to inform public debate about tax policy. The First Amended Complaint alleges that Mr. Littlejohn accessed and disclosed tax information for

"numerous American taxpayers" and that his disclosures "resulted in the publication of numerous articles" addressing the tax practices of many wealthy individuals. Doc. 14 at 10-11, ¶¶ 45, 50. Plaintiff was one among many. This broad scope of conduct undermines any inference that Mr. Littlejohn acted with the specific intent to inflict severe emotional distress on Plaintiff personally. While his criminal conduct was concededly improper, it was not the kind of personalized, targeted campaign of harassment that the tort of intentional infliction of emotional distress is designed to address.

**Plaintiff Has Not Plausibly Alleged Severe Emotional Distress**

Even if the conduct were sufficiently extreme and outrageous, Plaintiff has not plausibly alleged the severe emotional distress required to sustain this claim. Florida courts require more than generalized allegations of distress; the distress must be severe, debilitating, and of a nature that no reasonable person could be expected to endure it. *Metro. Life Ins. Co.*, 467 So. 2d at 278-79. The First Amended Complaint alleges that Plaintiff suffered "loss of personal security, concern over ongoing dissemination of his financial information, and fear of future misuse of his confidential data." Doc. 14 at 18-19, ¶101. These allegations describe worry and concern, but they do not describe the kind of severe, debilitating distress required under Florida law, especially where the entity holding the tax dataset is prohibited from disclosing Plaintiff's PII.

Plaintiff does not allege that he sought medical or psychiatric treatment, that he was unable to perform his duties as a Senator, that he experienced severe physical manifestations of distress, or that his daily functioning was substantially impaired. The

allegations are conclusory and do not cross the threshold for severe emotional distress. For these reasons, Count IV fails to state a claim for intentional infliction of emotional distress and should be dismissed pursuant to Rule 12(b)(6).

## CONCLUSION

For the foregoing reasons, Defendant Charles Edward Littlejohn respectfully requests that this Court:

1. Dismiss Counts III and IV of the First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction;

2. Dismiss Counts III and IV pursuant to Fed. R. Civ. P. 12(b)(3) for improper venue, or in the alternative, transfer this action to a proper venue under 28 U.S.C. § 1406(a);

3. Dismiss Counts III and IV pursuant to Fed. R. Civ. P. 12(b)(6) because both claims are time-barred under Florida's two- and four-year statute of limitations; and

4. Dismiss Counts III and IV pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state claims upon which relief can be granted.

Grant such other and further relief as the Court deems just and proper. All dismissals should be with prejudice.

## LOCAL RULE 3.01(g) CONFERRAL CERTIFICATE

Undersigned counsel represents that undersigned conferred telephonically with Counsel for the Plaintiff, Richard Lynn Scott, who oppose the relief sought.

## CERTIFICATE OF SERVICE

I hereby certify that on August 3rd, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will serve all counsel of record.

/s/ Ali Kamalzadeh
Ali Kamalzadeh, Esq.
Florida Bar No. 115995
Kamalzadeh Law, PLLC
300 Ronald Reagan Blvd., Suite 205
Longwood, Florida 32750
Main: 407-550-1510
Direct:        407-579-0278
Facsimile:    407-278-0185
Eservice:    AKpleadings@aliklaw.com

/s/ Michelle Yard
Michelle Yard, BCS
Florida Bar Number: 14085
Email: michelle@michelleyard.com
**Law Office of Michelle Yard, PLLC**
1317 Edgewater Dr., Suite 4800
Orlando, Florida 32804
Office: (407) 488-6100
Attorneys for Charles Edward Littlejohn