Defendant Littlejohn
EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,      ) CRIMINAL ACTION NO.:
                               ) 23-343-ACR
           Plaintiff,          )
      vs.                      )
                               )
CHARLES EDWARD LITTLEJOHN,     ) Washington, D.C.
                               ) January 29, 2023
           Defendant.          ) 10:00 a.m.
_____)


TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE ANA C. REYES
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Government: Jonathan E. Jacobson, Esquire
                    Jennifer A. Clarke, Esquire
                    U.S. Department of Justice
                    Public Integrity Section
                    1331 F St. NW
                    Ste 3rd Floor
                    Washington, DC 20004

For the Defendant:  Lisa Manning, Esquire
                    Noah Cherry, Esquire
                    Schertler, Onorato, Mead & Sears, LLP
                    555 13th Street, N.W.
                    Suite 500 West
                    Washington, DC 20004


Also Present:       Andre Wilson, U.S. Probation

Reported by:        Christine T. Asif, RPR, FCRR
                    Official Court Reporter
                    United States District Court
                    for the District of Columbia
                    333 Contitution Avenue, NW
                    Washington, D.C., 20001
                    (202) 354-3247

Proceedings recorded by machine shorthand; transcript produced
by computer-aided transcription

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

P R O C E E D I N G S

THE CLERK:  This is criminal action 23-343, United States of America versus Charles Edward Littlejohn.

Would the parties please come forward and identify themselves for the record.

MR. JACOBSON:  Good morning, Your Honor.  Jonathan Jacobson for the United States.

THE COURT:  Good morning, sir.

MS. MANNING:  Good morning, Your Honor.  Lisa Manning and Noah Cherry on behalf of Mr. Littlejohn.

THE COURT:  Good morning, ma'am.

MS. CLARKE:  Jennifer Clarke, United States as well and with us at table is Cole Ashcraft with TIGTA.

THE COURT:  I'm sorry, I didn't grab your name.

MS. CLARKE:  Jennifer Clarke.

THE COURT:  Okay.  Good morning, ma'am.

MS. CLARKE:  Good morning.

THE COURT:  We are here for the sentencing of the defendant --

THE CLERK:  One more, Your Honor.

THE COURT:  Oh.

MR. WILSON:  Good morning, Your Honor.  Andre Wilson from probation.

THE COURT:  Thank you.  I'm sorry, Mr. Wilson.

We are here for the sentencing of the defendant

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

Charles Littlejohn, who has pled guilty to unauthorized disclosure of tax returns and return information in violation of Title 18, Section 7213(a)(1) of the United States Code.

Mr. Littlejohn, I never quite know how to start sentencing proceedings, because typically I would say good morning, but I know that this is not a good morning for you. I know that this may well be the worst morning of your life or one of them. And I want you to know that I know that and I'm sympathetic to it. And the courtroom is packed. You have the worst seat in the house and I am sorry for that.

I wish more than you can possibly know that we were meeting under different circumstances, because I have read the 29 letters from your friends and family. And they uniformly speak to a person of immense intelligence, deep caring, and unwavering loyalty. And I think anyone who has read those letters knows that to call you a friend is a privilege. And I've already handled enough sentencings to know that you can be an upstanding person and commit bad acts, even colossally bad acts. Unfortunately, those two things are not mutually exclusive. If they are we wouldn't be here today.

And I'm saying this all up front because at this hearing we will be spending quite a long time dissecting your failures. And I have to do that because in this country, in order to take away someone's liberty, a judge like me is required, thankfully, to set forth all of the reasons for her

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

decisions. And that is important because we require full transparency, again, before taking away someone's liberty.

And somehow we've gotten to a point in our society in which someone as intelligent and law abiding as you, thought it was not only acceptable, but a moral imperative to break the law to target the sitting President of the United States and a thousand other Americans. And to have the frank and thorough discussion we need to have to address fully what occurred, I will need to use stark and harsh language. Language I won't be able to cushion to spare your feelings or that of you and your friends and family. And let me say right now if I could do it differently, I would.

And I realize that this might not provide you with much solace, but I want you to know that I have studied and thought and struggled deeply about your sentence. And there have been very few days since I took your plea that I have not thought about your sentence in some way. Yesterday I brought my laptop and all of my papers in here and I sat at defense table. And I sat in the seat that you're sitting in right now to do my final preparation. And I worked there in particular to make it impossible for me to forget that I'm going to be responsible today for taking away someone's liberty, someone with friends and family who love him. Someone who has repeatedly answered the call to help others and someone whose actions were guided, however misguided the thought was, by a

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

genuine belief of doing the right thing.

Today, however, I am of course in a different chair. And my responsibility today is to the oath I took to support and defend the Constitution of the United States against all enemies foreign and domestic, because let me be absolutely clear, what you did in targeting the sitting President of the United States was an attack on our constitutional democracy. And whatever the motivation, I have to punish it with a firmness of purpose that such an attack demands.

All right. So before we continue a housekeeping matter, I want to briefly address an issue that arose last week. On January 23rd, 2024, my chambers received via email a letter from the Republican members of the U.S. House of Representatives Committee on Ways and Means. I read the letter the same day and via my clerk told the signatories that I was carefully considering the information and thanking them for their time. The next day via email, Mr. Littlejohn's counsel objected to the Court's consideration of this letter and any similar letters, because the members are neither parties in the case nor victims.

I disagree. The Supreme Court has made clear that both Congress and the Sentencing Commission have expressly preserved the traditional discretion of sentencing courts to, quote, conduct an inquiry broad in scope, largely unlimited, either as to the kind of information they may consider or the

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

source from which it may come. *Pepper v. U.S.* 562 U.S. 476, 489 to 11, *U.S. v. Tucker* 404 U.S. 443-446, 1972.

Also, nothing in the letter prejudices Mr. Littlejohn's preparation for today's hearing. It does not contain any new information not already available and indisputably properly before me in the record. And while the letter does reflect the unremarkable fact that certain members of Congress feel strongly about what sentence I should impose today, that fact has zero impact on me or my decision.

There are two side effects of the letter, I should tell people about. It reminded me that there's a Ways and Means episode of the *West Wing*, which as I recalled was quite good. So I rewatched it as I unwound one night last week. It was not helpful to do that because coincidentally it starts off with an outside shot of this very courthouse. It also gives me an excuse to mention that for those who are interested in how we got to an income tax, including its introduction during the civil war, its affects on that war's outcome, I highly recommend to you a recent book by Roger Lowenstein entitled: *Ways and Means, Lincoln and His Cabinet and the Financing of the Civil War*. All that aside and for the avoidance of any doubt, the Court has not and will not base any part of its sentencing decision on the January 23rd, 2024 letter.

Turning to the materials I have reviewed. I have

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

reviewed -- received and reviewed the presentence report and sentencing recommendation from the probation department. And the following documents submitted by counsel in advance of the hearing: The plea agreement and statement of offense signed by Mr. Littlejohn. Sentencing memorandum from the government and from Mr. Littlejohn, including letters and articles in support. Six victim impact statements filed under seal by the government. I am going to be reading from some of those today and the government has indicated it has no objection to that. I will, of course, not use any identifying information. The notice of supplemental authority by Mr. Littlejohn filed on Saturday and the response by the government filed on Sunday.

I also want to briefly address another issue that arose over the weekend. On Saturday I emailed the parties to be prepared to address today at this hearing a certain legal question. And I attached -- or my clerk attached three cases for the parties to discuss at the hearing. Yesterday, the government filed a short brief addressing the question. I have not reviewed that brief because I did not authorize a filing. I made it clear in my email to be prepared to discuss the issue today only. And I'm not averse, Mr. Jacobson, to reading more paper, but doing so would be unfair to Ms. Manning who abided by my instructions. I, therefore, order the clerk of the Court to strike the filing, docket 32. And, Mr. Jacobson, you can of course make the arguments you made

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

there today.

All right.  Let me start with the presentence report.  Probation filed the final presentence report and sentencing recommendation in this matter on January 22nd, 2024.

To the government, does the government have any objection to any of the factual determinations set forth in the presentence report?

MR. JACOBSON:  No, we do not, Your Honor.

THE COURT:  Are you expecting an evidentiary hearing or do you have any witnesses present in the courtroom?

MR. JACOBSON:  Your Honor, there are at least -- at least one victim is present in the courtroom, but we're not anticipating calling any witnesses at sentencing.

THE COURT:  All right.  Mr. Littlejohn, are you fully satisfied with your attorney in this case?

THE DEFENDANT:  I am, Your Honor.

THE COURT:  As well you should be.  She has done a terrific job on your behalf.

THE DEFENDANT:  I agree.

THE COURT:  Do you feel that you have had enough time to talk with her about the probation department's presentence report and the papers filed by the government in connection with the sentencing?

THE DEFENDANT:  I do, Your Honor.

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

THE COURT: Ms. Manning, have you and your client read and discussed this presentence report?

MS. MANNING: We have, Your Honor.

THE COURT: Do you have any objections to the presentence report?

MS. MANNING: No, Your Honor.

THE COURT: Are there any disputed issues of fact?

MS. MANNING: No, Your Honor.

THE COURT: All right. Could you please, Ms. Manning, also confirm for the record that there are no objections to paragraph 16 of the report, in particular to the part that says, "In 2017 Defendant Littlejohn sought employment with Company A for a third time. He acknowledged that one of the reasons he decided to reapply to Company A was the possibility of being signed to a project that might allow him with access to taxpayer information for then President Donald Trump, who he viewed as, quote, dangerous and a threat to democracy, end quote, which he could then provide to the media."

MS. MANNING: No objection, Your Honor.

THE COURT: All right. Thank you.

Hearing no objection, I will accept the factual recitation in the presentence report regarding the circumstances of the offense. And, therefore, the facts as stated in the presentence report will be my findings of fact

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

for the purpose of this sentence.

The presentence report lays out the probation office's calculation of the initial advisory guideline range that applies in this case.  This calculation was done using the 2023 guidelines manual and is as follows:  Beginning with the offense level, the applicable guideline in this case is U.S.S.G. 2H3.1, which has a base offense level of 9.  A two-level increase applies for Mr. Littlejohn's role in the offense under U.S.S.G. 3B1.3, because he used in his position -- he used his position of trust with Company A, which provided access to IRS taxpayer data, and knowledge of IRS security procedures to access unmasked taxpayer data and download the data for dissemination to the public.

The parties have stipulated that a two-level increase applies for obstruction of justice under Section 3C1.1 because Mr. Littlejohn willfully obstructed or impeded, or attempted to obstruct or impede the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and the obstructive conduct related to the defendant's offense of conviction and any relevant conduct.  That brings Mr. Littlejohn's adjusted offense level to 13 before two additional adjustments are applied.

First, Mr. Littlejohn meets the criteria for an adjustment under Section 4C1.1 so, therefore, a two-level

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

decrease applies.  Second, Mr. Littlejohn has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is further decreased by two levels under Section 3E1.1(a).

Specifically, I note that as the presentence report quoting defense counsel's statement explains, quote, Mr. Littlejohn has cooperated with the government's investigation and agreed to plead guilty prior to the expiration of the statute of limitations for the offense.  He voluntarily sat for two proffers with the Department of Justice Public Integrity Section and TIGTA agents, and provided additional information to the government through counsel.

Mr. Littlejohn has taken responsibility for his conduct, assisted with the discovery of additional evidence, and shared information with the government with the aim of preventing future breaches of IRS databases.  In addition to providing factual and highly technical proffers to the government, Mr. Littlejohn shared with TIGTA ways in which the IRS could detect and deter future thefts and illegal disclosures of IRS data, end quote.  Therefore, prior to considering any departures or variances Mr. Littlejohn's total offense level is 9.

Are there any objections to the calculation of the offense level, Mr. Jacobson?

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

MR. JACOBSON: No, Your Honor.

THE COURT: Ms. Manning?

MS. MANNING: No, Your Honor.

THE COURT: Turning to the applicable Criminal History Category, the presentence report has found that Mr. Littlejohn has a Criminal History Category of zero and, therefore, is being designated in Criminal History Category I.

Any objections?

MR. JACOBSON: No, Your Honor.

MS. MANNING: No, Your Honor.

THE COURT: Based on the offense level and Criminal History Category I, I have just discussed, the presentence report calculates the initial advisory guidelines range to be four to ten months of imprisonment.

Having determined the applicable guidelines range the next step for me is to consider departures. The government seeks a upward departure pursuant to Application Note 5 of U.S.S.G. 2H3.1. That note states that there are certain examples in cases in which an upward departure may be warranted. And that can include that the offense level involved personal information, means of identification, confidential phone records information, or tax return information of a substantial number of individuals. And that the offense caused or risked substantial non-monetary harm to individuals whose private or protected information was

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

obtained. Mr. Littlejohn concedes that a two- to four-level upward departure is appropriate under Application Note 5, Section 2H3.1 because its disclosures involved, quote, tax return information of a substantial number of individuals, docket 25 at 1 and 5.

Ms. Manning, am I correct that Mr. Littlejohn concedes up to a four-level departure to offense level 13 is appropriate here?

MS. MANNING: Yes, Your Honor.

THE COURT: All right. That would establish a final advisory guideline range of 12 to 18 months of imprisonment. I will impose, as Mr. Littlejohn concedes is appropriate here, a four-level upward departure from offense level 9 to offense level 13 for the following reasons under Application Note 5 of 2H3.1. The offense covered personal information and tax return information of a substantial number of individuals, over a thousand. The offense, of course, caused or risked substantial non-monetary harm and resulted in a substantial invasion of privacy.

As one victim wrote in an impact victim statement to me, quote, the information and data in one's tax filings are deeply private and profoundly personal, it is not just dollars and cents. It included my home address, Social Security number, driver's license number, banking and financial data, and certain health data. And not just mine, that of my wife

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

and children.

Our privacy was not only violated by the stealing of the information and the publishing of the information, but also by the unscrupulous journalist who used the information to harass me and my family. Specifically, they trespassed on my property, left threatening notes on my doorstep and intimidated my wife. Cars were lined up outside of our home day and night, end quote.

Mr. Littlejohn targeted and violated the rights of victims by invading their privacy. Those victims were wealthy. And the wealthy and poor alike are entitled to equal protection of our laws, laws that guarantee Americans their sensitive tax data will not be disclosed. Indeed, when accepting this position I took an oath to, quote, do equal right to the poor and to the rich, end quote. And to be sure, as applied, that usually means that the poor should not be treated any worse because they do not have means. But it works both ways. The wealthy are no less entitled to privacy than other Americans. They are no less hurt by its intrusions than other Americans. And as victims they are no less entitled to my consideration of their harm than other Americans.

Therefore, following the four-level upward departure from offense level 9 to offense level 13, the final advisory guideline range for Criminal History Category I is 12 to 18

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

months, increased from 4 to 10 months in the initial advisory guideline range.

Prior to the upward departure, the applicable guideline range was in Zone B of the sentencing table. Under Zone B the minimum term of imprisonment may be satisfied by one, a sentence of imprisonment; two, a sentence of imprisonment that includes a term of supervised release; or three, a sentence of probation that includes a condition or combination of conditions that substitute for confinement.

The Court also notes, as Mr. Littlejohn argues, that if the offense is in Zone B, Application Note 10 provides that if the defendant received an adjustment under 4C1.1, as Mr. Littlejohn did, then quote, a sentence other than a sentence of imprisonment is generally appropriate, end quote.

The four-level upward departure, however, removes the offense to Zone C as in C. under the guidelines because the offense is in Zone C of the sentencing table, the minimum term may be satisfied a sentence of imprisonment, a sentence of imprisonment that includes a term of supervised release, provided that at least one half of the minimum term is satisfied by imprisonment. And that's 5C1.1(d).

Are there any objections to the guidelines framework and its calculation?

MR. JACOBSON: No, Your Honor.

MS. MANNING: No, Your Honor.

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

THE COURT: All right. Now, 18 U.S.C. 3553 requires me to consider a variety of factors including the sentencing range the guidelines proscribe, which I have just discussed and will discuss in more detail below, and the applicable penal statutes.

The charge of unauthorized disclosure carries a statutory maximum of five years, that is 60 months of imprisonment. As set forth above, based on the calculations, the resulting final guidelines imprisonment range is 12 to 18 months.

With respect to supervised release the Court may impose a term of supervised release not more than three years. The guideline range for a term of supervised release is 1 to 3 years. If a sentence of imprisonment of one year or less is imposed a term of supervised release is optional. Supervised release is required if the Court imposes a term of imprisonment of more than one year or when required by statute.

I further note that community service may be ordered as a condition of supervised release, but that under the guidelines it generally should not be imposed in excess of 400 hours.

With respect to probation the defendant is eligible for not less than one nor more than five years of probation. Under the guidelines, if probation is imposed, the term shall

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

be at least one year but not more than five years if the offense level is 6 or greater as it is here.

The statute of conviction sets a maximum fine of up to $5,000, which as the PSR notes, would make the guidelines range between $2,000 and $5,000 at offense level 9, but following the upward departure to offense level 13 the statutory fine of $5,000 becomes the guidelines range.

Is there any objection to that calculation of the guideline range of $5,000 for the fine level for offense level 13.

MR. JACOBSON: I'm sorry, Your Honor, I'm just looking at 5B1.2. No, there's no objection.

MS. MANNING: No objection, Your Honor.

THE COURT: A special assessment of $100 per count is mandatory. In determining the fine amount the Court shall consider among other factors the expected cost to the government of any imprisonment, supervised release, or probation component of the sentence. The presentence report states that pursuant to 18 U.S.C. 3663, and the guidelines, restitution shall be ordered in this case. To date, however, no restitution requests have been received from the government and, therefore, my understanding is that restitution is not warranted in this case.

Mr. Jacobson, is that correct?

MR. JACOBSON: Your Honor, we have not received

requests for restitution, so I believe Your Honor is correct.

THE COURT: All right. Are there any objections to the statutory and guidelines framework I have described above?

MR. JACOBSON: None from the government.

MS. MANNING: No, Your Honor.

THE COURT: Before I discuss the other sentencing factors that will bear on my final decision I will at this point notify the parties of the sentence the probation office has recommended, taking into account the guideline range, the available sentencing, and all the factors of 3553(a). The recommendation is 18 months of incarceration, three years of supervised release, and a $4,000 fine. The recommendation of probation office is not based on any facts or circumstances that have not already been revealed to the parties in the presentence report.

At this point I would love -- I would like to give the opportunities -- the parties an opportunity to address the Court. Mr. Jacobson.

MR. JACOBSON: Thank you, Your Honor.

THE COURT: Mr. Jacobson, before you start, can you explain the difference please between a plea reached on an information and one reached after an indictment, and how that difference might account for the single felony charge that we see today.

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

MR. JACOBSON: Well, Your Honor, a plea reached on an information is usually the result of a negotiated resolution between the parties, whereas a plea reached after an indictment, frequently is a result of an inability or unwillingness on the defendant to accept responsibility before indictment.

THE COURT: So it's possible that the government was prepared to bring a number of counts against Mr. Littlejohn, had he been -- had he forced you to go to indictment, but because you were able to do all of that before he pled, all we see today is the one count that he agreed to.

MR. JACOBSON: That's correct, Your Honor.

THE COURT: All right. And you have asked that I sentence Mr. Littlejohn to the statutory maximum penalty of 60 months in prison, but Mr. Littlejohn has accepted responsibility, he has cooperated with the government, and he has shown remorse. And typically a sentencing judge takes those factors into account in reducing a sentence, so what do I do?

MR. JACOBSON: Well, Your Honor, if I may be heard, I think that generally my -- the explanation I intended to give here today would be responsive to the question Your Honor's asked.

THE COURT: Okay. Well, then I also want to know what charges Mr. Littlejohn would have faced had he elected to

proceed to trial, and whether if convicted those crimes would have involved additional potential sentencing exposure.

MR. JACOBSON:  Your Honor, because that event never came to pass, the government did not reach a determination, any kind of final determination about what charges would have been brought in the absence of this information.

THE COURT:  But what would he have been exposed to?

MR. JACOBSON:  That would be a function of what the charges would be and because we never ultimately --

THE COURT:  Well, Mr. Jacobson, I'm trying to help you here.

MR. JACOBSON:  Sure.  I understand, Your Honor.

THE COURT:  I'm trying to figure out what sentence he was facing had he gone to trial, versus what sentence he's facing today, and if the fact his cooperation has already been taken into account, because instead of facing whatever sentence he would have faced he is now facing the five-year maximum.

MR. JACOBSON:  Your Honor, I think it's fair to say that facing that five-year maximum is a benefit that was accorded to this defendant.

THE COURT:  Okay.  Well, explain that to me in detail, not just tell me it's a benefit.  I need some actual something.

MR. JACOBSON:  I understand, Your Honor.

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

THE COURT:  And I'll let you proceed.

MR. JACOBSON:  The concern that I have, Your Honor, is I can't get into internal deliberations --

THE COURT:  No, I know you can't get into internal deliberations.  But we're dealing with someone who, by your own words, pulled off the biggest heist in IRS's history.  And I think -- I need know before I make a sentencing decision, and I think the public deserves to know why we're here and he's only facing one felony count.  And I'm giving you every opportunity to make it clear to the public why that happened.  And you can do that, I am confident, without disclosing confidential work product and without disclosing your plea negotiation.  And I expect and hope that you're prepared to do that today.

MR. JACOBSON:  I am, Your Honor.

THE COURT:  Okay.  Go ahead.

MR. JACOBSON:  So, Your Honor, ultimately this 7213 count, this 7213(a)(1) count was the most readily provable felony that covered all of the defendant's conduct.  His guidelines today would be the exact same whether we had charged him with a thousand counts of 7213 or whether we had charged --

THE COURT:  But it wouldn't be the same if you had charged him with other counts.  I mean, he stole government data.  That's not a disclosure count.  That's different than

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

the disclosure count.  I mean, DOJ prosecutors can get pretty creative on what kind of counts to bring.  So that's really what I'm looking at here.

MR. JACOBSON:  The core misconduct here, though, Your Honor, is the theft and the disclosure of the tax returns.

THE COURT:  Yeah, but the one you charged him on was just on disclosure.  You have separate theft counts the government can bring; right?

MR. JACOBSON:  You're talking about 18 U.S.C. 1641?

THE COURT:  I'm talking about any number of things I'm confident the government can bring against someone who steals government property.

MR. JACOBSON:  Your Honor, there may have been hurdles to charging a 641 theft of government property count here.

THE COURT:  I'm sorry, are you representing to me that someone can steal thousands and thousands and thousands of taxpayer information and the only count that the government could possibly bring is a disclosure count, because I'm confident that that's not the case.  And I'm not sure why you're fighting me on this, I'm trying to help you.

MR. JACOBSON:  No, I understand, Your Honor.  I just want to be clear -- I want to both be responsive to Your Honor's questions, but also not get into the determinations

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

that were made internally within the Justice Department about a charging decision in this case. I can say, Your Honor, though, that it is conceivable that additional charges could have been brought. Ultimately, we never reached a determination about what those charges might have been because we reached a negotiated resolution with Mr. Littlejohn. But at the end --

THE COURT: I'm sorry, so you're telling me that when you reached your decision you didn't even bother to figure out what you could have brought? I'm sure that's not the case.

MR. JACOBSON: Your Honor, we did consider alternative charges, but because we never reached a determination, there was never a moment where it was -- where a decision was made, we absolutely can bring this count, this count, this count, we've conducted the research, we've made a determination that these charges are viable. We ultimately, Your Honor, did not get to that point. But the bottom line is that the conduct, the core misconduct here is the disclosure of the tax returns. And whether the government could have been creative or risked, you know, taken -- rolled the dice on charges that might not have been at the core of the misconduct, that is a difficult question, Your Honor. I'm not prepared to talk about --

THE COURT: Well, I suggest at some point, sir, you

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

become prepared to talk about it. Because I -- the fact that he did what he did and he is facing one felony count, I have no words for. And what I thought you were going to tell me today is something a little bit more specific than what you just told me. That would make it make a little bit more sense. Go ahead.

MR. JACOBSON: I understand Your Honor's concerns. But ultimately the 7213, that is the misconduct --

THE COURT: Well, then we're back to my initial question then, which is if that is all he's going to be charged with, if that's all he could possibly have been charged with, how could I possibly give him 60 months?

MR. JACOBSON: Because, Your Honor, among other things the guidelines directly contemplate -- your Honor did recognize that the guidelines recognize an enhancement is appropriate when --

THE COURT: How can I vary upwards without taking into account he cooperated and give him something for that?

MR. JACOBSON: Your Honor, I think a variance is still appropriate -- an upward variance is still appropriate here looking at the volume --

THE COURT: I agree an upward variance is appropriate. My question is, how can I upward vary to 60 months if he's cooperated, and you're giving me literally nothing else to say that he got a benefit already.

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

MR. JACOBSON: Your Honor, I can explain to you why we believe this case justifies an upward variance, but at the end of the day, the government's charging decision here yielded this one count. And this one count covers the full extent of the defendant's misconduct. And with a statutory cap of 60 months, that gives Your Honor space to give a sentence that we believe is just here. Whether we had brought a thousand counts or one count, we would be standing up here seeking the same 60 months. So, ultimately, the outcome we believe would be the same, whether we had brought additional counts or not, in terms of our sentencing recommendation. There's space here within the statutory maximum to achieve a just outcome here.

So Your Honor, I want to start by talking about -- talking about this offense. And just backing out at a high level about what happened here. The enormous magnitude of the defendant's crime is unparalleled in the history of the Internal Revenue Service.

THE COURT: Which might account for the reason that I'm questioning why he's being charged with one felony count.

MR. JACOBSON: Well, Your Honor, as --

THE COURT: You don't have to repeat yourself. I'm just -- go ahead.

MR. JACOBSON: Over the course of two years the

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

defendant, who's an experienced and successful professional, was entrusted with access to Americans' unmasked taxpayer data. He repeatedly abused that trust by stealing and disclosing thousands of citizens tax returns and return information. The disclosures were intended to damage his victim's reputations and through that criminal damage he sought to influence an election and to reshape our nation's political discourse and political process.

Along the way he tried to cover his tracks by destroying evidence and subverting the investigation that he knew would follow his disclosures. But he was unsuccessful and he stands here today having committed again one of the most serious crimes in the IRS's history.

The harm, it's worth noting, Your Honor, is also an ongoing harm. Even after the plea in this case, as Your Honor is aware, there was an article that was published by one of the news organizations that contained some of the information the defendant had disclosed to that news organization. But the harm wasn't even limited to the victims whose data the defendant stole. The damage was more extensive. All Americans are obligated to provide an enormous amount of financial information about their private lives to the IRS, to the government. And in exchange, in turn, what we expect from the government, and what we expect from the IRS, is that they will secure that data. They will protect that data. The

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

defendant's crime undermined that faith.  It undermined that trust.

The crime justifies a significant sentence here, a sentence that communicates to the public and that individuals who weaponize their privileged access to private data for their own personal political agendas, and to advance those agendas, will face grave and serious consequences.  A 60-month sentence here would send a message that no one is above the law.  Whatever --

THE COURT:  If I give him 60 months and nothing off for cooperation, won't it also send a message that if you break the law, don't cooperate with the government, because just roll the dice at trial, because you're only going to get the maximum any way?

MR. JACOBSON:  Your Honor, I want to correct a mis- -- a possible misimpression from -- that might have arisen from the PSR and from the defendant's statements to probation.  The defendant's not getting a 5K.  He's not provided substantial assistance within the meaning of the guidelines.  His cooperation is not cooperation within the meaning of the guidelines.

THE COURT:  But it's cooperation.  I mean, you took it, you didn't say to him we don't need your help.

MR. JACOBSON:  That's correct, Your Honor.  But what he did was to help remediate the harm he caused.  It's not as

though he went out and assisted the government in prosecuting numerous co-conspirators.  That's not what happened here, Your Honor.  What he did was he accepted responsibilities for his actions and he assisted in two proffers, Your Honor, and some limited assistance locating some of the USB drives.  That's the cooperation here.  It's two proffers, Your Honor.  So the cooperation -- I don't want the Court to be under the impression that this defendant should have gotten a 5K but didn't.

THE COURT:  No, I understand the Sentencing Guidelines.  Go ahead.

MR. JACOBSON:  Understood, Your Honor.  I just want that to be clear.  His cooperation is cooperation within colloquial parlance.  It's not cooperation within the meaning of the guidelines.

I want to briefly highlight three points here, Your Honor.  First, the sheer volume of the individuals who were directly impacted by the defendant's disclosures, at least some of whom are here in the courtroom today.  The defendant disclosed over 8,000 annual income tax returns, including annual income tax returns for approximately 7,600 individuals and over 600 entities.  Some of that information has already been published.  But other victims have essentially no choice but to sit and wait to see if embarrassing details about their private financial lives and the private financial lives of

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

their family are going to be published tomorrow, next week, next month, next year. As one victim explained, there's fear that the victim's tax information will be, quote, further disseminated or used for additional unlawful purposes for reputational attacks.

But the tax returns are just the tip of the iceberg here, Your Honor. The defendant also disclosed tons of additional tax information that might have been associated with those returns, but wasn't an actual tax return. Taking into account that additional type of information, the disclosures affected approximately 18,000 individuals. Affected 73,000 businesses. Again, the magnitude of the harm is immense and it's unprecedented and it justifies a 3553 variance, even setting aside the departure under the application note that Your Honor's already imposed. It's exceptional. It's unusual. It's not like any other 7213 case that's ever been brought.

The second factor I want to highlight Your Honor, is the extensive planning and the careful execution of this offense here. The defendant plotted his thefts and disclosures over the course of approximately two full years. He learned over time to exploit IRS's -- exploit loopholes in the IRS's systems. He went back in over and over and over again to seek more taxpayer information to disclose to the news organizations. He spread the data around multiple

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

different devices and to two different news organizations.

This case is not about a momentary lapse in judgment in an otherwise law abiding life. That's not what this case is. Instead, for years this defendant was abusing his position of trust to secretly and repeatedly extract and divulge personal details of the thousands of -- of thousands of Americans who willingly provided that information to the government.

A final point, Your Honor, and I think this is an important point with regard to the variance, is that the government's request for 60 months here is in part based on general deterrence. As I mentioned earlier, the Court should take this opportunity to communicate an appropriate message about the seriousness of disclosing taxpayer data.

The defendant's brief cited numerous 7213 cases that yielded probationary sentences. And we have two responses to those cases. First, ultimately those cases involve situations that look nothing like what happened here. You had cases where an individual was disclosing a small number or even one tax return for private financial gain. I think an example could be the Washington case that the defense cited, which was an IRS employee looked at her ex-husband's tax return in order to increase child support payments. And that's the general flavor of those 7213 cases that were cited by the defendant. There is no meaningful comparison between those cases and what

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

happened here. I think that's apparent on the face also even, frankly, of the defendant's brief, which accurately characterized some of the information from those cases.

But more fundamentally, the probation sentences in the in the other 7213 cases, and some of the lighter sentences in the classified information cases, reinforce rather than undermine the need for a significant sentence here. Criminal activity of this kind, of the nature that's involved here, it often involves sophisticated individuals who undertake their disclosures after careful execution, careful planning, thinking through, researching the consequences of what those actions might be. Crimes like that, Your Honor, are uniquely susceptible to general deterrence. These aren't crimes of passion. These aren't crimes that occur because a thought momentarily popped is a into someone's head. These crimes take a long time to be planned out and to be executed.

And individuals out there who might be considering similar offenses, whether for economic reasons, for ideological reasons, for political reasons, they need to see and they need to understand, Your Honor, that the consequences will be serious, they will be substantial, and they will be severe. And the space that Your Honor has, as a result of even this single charge that covers all of the conduct here, the space that Your Honor has gives an opportunity for you to do justice here and to recognize all of the aggravating

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

factors that I've walked through up here. An incarceratory sentence of 60 months is necessary, it's appropriate, and it's the just result here, Your Honor.

THE COURT: Okay. Thank you.

MR. JACOBSON: Thank you.

THE COURT: All right. I will now hear from any victims who wish to speak pursuant to 18 U.S.C. 3771(a)(4). Before I do that I want to remind everyone that we are in a courtroom and not at a campaign rally. And that if we verge into a campaign rally I will cut it off.

All right. That said, does anyone wish to speak today.

Right here Senator Scott. Good morning, sir.

SENATOR SCOTT: Good morning.

Your Honor, thank you for giving me the time to make -- giving me the opportunity to make these comments to you in open court. What I'm about to say means no disrespect to you or the staff prosecutors in this case.

Your Honor, newspapers have called this a plea deal, it should be called the plea deal of the century. Mr. Littlejohn abused his position of trust; stole personal financial data; released that data intentionally and with malice to harm Americans, including me and my family; and clearly violated the law and disclosed the private tax and financial information of thousands of Americans, thousands.

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

Yet today he will skip accountable for his deeds in all but a single case. He is pleading guilty to just one violation out of thousands and he will be punished for just one violation not thousands.

The United States Department of Justice acknowledges that I'm a victim of Mr. Littlejohn's actions and generously offered me the opportunity to give a victim impact statement. Unfortunately, there are more victims of this crime than can fit in the courtroom today. Donald Trump, Elon Musk, Ken Griffin, the list is long. All attacked for political purposes because they are wealthy or rich, wealthy or Republican or both. All attacked for political purposes that coincide with the political desires of the Biden administration.

But there are more victims than just those named in this case. In a broad sense every American is a victim here. Why? Because this case is part of the ongoing dangerous corruption of the justice system at the federal level --

THE COURT: Mr. -- Senator. Senator, okay. I'm not going to listen about allegations of corruption at DOJ. That's not why we're here today. So please move on if that's where you're going.

SENATOR SCOTT: The truth is Mr. Littlejohn is getting this sweetheart deal crime because his crimes advanced somebody's political agenda. This plea deal is no further --

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

it's further proof that what's happened is -- I mean, you talked about why are we only prosecuting one case, that makes no sense.  There's thousands of cases here.  And if you just go through this, look at what we're doing here.  I might just give you an example of something else, okay, so when the president's diary -- daughter's diary was -- Project Veritas was going to put it out you got an FBI raid, you had an FBI investigation, Justice investigation and a raid.  ProPublica puts out Donald Trump's, Elon Musk, my tax returns information, nothing.

THE COURT:  Well, I don't think they knew who it was at the time.  You can't raid someone if you don't know who it is.

SENATOR SCOTT:  Well, I -- have they done anything since?

THE COURT:  I mean kinda.

SENATOR SCOTT:  ProPublica?  I mean, the bottom line is I do not understand why we're talking about one case out of thousands, right.  And by the way, we don't know how much -- who else is going to put out more information on my tax returns because they have them.  Right.  Not just impacts me, it impacts my kids, my grandkids, right.  And for how long?  Because nobody else is being held accountable.  So I think it's wrong.  I hope you reject the plea deal.  And if you don't, you give the maximum sentence.

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

THE COURT: All right. Thank you. I can't reject the plea deal, I've already accepted it. But thank you. And thank you for coming today. Anyone else?

All right. Ms. Manning.

MS. MANNING: Your Honor, Mr. Cherry will be addressing the Court first on the Court's question of the per se reasonableness.

THE COURT: Terrific, thank you.

MR. CHERRY: Good morning, Your Honor.

THE COURT: Good morning Mr. Cherry.

MR. CHERRY: Before going to the per se issue, I just wanted to briefly address the one count in this case. So our position is that he pled guilty to exactly the crime he committed. And I know the government mentioned the possibility of charging 18 U.S. Code, 641 for theft of government funds. I don't have the case law prepared for this hearing, but had they charged that offense as well, we do not believe it would have substantially changed the guidelines, because our position is that it would be a zero loss theft.

THE COURT: Okay. Thank you.

MR. CHERRY: Your Honor, in response to your question over the weekend, it is not per se unreasonable to charge a defendant to the statutory max after pleading guilty, accepting responsibility, and cooperating. However, we believe it would be unreasonable in this case. We cite the

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

proper analysis for the Court in our sentencing memorandum and Your Honor has gone over it briefly today. But the Court must begin with the sentencing guidelines and any variance or departure from the guidelines must be supported by statute, precedent, and the law. A more -- and the Supreme Court has made clear that a more significant departure must be justified by a more significant justification.

The cases the Court referenced over the weekend bear no resemblance to the facts here. First, the Supreme Court explained in *Pugh*, that a guidelines sentence is presumptively reasonable. The first case that Your Honor cited, *Ortiz,* involved a defendant who was convicted for operating a methamphetamine lab and was sentenced below the statute -- below his sentencing guidelines -- or I'm sorry that the statutory max fell below the statutory guidelines and was, therefore, presumptively reasonable. Next in *LePage* the defendant was sentenced to the bottom half of the sentencing guidelines, which happened to be statutory max.

The third case Your Honor cited in *Helton*, although the defendant was sentenced above his sentencing guidelines, there were factors that the Court took into consideration that were not adequately accounted for in the guidelines. For example, the defendant had a history -- criminal history points 150 percent above the high -- or the highest category for criminal history. Further, the government -- or the judge

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

observed that there was serious concerns with specific deterrence and how the defendant had a long history of similar offenses and was -- had constant engagement with law enforcement in multiple jurisdictions.

These cases do not support a statutory max sentence for Mr. Littlejohn.  Sentencing Mr. Littlejohn to six times the upper end of his sentencing guidelines, or equivalent to a 15 point departure would be unreasonable.

THE COURT:  Well, I mean -- Ms. Manning, you're going to address that I take it?

MS. MANNING:  Yes, Your Honor.

THE COURT:  Okay.  I'll wait.

MR. CHERRY:  The government's request for the Court to sentence to the statutory max and ignore precedent is telling.  We have cited dozens of cases that support sentencing Mr. Littlejohn to a guidelines sentence accounting for the two- to four-point departure.  A statutory Max sentence would necessarily ignore the guidelines, the law, and the precedent that we cite.  We trust that the Court will impose a reasonable sentence in this case.

THE COURT:  I will impose a reasonable sentence, you can be assured.

Ms. Manning.

MS. MANNING:  Ms. Manning.

MS. MANNING:  Good morning, Your Honor.

THE COURT: Good morning, Ms. Manning.

MS. MANNING: First, I wanted to thank you and your colleagues for all of the time and attention that you've spent on this case.

THE COURT: Thank you. She is pointing to my law clerk, because he has been emailing at all hours over the weekend. You know, one of the best parts about this job is you get to work with phenomenal young attorneys. And I am very, very thankful to my clerks, and Jon in particular who has done Yeoman's work on this case. And thank you for recognizing him.

MS. MANNING: We greatly appreciate that. And we know that there are a lot of factors that go into your decision and you do not have an easy task.

We also wanted to thank and recognize Senator Scott for appearing here and his time. And to the other victims that took the time to write letters to the Court. And before I proceed, I also wanted to recognize Mr. Littlejohn's family and friends, who are here to support him in court today, including his brother, his partner, and several other close friends, and his partner's mother. As the Court is aware, due to health conditions, his parents were unable to travel to be at the Court today. But asked me to convey that they are -- I believe they are joining by video link -- and that they are very much here in spirit. And I think his mother said that

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

she is heartbroken not to be here, but is supporting him from afar.

Your Honor, at Mr. Littlejohn's plea hearing you, if I may paraphrase, stated that this is a country of laws. And if society does not follow those laws it does not function.

THE COURT: That sounds about like what I would say.

MS. MANNING: And I submit that that is not only true when an individual like Mr. Littlejohn takes the law into his own hands, but also where the government and others are urging the Court to simply disregard the law, to disregard the guidelines, to disregard the guidance of the United States probation office, and to disregard decades of precedent.

THE COURT: So, Ms. Manning, my problem, and I'll just be quite frank with you, is there's just -- he targeted the sitting President of the United States of America.

MS. MANNING: Yes, Your Honor.

THE COURT: And that is exceptional by any measure. And I, you know, I don't care if he thought that President Trump was the living embodiment of James Buchanan, Andrew Johnson, and Herbert Hoover combined. I don't care. I don't care how many people might have agreed with him. He was the sitting President of the United States And when you target the sitting President of the United States you are targeting the office. When you target the office of the President of the

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

United States you're targeting democracy. You're targeting our constitutional system of government. And I just disagree that it is disregarding the law to suggest that that deserves a maximum punishment and requires a maximum punishment in order to deter anyone else from doing that.

MS. MANNING: Your Honor, we do not take any issue with the severity of the conduct. The Court has already recognized that Mr. Littlejohn has come forward, he has accepted full responsibility. The Court has also recognized, however, his motive in this case, which however misguided, did not come from a place of malice, or avarice, or any type of animus. In fact, Your Honor, I submit that this, even though there has been so much political attention to this case, that as you read in the many letters to this Court, he acted not out of a political motivation, in terms of a partisan political motivation --

THE COURT: Ms. Manning, of course he did. Ms. Manning, that's just not credible. That's just not credible. I mean, I just cannot believe that the fact of who it was had no bearing on why he did what he did. I mean, if you -- if I'm misguided about that and I'm just wrong about that, I mean, you tell me. But it just seems improbable to me.

MS. MANNING: Your Honor, I think as we recognized in our papers, and you will hear from Mr. Littlejohn, he was troubled by the administration. But I think the point I'm

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

trying to make, and maybe unsuccessfully, is there's a distinction between targeting an individual -- for example, in some of the precedent that we cited to the Court, there was a, you know, one of the unauthorized disclosure cases in which the defendant targeted a sitting judge and the unauthorized -- because the judge had made some unfavorable rulings in the defendant's case.  And the defendant went into the system, stole the records, and made an unauthorized disclosure out of a personal animus.  There are other cases we have brought to the Court's attention where the defendant has acted out of personal gain, you know, be it financial gain, fraud.

And my point is that that is distinct here.  Now, maybe the Court views his conduct as even, in terms of motivation on a moral scale, as more serious than a crime of fraud, and --

THE COURT:  I think the seriousness -- I mean, Ms. Manning, what I just cannot get over -- to me the seriousness -- and of course the thousands of people whose tax information was released, of course that is serious, and of course I'm going to take into account.  I'm not just saying we're talking about the presidency here.  But it cannot be open season on our elected officials.  It just can't be.  And judges can't sit by and not do everything in their power to make it crystal clear that it is not open season on our elected officials.  And that's what happened.

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

MS. MANNING: And as Your Honor pointed out earlier, Mr. Littlejohn is sitting in that seat. It is not open season. There is a clear message not only being sent by the Court, but in terms of deterrence for -- take a professional like Mr. Littlejohn, he graduated from college summa cum laude.

THE COURT: With a degree in economics and physics, I mean, he's not dumb.

MS. MANNING: No, he's definitely not dumb. He has, but for this case, but for the conduct in this case, has led an otherwise exemplary life and I submit one that was dedicated to civil service. As you read in the letters many of his college friends said, he had tons of job offers. He could have gone anywhere. He could have made a lot more money. But instead he chose to work on an IRS contract, because he so fundamentally believed in the system. And what is particularly sad about this case, among many things, is that he then went and completely undermined the system that he had worked for years to improve.

But my point to the Court here is that a sentence -- any sentence of incarceration, I mean, he is going to a federal prison, he is going from --

THE COURT: He is definitely going to a federal prison.

MS. MANNING: There's no question about that here.

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

But in terms of the -- what we are discussing is the length of the sentence. And, Your Honor, I mean, I -- I cited in my brief and I have in this large binder here, a report by the Department of Justice itself, National Justice Institute that talks about general deterrence. And that talks about how for a defendant like Mr. Littlejohn and any other potential leakers out there, the impact is getting caught, the impact is going to prison, the impact is all of the other things that come with that. At the conclusion of this hearing, he will be a convicted felon.

THE COURT: He's already a convicted felony.

MS. MANNING: At the conclusion of sentencing.

THE COURT: Sorry, go ahead.

MS. MANNING: He will be a convicted felon and will lose all of the rights, both legal rights and societal rights that come with that status. He will suffer very serious personal consequences, both with his life, with his partner and with his father, as you've read about in my papers. And he will never ever be able again to certainly access any confidential data, so no risk of recidivism, but work in service to the government.

But I guess, my point, Your Honor, is that a sentence here, whether the sentence is 18 months as is suggested in the recommendation by the U.S. probation office, to which I ask the Court to give deference, versus the

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

government's request of five years, A, does not have the deterrent effect based on the studies submitted by the Justice Department itself on this type of defendant.

And then in terms of the publicity of this case, I mean, I checked this morning before leaving my office for court, and as of this morning if you search his name, there are 284 current news articles that come up in Google. It is a very publicized case. And it will be for the rest of his life. And any other potential leaker that is thinking, you know what, I feel like I have a moral obligation to make information that I believe should be public, will see that. They'll not only see that, but I'm sad to report that because of the political or partisan nature of this case, many of those articles, even on main stream news cites, have comments that call for him to be executed in public and that --

THE COURT: That is outrageous.

MS. MANNING: -- sentence --

THE COURT: I mean, everyone has lost their heads. I mean, that is outrageous.

MS. MANNING: And I -- you know, I regret the fact that this case is -- has attracted so much noise.

THE COURT: I mean, that's what happens when you target the sitting President of the United States. I mean, he didn't target Jane Doe. If he targeted Jane Doe, we all -- none of these people would be here. I would be here, you

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

would be here, but that would be about -- and Mr. Jacobson would be here.  But he targeted the sitting President of the United States.  And when he you target the sitting President of the United States, you're going to get attention.

And I'm sorry, Ms. Manning, I know, I know that you are -- I know that these are hard things to answer.  And -- but go ahead.

MS. MANNING:  My point at the beginning, Your Honor, in raising the fact that it is, from a defense perspective sitting here, the government is asking the Court to throw away the law, our --

THE COURT:  I mean, we're just going to have to agree to disagree about that.  I don't think they're asking me to throw away the law.  I think they're asking me to apply the sentencing factors to an unprecedented crime that not only targeted our constitutional system of democracy, but targeted a subset of people for no other reason that they had a certain characteristic and it upended their lives.  I mean, I think that's what we're doing here.

MS. MANNING:  I understand that, Your Honor, but at the same time, in addition to the constitution our system -- the benchmark, the bedrock of our system is a common law system.  And the idea that we should throw away the standards, the norms, the procedures, the laws --

THE COURT:  What are we throwing away?  He had his

due process.  He had a right to go to trial.  He has -- he has excellent counsel.  He -- you know, everyone's talking today I'm going to give all my reasons.  I'm not just going to say here you go, here's your term and then walk out of here.  He is getting far more process than any of his victims have gotten.  They didn't have any process before all their information was released.

MS. MANNING:  Yes, Your Honor.  In terms of why we are here today is because my client broke the law.  There's -- no one disagrees about that.  He committed a crime.  And he was charged with and pled guilty to the very statute that proscribes that conduct.  Now, I understand that Your Honor's point earlier about that he could have been charged with more crimes, he could have not cooperated, and he could have not pled guilty, and we could be here in a trial setting.  But as my dad says, we are where we are and --

THE COURT:  I mean, just to be absolutely clear for the record, I am not going to base any of my sentencing decision on other crimes he could have been charged with, or the fact that he wasn't charged with them.  The only reason I'm even bringing any of that up is because of the cooperation point.  And I just want to make that absolutely clear for the record.

MS. MANNING:  Thank you, Your Honor.

He is here to be punished for conduct that is --

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

that is exact -- the conduct, you know, crime that he committed, but conduct that is exactly what is described under the statute to which he pled.

THE COURT: No, agree.

MS. MANNING: And in terms of referencing our great legal system and common law, I submit Your Honor, respectfully, that it is troubling to me that despite the egregious level of the conduct, that the government is arguing -- I mean, some of that seriousness has been taken care of or has been accounted for by the guidelines. And as my colleague Mr. Cherry said, even post-*Booker*, under 3553(d), by statute the Court -- the basis, the fundamental calculation shall still be rooted in the guidelines unless there are aggravating circumstances --

THE COURT: Like targeting the sitting President of the United States of America.

MS. MANNING: And, Your Honor, we agree and we have conceded that, yes, he has, as we went through the guidelines calculation, there are two enhancements. In addition to that, and it's not very often that defense counsel is asking for an above guidelines sentence --

THE COURT: It frankly might be a first, which I mean, it's a credit to you as a lawyer and it's a credit to Mr. Littlejohn's acceptance and remorse and I should have said that when I pointed it out.

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

MS. MANNING:  Thank you, Your Honor.  He is not seeking leniency.  He is seeking fairness.  And I know that you will be fair in sentencing.  But I have also spent every single day since the plea hearing thinking about this case. And I have read, as has Mr. Cherry, all of the cases that are in this binder.  And I hope that's not -- it's not for naught, some of these cases do, for example, the Edwards case, which the government cited in their brief, that was also targeted at President Trump.  That was also a defendant who was in a position of trust, who went into databases, stole data, and gave over 50,000 records to a media outlet, Buzzfeed --

THE COURT:  But as I recall in that case, the reporters reached out to her, right.  And is this the one where the reporters reached out to her, cultivated her.  She had an issue that she had been trying to go through the proper channels and people just weren't listening to her.  And the way that the reporter got her name was because she was trying to go through the proper channels, that had become public. The reporter got her name and then basically convinced her in a very persuasive way to break the law.

I mean, your client is just totally separately situated.  This was -- I mean, what we haven't even talked about yet is not just that your client happened to be where he was and came across or realized that he had access to returns, he went back to the company in order, in part, to get the

returns and to make them public. And this was -- how much more intentional can you get?

MS. MANNING: Your Honor, I don't think anybody has ever questioned his intent. This was not a crime of passion. As the letters to the Court, many of his close, close family and friends said, this must be something -- and I think you will hear that from him -- that he agonized over for months.

In terms of the time line of the offense, he -- he acknowledged he readily -- he volunteered that information in one of his over eight hours of interviews with the government. He readily volunteered the information in terms of what was in his mind at the time. And that he was so troubled by what he was seeing. And that he felt that if -- and again, it was an if -- he applied to several different jobs because he needed the money -- but if he were to get in that position, and unfortunately fate put him in that position by assigning him to a project, you know, we wouldn't be here probably if that hadn't happened. But he volunteered that.

Once he was able to steal the data, as we reviewed in our brief, he did not act quickly, he sat on the data for some time. And I realize that those facts cut both ways. On the one hand, sometimes it's useful to argue it was a spur of the moment decision, but no one in this case is saying that. He agonized over this decision, as I think is apparent from some of his journal entries at the time, that because of his

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

life circumstance he felt he had nothing to lose.  He realized it would ruin his life and he felt he had nothing to lose. And he made, no doubt, a -- as you described -- a colossal error and committed a colossal crime.

And if he could, he would take it back.  I have gotten to know Mr. Littlejohn pretty well over the course of representing him.  And I can say he has very deep remorse. That he has deep remorse for the victims.  He has deep remorse for putting our system through all of this additional cost to the American taxpayer.  Clearly, deep remorse to his friends and family.  And deep remorse for how this will impact the future that they thought that he had ahead of him.

And while his offense certainly involved a sitting president and thousands of taxpayers, it is not entirely dissimilar from the conduct of many of the, quote, ideological leakers that appear in the cases in this binder.  And there are cases, probably the largest tab section is Espionage Act cases.  And these are people -- a United States general, high-level law enforcement officers, high-level military officers, who have clearances, who are disclosing information that endangers national security, that blows the cover of undercover agents.  And in those cases, the Court took into account the personal or ideological motivation.  And in every single one of those cases -- or I should say in none of those cases did the Court sentence the defendant to the statutory

max.

And here I ask Your Honor to take that precedent, which is the bedrock of our system, into account. And I'm sure that this is as a -- since you've taken the bench, probably the most difficult process to sentence someone and deprive someone of their liberty. And now I have -- I have nothing left but to put the case into your hands. But I thank you for your time, I thank you for your consideration in what I trust will be a just and lawful resolution.

THE COURT: Thank you, Ms. Manning.

Mr. Littlejohn.

THE DEFENDANT: You Honor, first I'd like to thank you for the time and consideration that you've given my case. It means a lot to me personally and to my family. I have a statement.

THE COURT: Of course.

THE DEFENDANT: First and foremost, I'd like to apologize to the Court, to the government, to Senator Scott, and to all the individuals who have been hurt by my actions. I alone am responsible for this crime and I received no compensation in return for committing it. I acted out of a sincere if misguided belief that I was serving the public interest. I felt that the American people should have the opportunity to see the tax returns of the sitting president before they decided on how they were going to vote. I also

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

felt that taxpayers as a whole deserved to know just how easy it was for the wealthiest among us to avoid paying into our system.  I believe then, as I do now, that we as a country make the best decisions when we are all properly informed.  I also understand in my actions, despite being driven by a desire for transparency, were illegal and have caused significant harm.

In deciding to disclose this information I was aware of the potential consequences.  I did not take the burden of this obligation lightly, nor did I think I was above the law. I made my decision with the full knowledge that I would likely end up in a courtroom to answer for my serious crime.  There should be no mistaking the fact that what I did was wrong.  To achieve my criminal objectives I betrayed the trust of my client, my colleagues, and my firm.  I used my skills to systematically violate the privacy of thousands of innocent people.  My actions undermined the fragile faith that we place in the impartiality of our government institutions.

I do not ask for mercy.  For mercy cannot rebuild that trust.  I only ask for justice as it alone can help restore confidence in our system.  Roman Emporer Marcus Aurelius reflected in the following in his meditations:  Never regard as a benefit to yourself anything which will force you at some point to break your faith.  My hope in moving forward from this experience is that I will be able to internalize

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

that message as I seek lawful ways to contribute to my community and to our beloved country. Thank you.

THE COURT: Thank you, Mr. Littlejohn.

All right. After calculating the final advisory guidelines range and hearing the statements made by counsel, Senator Scott, and Mr. Littlejohn, I must now consider the relevant factors set out by Congress in 18 U.S.C. 3553(a), ensure that I impose a sentence that is, quote, sufficient but not greater than necessary to comply with the purposes, end quote, of sentencing.

The purposes include the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. The sentence should also deter criminal conduct, protect the public future from crimes by the defendant and promote rehabilitation.

In addition to the guidelines and policy statements and the purposes of sentencing, I must also consider the nature and circumstances of the offense; the history and characteristics of the defendant; the kinds of sentences available, including the applicable guidelines; the need to avoid unwarranted sentencing disparities among defendants with similar records who have also been found guilty of similar conduct; and the need to provide restitution to any victims of the offense; other factors -- including other factors which I

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

will discuss in turn later.

I have considered all of these factors when deciding what the appropriate sentence is in this case.  The upward departure imposed, as conceded by Mr. Littlejohn, does not begin to adequately account for the nature of this offense.  A multi-year criminal scheme targeting the sitting President of the United States and thousands of Americans.  And based on each factor I'm required to consider, in the weighing of those factors I conclude that an upward variance from the 12 to 18 month final advisory guidelines determined by the upward departure to offense level 13 is necessary.  And for the avoidance of doubt, I would reach the same sentence I impose today based solely on the variance and my analysis of the 3553(a) factors, regardless of whether or not the upward departure applied.

We are going to take a break until 11:25 and when we return I will explain the basis for my sentence and impose the sentence.  Thank you.

(A recess was taken from 11:12 a.m. to 11:25 a.m.)

THE COURT:  We are told by the press that democracy dies in darkness.  Democracy also dies in lawlessness.  And our democracy will surely die if our governing philosophy becomes partisan political ends justify illegal means.  And today we are not presented with a pick-your-poison question, death by darkness or death by lawlessness.  And that is so

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

because there are innumerable lawful ways -- lawful means of bringing information to light.

In the case of Mr. Trump's tax returns, he was under no legal obligation to disclose them. None. Certainly numerous Americans thought he should disclose them. And those individuals had numerous lawful options in the face of his decision. They could decide not to vote for him. They could decide to vote for somebody else. They could campaign against them. They could lobby, as many did, state legislatures to change their laws on candidate eligibility. They could lobby, as many did, congress to change the tax disclosure law.

And even assuming only the release of Mr. Trump's tax returns would suffice, his returns were made public lawfully. The House filed litigation to release them. The House won that litigation. And the House lawfully released the tax returns. The public now has lawful access to his tax returns for the years 2015 through 2020.

And all of the information needed to make the point that wealthy individuals pay a low effective tax rate is already publicly available. To start of course the law is public. Anyone can study the tax laws and assess how they apply in various economic scenarios. Indeed, the White House in September 2021 released just such a study, entitled, "What is the average federal individual tax rate on the wealthiest Americans." The study concluded that the country's wealthiest

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

400 families paid an estimated average federal income tax rate of 8.2 percent for the period 2010 to 2018. The authors used, quote, publicly available statistics from the IRS statistics of income division, the survey of consumer finances and *Forbes Magazine*, end quote.

Now I'm not endorsing this study in any way. I have no idea if the methodology or conclusions are sound. My point instead is only that there are ways, other than disclosing the tax information of over a thousand American, in flat violation of the law and at substantial harm to them, to draw conclusions and make policy arguments about our nation's tax laws.

In his sentencing memo Mr. Littlejohn states that a *New York Times* opinion piece entitled, "Everyone's income taxes should be public," pushed him in part to leak the tax returns to the press. But that article only proves my point that his conduct was not necessary. First, because the author tried to change the tax disclosure laws the right way, by exercising his First Amendment right. And second, because it expressly mentioned that congressional democrats were already fighting to obtain Trump's tax returns through legal means. And Mr. Littlejohn now recognizes, in hindsight, that there was nothing noble or moral about the nature of his offense. It did not produce a single social good that could not have been and hasn't now been produced in some way by lawful means.

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

The nature of this offense was an intolerable attack on our constitutional democracy by declaring open season on the private lives of our highest elected officials. Mr. Littlejohn's targeting of a sitting President of the United States as part of a three-year criminal scheme, including working with the reporters to help them understand the tax returns, deciding again and again and again to take the law into his own hands, disclosing the tax returns of thousands of individuals, violating their privacy, and making them live in fear of other harms that may occur to them or their families in the future supports an upward variance here.

I find that the guidelines range does not accurately reflect the seriousness of Mr. Littlejohn's criminal conduct, given the scale of victims impacted and the nature of harm that has as a resulted, and could continue to result in the future. *U.S. v. Brevard*, 18 F.4th 722 at 729, D.C. Circuit 2021.

President Theodore Roosevelt stated the obvious in reminding us that, quote, to announce that there must be no criticism of the president, or that we are to stand by the president right or wrong is not only unpatriotic and servile, but it is morally treasonable to the American people, end quote.

Mr. Littlejohn had the same First Amendment right afforded to every American to criticize the president.

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

Criticism of our political leaders is not merely tolerated, it is imperative to the smooth functioning of our democracy to hold our elected officials accountable.  But so too is a commitment by every American to ensure that every individual elected to office is able to exercise the duties of that office without concern of exposing herself or her family to unlawful conduct and personal harm.  Without that commitment our democracy also cannot function smoothly.

We are in a place right now where somehow a substantial number of Americans find it acceptable to raid the U.S. Capitol and threaten the life of the Vice President for carrying out his constitutional obligation to effect the peaceful transfer of power, to threaten House Republican members and their spouses because they voted against a particular speaker candidate, a republican at that.  One lawmaker even received a credible death threat.  To make a round of bomb threats to state capitols, to send them to Secretaries of State and legislative offices.  Believed to be a hoax, but it led to the evacuations around the country.  And to send letters containing fentanyl to a election offices in a handful of states this past November, among numerous, numerous, numerous, numerous other examples.

I have no idea how we got here, but I do know two things for certain, those actions did not result in physical harm, Mr. Littlejohn's actions also harmed our democracy by

harming the office of the presidency.  And the judiciary must be an unbreakable bulwark against politically-minded actors targeted or threatening elected officials.

To target Mr. Trump was to target the office, was to target democracy, that is the nature of your offense, Mr. Littlejohn.  It alone would require a substantial upward variance under the factor just discussed, the nature and circumstances of the offense.

The nature of the offense is also an intolerable attack on the personal lives of thousands of Americans, most of whom tirelessly contribute to our society in important ways, because of one person's disagreement of current tax policy.  Of course, policy can and should be addressed through the democratic system.

The government argues, and I have not heard Mr. Littlejohn contest, that the scope and scale of his conduct, unlawful disclosures appear to be unparalleled in the IRS's history.  There simply is no precedent for a case involving the disclosure of tax return information associated with other a thousand individuals and entities.  That's the government's memo, docket 23 at 9, and I wholeheartedly agree.

I have received six victim impact statements, a number signed by or on behalf of numerous victims.  Some excerpts, quote, Mr. Littlejohn's legal actions have caused me and my family great distress.  And I have had to rearrange

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

many aspects of my personal life and information because I do not know exactly who has my own personal information. You can imagine the concern if everything you did privately and personally in your investments, business, and just every day activities were suddenly splashed on the front page of a newspaper, or available to any unscrupulous person who might seek to take advantage, end quote.

A group of victims through their attorneys put it this way: Quote, the taxpayers have suffered reputational damage. The economic impact of this damage is difficult to quantify. The taxpayers fully comply with their federal income tax obligations, however, misguided media coverage predicated on unlawfully obtained confidential tax information continues to enable patently false assertions about the tax payer's tax compliance, end quote.

Another victim said, quote, as direct result we in our family were threatened personally and disparaged countless times in the media. In addition, our company certainly lost business and incurred reputational damage that cannot be fully quantified, end quote.

Another, quote, our sensitive information has been unlawfully disclosed. Narratives about us have been published and circulated based on that information, and we must deal with the resulting backlash and unwelcome attention, and our family's safety has been jeopardized. Mr. Littlejohn took

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

very serious actions against all of his victims.  And we must now manage very real threats, and mental, emotional, and reputational consequences, end quote.

I also find it deeply concerning that as the government explained in its filing, at least 152 victims have tax information published, but because Mr. Littlejohn unlawfully disclosed the tax return information of thousands more individuals, those individuals' information could be published in the future.  In other words, the scope of the harm is not necessarily done or even known.  And those whose information has not yet been made public have no assurance they will not be made public in the future.

I understand that Mr. Littlejohn cooperated with the government and voluntarily sat down for two proffers.  He has taken responsibility for his conduct, assisted with the discovery of additional evidence, and shared information to help the government prevent future breaches of IRS databases. But that cooperation, although a mitigating circumstance of the offense, is outweighed by the other nature and circumstances of the offense I have just described, and remaining factors I will discuss.

Mr. Littlejohn's history and characteristics. Mr. Littlejohn has no criminal history, and as the 29 letters submitted in support of him show, he is a devoted friend, son, brother, and partner who goes out of his way to help others

during their moments in need. It is difficult to square these characteristics, devotion, thoughtfulness, loyalty, and compassion with the crime that Mr. Littlejohn committed. Yet, human beings are imperfect and I want to reiterate that Mr. Littlejohn's crime, egregious as it was, does not and ought not change the fundamentally good, caring person that I understand him to be.

For example, during his sister's illness several years ago his family explains how he, quote, relocated to St. Louis to help care for her and other members of his family, in St. Louis working remotely of all hours of the day and night so that he could support his family and fulfill his obligations. And when his grandfather was ill in 2017 he helped his parents care for him by relocating temporarily to Delaware, looking after his grandfather while working remotely to meet all of his work obligations. He did this without being asked, selfless in his devotion to family.

As a friend whose brother struggled with addiction explains, quote, what speaks most to his character is not the one grand gesture, but countless small acts of thought, gestures of friendship, and the time spent over the years providing healing, no one else in my life provided that consistent presence. I honestly doubt if I would have a relationship with my brother today if it were not for Charles.

Another friend explained about Mr. Littlejohn's

commitment to public service, quote, at work Chaz was diligent and he approached each task, no matter how mundane, with enthusiasm and pride.  He devoted his time to improving public service, not by delivering meandering speeches about government efficiency, but by doing the hard work, brick by brick, data point by data point.  He labored over obscure processes and unglamorous spreadsheets in pursuit of the perfect combination of incremental change to make things just a little bit better for everyone.

And Mr. Littlejohn himself is remorseful, writing to the Court, quote, what I actually did was use my skills to systematically violate the privacy of thousands of innocent people.  I abused my position of authority to accomplish this criminal task.  And as a result many in this nation now have further reason to question the impartiality of our government's institutions.  He also explains, quote, I apologize to the Court and to the government and to all the individuals who I harmed with my selfish actions.  And he concludes, I realize now that what I did was wrong and if I could take it all back, I would.  But seeing as I cannot, I will submit to your judgment and await whatever fate you feel is most just.  And, of course, he expressed that remorse forthrightly and forcefully here again today.

Yet, as the government argues, Mr. Littlejohn's characteristics also support significant upward variance here.

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

As a sophisticated consultant, he received regular training over several years on how to protect taxpayers and the criminal consequences of inspecting or disclosing it without information.  Mr. Littlejohn knew what he was doing.  He knew it was wrong.  And, given his experience, he well knew that the harm that would result to the taxpayers.

The need for the sentence imposed to reflect the seriousness of the offense, afford adequate deterrence to criminal conduct, promote respect for the law, and provide just punishment among other purposes.

Mr. Littlejohn engaged in a deliberate, complex, multiyear scheme, criminal scheme.  I find that the 12 to 18 months guideline range in this case is insufficient to deter government officials and contractors from making those same deliberate decisions to take the law into their own hands. Mr. Littlejohn did not make a snap judgment.  He made a series of calculated decisions, over two to three years, to willfully violate the law.  Most stunning, Mr. Littlejohn has admitted that he sought to work as an IRS consultant with the hope and expectation of accessing and disclosing then President Trump's tax information.  He did all this with full knowledge, given his training, of the punishment that would result.

This court cannot permit others to view this type of conduct as acceptable or justifiable or worth the trade off, no matter what their purported political or ideological

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

motivation might be.  And the Court agrees with the government that the Court should exercise its discretion to dissuade such calculus, compelling individuals under such circumstances to consider the likelihood of a lengthy term of incarceration.

And returning to my earlier discussion, our current political climate demands that I do everything in my power to make people twice, and twice again, think before targeting our elected officials.  And everything in my power includes sending the strongest possible message that we are a nation of laws.  That the arena for the strongest expression of our political beliefs is the voting booth.  And that an independent and steadfast judiciary stands ready to punish anyone who puts his personal political beliefs above the law.

I understand that the two other purposes of sentencing under 3553(a), the need to protect the public from future crimes of the defendant, who in my view does pose a low risk, and to rehabilitate him in the most effective manner weigh against an upward variance here.  But I must balance all of the relevant factors, and I view those mitigating circumstances as significantly outweighed by the other purposes of the sentence I have mentioned and will mention.

In his letter to me, and again today, Mr. Littlejohn -- well, in his letter to me Mr. Littlejohn explains that in 2017 he felt increasingly fearful for our country.  He was sparked by the catalyst of James Comey's

firing in the Spring of 2017 to disclose Mr. Trump's tax returns to the press. He felt an imagined need and desire of the public, which created in him an overwhelming sense of obligation. He thought it was, quote, the right thing to disclose the tax information of thousands of Americans. His actions were driven by a, quote, moral framework that he had constructed.

A friend who wrote to me explains that Mr. Littlejohn, quote, is a student of history and politics, but he is not inherently political. That this was likely, quote, not an easy decision for him. And he must have spent time considering historical precedent, ethics and philosophy, federalism and fairness, before coming to his decision.

Mr. Littlejohn, I believe everything that you told me. I believe you sincerely felt a moral imperative to act as you did.

And instead of dismissing that outright, I have spent considerable time doing what your friend suggested you did, considering ethics and philosophy, historic precedent, and federalism and fairness, to address the salient question you posed to yourself: Do I have a moral obligation to break the law in disclosing tax records.

Any serious discussion of that question starts with Plato's *Crito*. Now before everyone freaks out, we are not going to be here today with me discussing philosophy from the

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

time of the Greeks to today.  We are not.  This will be very quick.  Also, one of my clerks fears I might come off as pretentious by discussing Plato.  I am not trying to be pretentious.  And if I were trying to be pretentious I would discuss instead the evolution of the market economy in the southern colonies, like the guy at the bar in *Good Will Hunting.*  I want instead, Mr. Littlejohn, to show you that I have thought deeply about your motivations.  And I want to deter others who might also feel a moral obligation to break the law.

To quote Hugo Adam Bedau, quote, the problem of the individual's relation to the state and its government, its authorities and its laws, and the appropriate response to offensive or unjust laws has been debated since at least 399 B.C. when *Crito* argued that Socrates should flee from prison to avoid an undeserved death penalty.  Reflected in Plato's *Crito*, Socrates argues that the duty of the citizen is to obey the law or persuade society that the law is wrong.  By choosing to live in Athens, he argued, he implicitly endorsed the laws and had to abide by them.

Now, that proposition has been debated in the 2000 years since.  And we see it reflected in the founders' views of the new system of government.  And as an aside, since I have everyone's attention here, trying to defend the January 6th insurrection, numerous people have cloaked the rioters in

the work of our founders. Which would be quite the surprise to our founders. Washington and Hamilton didn't exactly sit back and applaud the Whiskey Rebellion. No Washington and Hamilton sent in a militia to quell it and tried dozens of rioters for treason. Which is consistent with my point about obeying the law.

In his farewell address, George Washington put it this way, quote, the constitution, which at any time exists until changed by an explicit and authentic act of whole people is sacredly obligatory upon all. The very idea of the power and the right of the people to establish government presupposes the duty of every individual to obey the established government.

And he and our founders were acutely concerned with lawlessness and its corrosive effect on society. To paraphrase him, he continued: All obstructions to the execution of the laws, under whatever plausible character, are destructive of this fundamental principle and of fatal tendency.

Now, of course any discussion of a moral obligation to break the law must address unjust laws. And a similar piece of work on that question is, of course, Martin Luther King, Jr.'s, "Letter from a Birmingham Jail." Taylor Branch describes the context well in, *Parting the Waters, America in the King Years, 1954 to 1963.* Quickly Dr. King had been in

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

prison for taking parts in a demonstration in a segregated city in violation of local law.  In the letter he responded to a public claim that he was a public agitator by distinguishing between just and unjust law.  Quote, I would be the first to advocate obeying just laws.  One has not only a legal but a moral responsibility to obey just laws.  He goes on then to discuss at length unjust laws and his obligations to disobey those laws.

And somewhere else we could have a long and interesting discussion about civil disobedience and the moral obligation to disobey unjust law, but this is neither the time nor the place for that discussion.  It is not the time because there is no credible argument that the law Mr. Littlejohn broke was unjust.

Reasonable people can have reasonable disagreements about whether tax disclosure law is sound policy.  But it applies equally to everyone and it was passes by our federal Congress, with those impacted by it having the right to vote on it at the time of its passage.  And today, any American has the First Amendment right to speak out against it and lobby for its repeal.

It is also not the place because this is a courtroom.  And my obligation is to apply the law and punish those who violate it, which it bears highlighting, Dr. King acknowledges.  He wrote in the Letter, quote, In no sense do I

advocate evading or defying the law as would the rabid segregationist, that would lead to anarchy. One who breaks an unjust law must do so openly, lovingly, and with a willingness to accept the penalty.

And, of course, none of this even touches on the point that Mr. Littlejohn did not break the law in a vacuum. He knew that the result of the so-called moral act would be to harm thousands of others. And any balancing of the moral obligation to release tax returns to the public versus the moral obligation to not harm thousands of innocent people would absolutely always favor the latter.

But I think the point is clear. When we break the law, we hurt society. We do not get to pick and choose what laws we follow. We may perhaps make philosophical allowances for disobeying unjust laws. But even then, those who break the law must be punished.

The kinds of sentences available and the sentencing range established by the guidelines. I stated earlier the kinds of sentences available and I will summarize them again here. The charge of unauthorized disclosure of tax returns carries a statutory maximum penalty of five years of imprisonment plus supervised release range of -- plus he faces a supervised release range following imprisonment of not more than three years. Under that guideline the range is 1 to 3 years, and as noted earlier community service may be ordered

as a condition of supervised release.

I have also considered the guidelines range which we determined earlier. And we determined earlier the guidelines range if we were in Zone C of the sentencing table. And neither the government nor Ms. Manning objected to any of my conclusions there. And although Mr. Littlejohn himself does not seek a probationary sentence, I note for the record that with respect to probation the defendant is eligible for not less than one no more than five years probation.

The statute of conviction sets a maximum fine of $5,000, which becomes the guidelines range at offense level 13. And determining the fine amount, the Court shall consider, among other factors, the expected cost to the government of any imprisonment, supervised release, or probation component of the sentence.

I have considered all of these kinds of sentences in determining which sentence to impose here.

The need to avoid unwarranted sentencing disparities. In his sentencing brief Mr. Littlejohn argues that, quote, the breadth of case law supports a guidelines sentence with a two- to four-level upward departure. He argues that nine other cases charging violations of Section 7213 involve far more egregious circumstances and more condemnable motives than are present here and most resulted in only probationary sentences. He also argues that the only

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

sentences under Section 7213 that involve prison time had highly unusual circumstances. And he argues that his disclosure was not self-serving and he did not intend to harm taxpayers.

True, the cases Mr. Littlejohn are different, they involve different conduct and different harms. But to put it mildly this case too presents, quote, highly unusual circumstances. Mr. Littlejohn sought a job, at least in part, to steal the tax returns of the sitting president of the United States and provide them to the press. He then did precisely that and disclosed the information to the New York Times on multiple occasions. He then helped the reporters understand the returns for their reporting. And he later took the tax returns and tax return information of thousands of the country's wealthiest individuals, and provided it to ProPublica.

Despite what Mr. Littlejohn argues, I find it implausible that he did not intend to harm at least some taxpayers. Indeed, he provided the returns to the New York Times and ProPublica so that they could write articles about Mr. Trump and wealthy individuals. And a sophisticated and experienced consultant like Mr. Littlejohn knew what type of information tax returns contained, and how its unauthorized disclosure would cause considerable harm to its victim. The fact that he removed bank account and other sensitive

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

information from the data does not negate the fact that he wanted the publications to publish articles, and that he absolutely knew the resulting harms that would follow.

Further, the Court agrees with the PSR's finding that during the last five fiscal years there was an insufficient number of defendants similarly situated to Mr. Littlejohn to draw meaningful comparisons. Mr. Littlejohn committed a highly unusual and egregious offense, one intended to harm thousands of taxpayers, including again, a sitting President of the United States.

Nor does the Court find the non-tax disclosure cases cited by Mr. Littlejohn on point here. In *United States versus Fry* the defendant received a five-year probationary sentence for leaking five suspicious activity reports, a far cry from thousands of taxpayer returns.

Mr. Littlejohn also cites, and his counsel today discussed *U.S. v. Edwards* as a case with significant parallels. There the defendant, a treasury official, disclosed over 50,000 documents, including confidential reports on financial transactions to Buzzfeed. Mr. Littlejohn argues that although the relevant statute was different, Mr. Edwards, like him, was facing a five-year felony with sentencing guidelines range of 0 to 6 months, that did not specifically account for the number of suspicious activity reports she unlawfully disclosed. The Court there declined to

depart from the guidelines and sentenced Edwards to six months incarceration. But there are several key differences.

First, unlike Mr. Littlejohn, Ms. Edwards did not join the government agency with an intent to unlawfully disclose the records.

Second, there the Buzzfeed journalist cultivated the defendant and turned up the pressure for her to provide the leaked documents, at one point noting that, quote, he was going to be fired if his editor was angry with him because he didn't have the same information that his competitor had. There is no evidence and Mr. Littlejohn does not contend that any reporter encouraged him to violate the law or turned up the pressure in any way for him to do so.

Third, the defendant in *Edwards* suffered from several medical and mental health conditions that weighed against a long sentence of incarceration. I am unaware of any that Mr. Littlejohn suffers that should impact my sentence. And for those reasons, I disagree that *Edwards* is helpful here.

I take Mr. Littlejohn's other point that when defendants disclose classified information, the corresponding guidelines range are significantly greater, yet defendants often receive a below guidelines sentence. But I find those cases to be in a different realm. He argues that many involve lying to investigators and putting individual's lives at risk,

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

facts that are not applicable here.  True.  But that argument does not account for the other aggravating factors that do exist here, which I have discussed repeatedly.

Mr. Littlejohn also filed a notice of supplemental authority regarding the sentencing of two defendants that occurred just this past Friday.  In those two cases, two defendants who were federal government employees pled guilty in cases involving the theft of sensitive government databases, including law enforcement files, and the personal identifying information of over 200 federal employees to sell it to third parties located overseas.  Mr. Edwards received a sentence of 18 months in prison and Mr. Patel received a sentence of two years probation.

But unlike in this case, in Edwards and in Patel, the government sought downward departures because of those defendants' substantial assistance in the prosecution of another co-defendant and requested a sentence within the guidelines range following those departures.  That is much different than in this case, in which Mr. Littlejohn signed a plea agreement understanding that the government expected to seek an upward departure, and his cooperation, while helpful, did not provide substantial assistance in the prosecution of a co-defendant.  In short, the cases are different, and the Court does not find that an unwarranted disparity between them prevents it from imposing an upward variance.  Further, as

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

discussed earlier, the cooperation that Mr. Littlejohn did provide in this case is outweighed by the other factors I have discussed, including as the government has put it, the fact that Mr. Littlejohn was, quote, the engineer of his disclosure scheme.

I also want to briefly discuss other sentences I have imposed in January 6th cases, which I understand are quite different from your crime, Mr. Littlejohn.  But I think you may find it helpful to understand my reasoning in this case.

This past Wednesday I sentenced two individuals who were in the Capitol on January 6th.  And if you were here, you would know that I expressed then in no uncertain terms my fear of the threat that January 6th posed and continues to pose to our democracy.

I have so far sentenced six individuals in January 6 cases, none of the six were charged with a felony, none were involved with the planning of insurrection, none came to D.C. with the intent to riot at the Capitol.  And considering those facts and the individual circumstances of each individual, I did not sentence any of them to prison time, though I did sentence two to home confinement.

I mention all of this because of my belief that your actions were also a threat to our democracy.  I have reacted so strongly to your case because it engenders the same fear

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

that January 6th does, that we have gotten to point in our society in which otherwise law-abiding, rational people believe that they have no choice but to break the law to further their political agendas. And you do not fall into the category of the individuals I have sentenced so far in January 6 cases. You carefully planned what you did. You had months to consider whether to carry forward with your scheme and you intentionally did so. You have caused, or have risked causing, immense personal harm to over a thousand Americans. Which is all to say that my January 6 cases to-date are not appropriate comparators for the sentence I will hand down in your case.

I find it necessary to impose an upward variance because, one, beginning with Mr. Littlejohn seeking employment with Company A in 2017, he deliberately chose to engage in a Multi-year criminal scheme. Two, he targeted and intended to violate the privacy of, and harm, thousands of taxpayers. And three, he made a series of calculating decisions, over years, to take the law into his own hands by targeting a sitting President of the United States and thousands of Americans.

Having considered all the factors under Section 3553(a), this Court finds that the sentence I'm about to impose is sufficient, but not greater than necessary, to reflect the seriousness of the instant offense, to promote deterrence and respect for the law, to protect the public from

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

future crimes that may be committed by the defendant, and to provide just punishment.

Mr. Littlejohn, to quote a fictional U.S. president, When you walk out of here there will be people out there, perhaps a great many, who will think of you as a hero. I just don't for a moment want you thinking I will be one of them.

Please stand for your sentence, sir.

Pursuant to the Sentencing Reform Act of 1984, and in consideration of provisions of 18 U.S.C. 3553, it is the judgment of the Court that I sentence you, Charles Edward Littlejohn, for targeting the sitting President of the United States and thousands of other Americans, and for all of the reasons I have stated, following the upward departure and upward variance I have imposed, to the statutory maximum term of 60 months of imprisonment on Count 1 and 36 months of supervised release on Count 1, which shall include a condition 300 hours total community service to occur during the term of supervised release.

I further sentence you to the maximum statutory fine of $5,000 on Count 1. And in addition, you are ordered to pay special assessments totaling $100 in accordance with 18 U.S.C. 3013. I am not ordering restitution.

You may be seated, sir.

While on supervision, you shall abide by the following mandatory conditions as well as all discretionary

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

conditions recommended by the probation office in Part D sentencing options, pages 19 to 21 of the presentence report, which are imposed to establish the basic expectations for your conduct while on supervision.

The mandatory conditions include: You must not commit another federal state or local crime. You must not unlawfully possess a controlled substance. The mandatory drug testing condition is suspended based on the Court's determination that you pose a low risk of future substance abuse. You must cooperate in the collection of DNA as directed by the probation officer. You must make restitution in accordance with 18 U.S.C. 3663 and 3663(a), or any other statute authorizing a sentence of restitution.

You shall comply with following special conditions: Employment volunteer restrictions: You must not engage in an occupation, business profession, or volunteer activity that would require or enable you to access restricted information without the permission of the probation officer.

Computer monitoring: You must allow the probation officer install computer monitoring software on any computer as defined in 18 U.S.C. 1030(e)(1) you use.

Computer search: You must submit your computers as defined in 18 U.S.C. 1030(e)(1) or other electronic communications or data storage devices or media to a search. You must warn any other people who use these computers or

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

devices capable of accessing the internet, the devices may be subject to searches pursuant to this condition. The probation office may conduct a search pursuant to this condition only when reasonable suspicion exists that there's a violation of condition of supervision and that the computer or device contains evidence of this violation. Any search will be conducted at a reasonable time and in a reasonable manner.

Financial information disclosure: You must provide the probation officer with access to any requested financial information and authorize the release of any financial information. The probation office may share financial information with the U.S. Attorney's Office.

Fine obligation: You must pay the balance of any fine within 90 days of this judgement.

Community service: As I said earlier, you must complete 300 hours of community service, at an organization that must be approved by your probation officer, over the three years of supervised release.

The financial obligations are immediately payable to the Clerk of the Court for the U.S. District Court. Within 30 days of any change of address you shall notify the clerk of the Court of the change until such time as the financial obligation is paid in full.

Pursuant to Federal Rules of Criminal Procedure 32.2(b)(4)(A) and (B), the Court's Preliminary Order of

Forfeiture entered on January 5, 2024, is now final and shall be made part of the sentence and included in the judgement.

The probation office shall release the presentence investigation report to all appropriate agencies, which includes the U.S. probation office in the approved district of residence in order to execute the sentence of the Court. Treatment agencies shall return the presentence report to the probation office upon the defendant's completion of termination from treatment.

Ms. Manning, I am sympathetic to Mr. Littlejohn's family situation, and I'm willing to order a voluntary surrender date a bit out, but I need to put a time on it. Do you have a proposal for a voluntary surrender date?

MS. MANNING: Yes, Your Honor, we would propose a date the week after Easter, so that Mr. Littlejohn can spend it with his family. That would be the week of April 1st.

THE COURT: All right. I will give a voluntary departure date of April 30th, 2024.

MS. MANNING: Your Honor, if we may, we also have a requested designation.

THE COURT: Yes, of course.

MS. MANNING: We would request the Court recommend a designation to SCP Marion, which is the closest men's federal prison camp to his family's residence in St. Louis. My understanding for that is that is that the Court also has to

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

note that his release residence is within a certain distance of the facility that I'm happy to provide his father's address.

THE COURT: Okay. Well, why don't you provide that under seal. I don't want to announce that today. As you know, I don't have control over that, but I will make that recommendation. And I will do everything that I can to make sure that happens.

MS. MANNING: Thank you, Your Honor. And as part of that recommendation, and pursuant to Mr. Wilson's recommendation in the presentence report we would also that part of the recommendation include a referral to the Federal Prison Industries Program, so that he might be employed during his incarceration.

THE COURT: Yes, definitely will do that.

Notice of appeal: Sir, you can appeal your conviction to U.S. Court of Appeals for the D.C. Circuit under the narrow circumstances that were not waived in your plea agreement. Under some circumstances a defendant also has the right to appeal the sentence to the D.C. Circuit. A defendant may waive that right as part of a plea agreement, however, and you have entered into a plea agreement which waives some of your rights to appeal the sentence itself.

Pursuant to 28 U.S.C. 2255, you also have the right to challenge the conviction entered or sentence imposed to the

extent permitted by that statute and your plea agreement. I notice -- sorry, any notice of appeal must be filed within 14 days of the entry of judgment, or within 14 days of the filing of a notice of appeal by the government.

If you're unable to afford the cost of an appeal, you may request permission from the Court to file an appeal without cost to you. On appeal, you may also apply for court-appointed counsel.

Mr. Littlejohn, I expect that the hardest part of this for you is knowing the effect it has and will have on your friends and family. I cannot take that away. But I can tell you that I know firsthand that your family and friends love you. They are here for you today. They will be with you while you serve your sentence. And they will be there for you after you finish it.

What you did in breaking the law, and the prison sentence I have given you, need not define your life. You can choose to let this chapter of your life define you as a failure, or you can choose to let this chapter propel you to a better version of yourself. If you so choose, I have faith you will be able to create options for yourself to lead a full and productive life after you serve your sentence. And I wish you every luck in finding your way through this. I say this with all sincerity, other than your family, partner, and Ms. Manning, no one will be rooting harder for you for that and

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

for that outcome than I will be.

Ms. Manning, to you and your team, I know how hard you worked to avoid the result. You and your team have done a tremendous job for your client. Unfortunately, the public does not get to see most of that work. But no doubt your legal defense was a key reason why Mr. Littlejohn received a plea deal of only one felony count. And I thought your sentencing memorandum was exceptionally well done. It made coming to my sentence considerably harder. You gave me a great deal to consider and researcher. And it forced me to provide a deeper, more reasoned analysis, which is undoubtedly an important public benefit.

I have been around committed criminal defense attorneys enough to know how hard tough sentences are on the lawyers as well as the client. I appreciate how deeply you and your team will also feel this sentence. For what it's worth, the fact that I take a different view of the case than you argued, does not make your advocacy any less impressive.

Are there any objections to the sentence imposed not already on the record, or anything else that we should address today, Mr. Jacobson?

MR. JACOBSON: No, Your Honor.

THE COURT: Okay. My clerk has asked me to clarify that no restitution is being ordered as a condition of supervised -- oh, he doesn't want me to clarify that, he wants

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

you to clarify that. Can you -- Mr. Jacobson, can you confirm that we do not have any restitution being ordered here today?

MR. JACOBSON: Yes, Your Honor. No victims have come forward requesting restitution.

THE COURT: All right. Ms. Manning, any objections other than ones, of course, noted on the record?

MS. MANNING: No, Your Honor.

THE COURT: Thank you, everyone. We are adjourned.

(The proceedings were concluded at 12:04 p.m.)

I, Christine Asif, RPR, FCRR, do hereby certify that the foregoing is a correct transcript from the stenographic record of proceedings in the above-entitled matter.

_____/s/_____
Christine T. Asif
Official Court Reporter

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

| | | | |
|---|---|---|---|
| < Dates >. | < 1 >. | 1963 68:25. | 30th 81:18. |
| April 81:18. | 1 12:18, 13:5, | 1972 6:2. | 32 7:24. |
| April 1st 81:16. | 13:15, 16:13, 70:24, 78:15, 78:16, 78:20. | 1984 78:8. | 32.2(b)(4)(a 80:25. |
| January 76:12. | | . | 333 1:45. |
| January 22nd, 2024. 8:4. | 1(a 11:4. | . < 2 >. | 354-3247 1:47. |
| | 1(d 15:21. | 2 17:12. | 3553 16:1, 29:13, 78:9. |
| January 23rd, 2024 6:23. | 10 15:1, 15:11. | 200 75:10. 2000 67:21. | |
| January 23rd, 2024, 5:12. | 1030(e)(1 79:21, 79:23. | 20001 1:46. 20004 1:29, 1:36. | 3553(a 18:11, 53:7, 54:14, 65:15, 77:22. |
| January 5, 2024, 81:1. | 10:00 a.m. 1:12. | 2010 56:2. 2015 55:17. 2017 9:12, 62:13, 65:24, 66:1, 77:15. | 3553(d 47:11. |
| January 6 76:16, 77:5, 77:10. | 11 6:2, 54:16, 54:19. | | 36 78:15. 3663 17:19, 79:12. |
| | 12 13:11, 14:25, 16:9, 54:9, 54:19, 64:12, 85:9. | 2018 56:2. 202 1:47. 2020 55:17. 2021 57:17. 2023 1:11, 10:5. | 3663(a 79:12. |
| January 6th 67:24, 76:7, 76:14, 77:1. | | | 3771(a)(4 32:7. |
| | 13 10:22, 13:7, 13:14, 14:24, 17:6, 17:10, 54:11, 71:12. | | 399 67:14. 3B1.3 10:9. 3C1.1 10:16. |
| November, 58:21. | | 2024 81:18. 21 79:2. | 3E1 11:4. 3rd 1:28. |
| September 2021 55:23. | 1331 1:27. | 2255 82:24. 23 59:21. | . |
| $100 17:14, 78:21. | 13th 1:34. 14 83:2, 83:3. | 23-343 2:2. 23-343-ACR 1:6. | < 4 >. |
| $2 17:5. | 15 37:8. | 25 13:5, 54:16, 54:19. | 4 15:1. |
| $4 18:13. | 150 36:24. | 28 82:24. | 400 16:21, 56:1. |
| $5 17:4, 17:5, 17:7, 17:9, 71:11, 78:20. | 152 61:5. 16 9:11. 1641 22:10. | 284 44:7. 29 3:13, 61:23. | 404 6:2. 443-446 6:2. 476 6:1. 489 6:2. |
| . | 18 3:3, 13:11, 14:25, 16:1, 16:9, 17:19, 18:12, 22:10, 29:11, 32:7, 35:15, 43:23, 53:7, 54:9, 57:16, 64:12, 75:12, 78:9, 78:21, 79:12, 79:21, 79:23. | 2H3 12:18, 13:15. | 4C1.1 10:25, 15:12. |
| . < 0 >. | | 2H3.1 10:7, 13:3. | . |
| 0 73:23. | | . | . < 5 >. |
| 000 17:4, 17:5, 17:7, 17:9, 18:13, 28:20, 29:11, 29:12, 48:11, 71:11, 73:19, 78:20. | | . < 3 >. | 5 12:18, 13:2, 13:5, 13:14. |
| | | 3 16:13, 70:24. | 50 48:11, 73:19. |
| | | 30 80:20. | 500 1:35. |
| 04 85:9. | 19 79:2. | 300 78:17, 80:16. | 555 1:34. 562 6:1. |
| . | 1954 68:25. | 3013 78:22. | 5B1 17:12. |

5C1 15:21.
5K 27:18, 28:8.

.
< 6 >.
6 17:2, 73:23.
60 16:7, 19:14, 24:12, 24:23, 25:6, 25:9, 27:10, 30:11, 32:2, 78:15.
60-month 27:7.
600 28:21, 28:22.
641 22:15, 35:15.
6th 76:12.

.
< 7 >.
7 28:21.
7213 21:17, 21:21, 24:8, 29:16, 30:15, 30:24, 31:5, 71:23, 72:1.
7213(a)(1 3:3, 21:18.
722 57:16.
729 57:16.
73 29:12.

.
< 8 >.
8 28:20.
8.2 56:2.

.
< 9 >.
9 10:7, 11:23, 13:13, 14:24, 17:5, 59:21.
90 80:14.
_____/s/___

_____
85:15.
.
.
< A >.
A. 1:24.
a.m. 54:19.
abide 67:20, 78:24.
abided 7:23.
abiding 4:4, 30:3.
able 4:10, 19:10, 43:19, 49:19, 52:25, 58:5, 83:21.
above 16:8, 18:4, 27:8, 36:20, 36:24, 47:21, 52:10, 65:13.
above-entitled 85:13.
absence 20:6.
absolutely 5:5, 23:15, 46:17, 46:22, 70:11, 73:3.
abuse 79:10.
abused 26:3, 32:21, 63:13.
abusing 30:4.
accept 9:22, 19:5, 70:4.
acceptable 4:5, 58:10, 64:24.
acceptance 11:2, 47:24.
accepted 19:15, 28:3, 35:2, 40:9.
accepting 14:14, 35:24.
access 9:16, 10:11, 10:12,

26:2, 27:5, 43:19, 48:24, 55:16, 79:17, 80:9.
accessing 64:20, 80:1.
accomplish 63:13.
accordance 78:21, 79:12.
accorded 20:21.
Accordingly 11:3.
account 18:10, 18:24, 19:18, 20:16, 24:18, 25:19, 29:10, 41:20, 50:23, 51:3, 54:5, 72:25, 73:24, 75:2.
accountable 33:1, 34:23, 58:3.
accounted 36:22, 47:10.
accounting 37:16.
accurately 31:2, 57:12.
achieve 25:12, 52:14.
acknowledged 9:13, 49:9.
acknowledges 33:5, 69:25.
across 48:24.
Act 49:20, 50:17, 66:15, 68:9, 70:7, 78:8.
acted 40:14, 41:10, 51:21.

ACTION 1:5, 2:2.
actions 4:25, 28:4, 31:12, 33:6, 51:19, 52:5, 52:17, 58:24, 58:25, 59:24, 61:1, 63:18, 66:6, 76:24.
activities 60:5.
activity 31:8, 73:14, 73:24, 79:16.
actors 59:2.
acts 3:18, 3:19, 62:20.
actual 20:23, 29:9.
actually 63:11.
acutely 68:14.
Adam 67:11.
addiction 62:18.
addition 11:17, 45:21, 47:19, 53:17, 60:18, 78:20.
additional 10:23, 11:12, 11:15, 20:2, 23:3, 25:10, 29:4, 29:8, 29:10, 50:9, 61:16.
address 4:8, 5:11, 7:13, 7:15, 13:23, 18:18, 35:12, 37:10, 66:20, 68:7, 68:21, 80:21, 82:3, 84:20.
addressed 59:13.
addressing

7:18, 35:6.
adequate 64:8.
adequately 36:22, 54:5.
adjourned 85:8.
adjusted 10:22.
adjustment 10:25, 15:12.
adjustments 10:23.
administration 10:17, 33:14, 40:25.
admitted 64:18.
advance 7:3, 27:6.
advanced 33:24.
advantage 60:7.
advisory 10:3, 12:13, 13:11, 14:24, 15:1, 53:4, 54:10.
advocacy 84:18.
advocate 69:5, 70:1.
afar 39:2.
Affected 29:11, 29:12.
affects 6:18.
afford 64:8, 83:5.
afforded 57:25.
agencies 81:4, 81:7.
agency 74:4.
agenda 33:25.
agendas 27:6, 27:7, 77:4.
agents 11:11,

50:22.
aggravating 31:25, 47:14, 75:2.
agitator 69:3.
ago 62:9.
agonized 49:7, 49:24.
agree 8:20, 24:22, 45:13, 47:4, 47:17, 59:21.
agreed 11:8, 19:11, 39:22.
agreement 7:4, 75:20, 82:19, 82:21, 82:22, 83:1.
agrees 65:1, 73:4.
ahead 21:16, 24:6, 25:24, 28:11, 43:13, 45:7, 50:12.
aim 11:16.
alike 14:11.
allegations 33:20.
allow 9:15, 79:19.
allowances 70:14.
alone 51:20, 52:20, 59:6.
already 3:17, 6:5, 18:15, 20:15, 24:25, 28:22, 29:15, 35:2, 40:7, 43:11, 55:20, 56:20, 84:20.
alternative 23:13.
although 36:19, 61:18, 71:6,

73:21.
Amendment 56:19, 57:24, 69:20.
America 1:5, 2:3, 39:16, 47:16, 68:24.
American 33:16, 50:10, 51:23, 56:9, 57:22, 57:25, 58:4, 69:19.
Americans 4:7, 14:12, 14:19, 14:20, 14:22, 26:2, 26:21, 30:7, 32:23, 32:25, 54:7, 55:5, 58:10, 59:10, 66:5, 77:9, 77:20, 78:12.
Americans. 55:25.
among 17:16, 24:13, 42:17, 52:2, 53:22, 58:21, 64:10, 71:13.
amount 17:15, 26:21, 71:12.
ANA C. REYES 1:17.
analysis 36:1, 54:13, 84:11.
anarchy 70:2.
Andre 1:39, 2:22.
Andrew 39:20.
angry 74:9.
animus 40:12, 41:9.
announce 57:19, 82:5.
annual 28:20, 28:21.
answer 45:6,

52:12.
answered 4:24.
anticipating 8:14.
anybody 49:3.
apologize 51:18, 63:17.
apparent 31:1, 49:24.
appeal 82:16, 82:20, 82:23, 83:2, 83:4, 83:5, 83:6, 83:7.
Appeals 82:17.
appear 50:16, 59:17.
APPEARANCES 1:21.
appearing 38:16.
applaud 68:3.
applicable 10:6, 12:4, 12:15, 15:3, 16:4, 53:21, 75:1.
Application 12:17, 13:2, 13:14, 15:11, 29:15.
applied 10:23, 14:16, 49:14, 54:15.
applies 10:4, 10:8, 10:15, 11:1, 69:17.
apply 45:14, 55:22, 69:23, 83:7.
appreciate 38:12, 84:15.
approached 63:2.
appropriate

13:2, 13:8, 13:12, 15:14, 24:16, 24:20, 24:23, 30:13, 32:2, 54:3, 67:13, 77:11, 81:4.
approved 80:17, 81:5.
approximately 28:21, 29:11, 29:21.
arena 65:10.
argue 49:22.
argued 67:15, 67:19, 84:18.
argues 15:10, 59:15, 63:24, 67:17, 71:19, 71:22, 71:25, 72:2, 72:17, 73:21, 74:24.
arguing 47:9.
argument 69:13, 75:1.
arguments 7:25, 56:11.
arisen 27:16.
arose 5:11, 7:14.
around 29:25, 58:19, 84:13.
article 26:16, 56:16.
articles 7:6, 44:7, 44:14, 72:20, 73:2.
Ashcraft 2:13.
aside 6:21, 29:14, 67:23.
Asif 1:41, 85:11, 85:16.
aspects 60:1.

assertions 60:14.
assess 55:21.
assessment 17:14.
assessments 78:21.
assigning 49:16.
assistance 27:19, 28:5, 75:16, 75:22.
assisted 11:15, 28:1, 28:4, 61:15.
associated 29:8, 59:19.
assuming 55:12.
assurance 61:11.
assured 37:22.
Athens 67:19.
attached 7:16.
attack 5:7, 5:9, 57:1, 59:10.
attacked 33:10, 33:12.
attacks 29:5.
attempted 10:17.
attention 38:3, 40:13, 41:10, 45:4, 60:24, 67:24.
Attorney 8:16, 80:12.
attorneys 38:8, 60:8, 84:14.
attracted 44:21.
Aurelius 52:22.
authentic

68:9.
author 56:17.
authorities 67:13.
authority 7:11, 63:13, 75:5.
authorize 7:19, 80:10.
authorizing 79:13.
authors 56:2.
available 6:5, 18:11, 53:21, 55:20, 56:3, 60:6, 70:17, 70:19.
avarice 40:11.
Avenue 1:45.
average 55:24, 56:1.
averse 7:21.
avoid 52:2, 53:22, 67:16, 71:18, 84:3.
avoidance 6:22, 54:12.
await 63:21.
aware 26:16, 38:21, 52:8.
away 3:24, 4:2, 4:22, 45:10, 45:14, 45:23, 45:25, 83:11.
.
.
< B >.
back 24:9, 29:23, 48:25, 50:5, 63:20, 68:3.
backing 25:15.
backlash 60:24.
bad 3:18,

3:19.
balance 65:18, 80:13.
balancing 70:8.
bank 72:25.
banking 13:24.
bar 67:6.
base 6:23, 10:7, 46:18.
Based 12:11, 16:8, 18:14, 30:11, 44:2, 54:7, 54:13, 60:23, 79:8.
basic 79:3.
basically 48:19.
basis 47:12, 54:17.
bear 18:8, 36:8.
bearing 40:20.
bears 69:24.
become 24:1, 48:18.
becomes 17:7, 54:23, 71:11.
Bedau 67:11.
bedrock 45:22, 51:3.
begin 36:3, 54:5.
Beginning 10:5, 45:8, 77:14.
behalf 2:10, 8:19, 59:23.
beings 62:4.
belief 5:1, 51:22, 76:23.
beliefs 65:11, 65:13.

believe 18:1, 25:2, 25:7, 25:10, 35:18, 35:25, 38:24, 40:19, 44:11, 52:3, 66:14, 66:15, 77:3.
Believed 42:16, 58:18.
beloved 53:2.
below 16:4, 36:13, 36:14, 36:15, 74:23.
bench 51:4.
benchmark 45:22.
benefit 20:20, 20:23, 24:25, 52:23, 84:12.
best 38:7, 52:4.
betrayed 52:14.
better 63:9, 83:20.
Biden 33:13.
biggest 21:6.
binder 43:3, 48:6, 50:16.
Birmingham 68:23.
bit 24:4, 24:5, 63:9, 81:12.
blows 50:21.
bomb 58:17.
book 6:19.
booth 65:11.
bother 23:9.
bottom 23:18, 34:17, 36:17.
Branch 68:23.
breaches 11:17, 61:17.
breadth

71:20.
break 4:6, 27:12, 48:20, 52:24, 54:16, 66:21, 67:9, 68:21, 70:6, 70:12, 70:15, 77:3.
breaking 83:16.
breaks 70:2.
Brevard 57:16.
brick 63:5, 63:6.
brief 7:18, 7:19, 30:15, 31:2, 43:3, 48:8, 49:20, 71:19.
briefly 5:11, 7:13, 28:16, 35:12, 36:2, 76:6.
bring 19:8, 22:2, 22:9, 22:12, 22:20, 23:15.
bringing 46:21, 55:2.
brings 10:21.
broad 5:24, 33:16.
broke 46:9, 69:14.
brother 38:20, 61:25, 62:18, 62:24.
brought 4:17, 20:6, 23:4, 23:10, 25:7, 25:10, 29:17, 41:9.
Buchanan 39:20.
bulwark 59:2.
burden 52:9.
business 60:4, 60:19, 79:16.

businesses 29:12.
Buzzfeed 48:11, 73:20, 74:6.
.
.
< C >.
C. 1:10, 1:46, 15:16, 16:1, 17:19, 22:10, 32:7, 53:7, 57:16, 67:15, 76:18, 78:9, 78:21, 79:12, 79:21, 79:23, 82:17, 82:20, 82:24.
Cabinet 6:20.
calculated 64:17.
calculates 12:13.
calculating 53:4, 77:18.
calculation 10:3, 10:4, 11:24, 15:23, 17:8, 47:12, 47:19.
calculations 16:8.
calculus 65:3.
call 3:16, 4:24, 44:15.
called 32:19, 32:20.
calling 8:14.
camp 81:24.
campaign 32:9, 32:10, 55:8.
candidate 55:10, 58:15.
cap 25:6.
capable 80:1.

Capitol 58:11, 76:12, 76:19.
capitols 58:17.
care 39:19, 39:21, 39:22, 47:10, 62:10, 62:14.
careful 29:19, 31:10.
carefully 5:16, 77:6.
caring 3:14, 62:6.
carries 16:6, 70:21.
carry 77:7.
carrying 58:12.
Cars 14:7.
catalyst 65:25.
Category 12:5, 12:6, 12:7, 12:12, 14:25, 36:24, 77:5.
caught 43:7.
cause 72:24.
caused 12:24, 13:17, 27:25, 52:6, 59:24, 77:8.
causing 77:9.
cents 13:23.
century 32:20.
certain 6:7, 7:15, 12:19, 13:25, 45:17, 58:24, 82:1.
Certainly 43:19, 50:13, 55:4, 60:18.
certify 85:11.
chair 5:2.

challenge 82:25.
chambers 5:12.
change 55:10, 55:11, 56:18, 62:6, 63:8, 80:21, 80:22.
changed 35:18, 68:9.
channels 48:16, 48:18.
chapter 83:18, 83:19.
character 62:19, 68:17.
characteristic 45:18.
characteristics 53:20, 61:22, 62:2, 63:25.
characterized 31:3.
charge 16:6, 18:24, 31:23, 35:23, 70:20.
charged 21:21, 21:22, 21:24, 22:7, 24:11, 24:12, 25:20, 35:17, 46:11, 46:13, 46:19, 46:20, 76:17.
charges 19:25, 20:5, 20:9, 23:3, 23:5, 23:13, 23:17, 23:22.
charging 22:15, 23:2, 25:3, 35:15, 71:22.
Charles 2:3, 3:1, 62:24, 78:10.

CHARLES EDWARD 1:10.
Chaz 63:1.
checked 44:5.
Cherry 1:32, 2:10, 35:5, 35:10, 47:11, 48:5.
child 30:23.
children 14:1.
choice 28:23, 77:3.
choose 70:13, 83:18, 83:19, 83:20.
choosing 67:19.
chose 42:15, 77:15.
Christine 1:41, 85:11, 85:16.
Circuit 57:16, 82:17, 82:20.
circulated 60:23.
circumstance 50:1, 61:18.
circumstances 3:12, 9:24, 18:14, 47:14, 53:19, 59:8, 61:20, 65:3, 65:20, 71:23, 72:2, 72:8, 76:20, 82:18, 82:19.
cite 35:25, 37:19.
cited 30:15, 30:21, 30:24, 36:11, 36:19, 37:15, 41:3, 43:2, 48:8, 73:12.
cites 44:14, 73:16.

citizen 67:17.
citizens 26:4.
city 69:2.
Civil 6:18, 6:21, 42:12, 69:10.
claim 69:3.
clarify 84:23, 84:25, 85:1.
CLARKE 1:24, 2:12, 2:15, 2:17.
classified 31:6, 74:21.
clear 5:6, 5:21, 7:20, 21:10, 22:24, 28:13, 36:6, 41:24, 42:3, 46:17, 46:22, 70:12.
clearances 50:20.
Clearly 11:1, 32:24, 50:10.
Clerk 5:15, 7:16, 7:24, 38:6, 80:20, 80:21, 84:23.
clerks 38:9, 67:2.
client 9:1, 46:9, 48:21, 48:23, 52:15, 84:4, 84:15.
climate 65:6.
cloaked 67:25.
close 38:20, 49:5.
closest 81:23.
co-conspirators

28:2.
co-defendant 75:17, 75:23.
Code 3:3, 35:15.
coincide 33:13.
coincidentally 6:14.
Cole 2:13.
colleague 47:11.
colleagues 38:3, 52:15.
collection 79:10.
college 42:5, 42:13.
colloquial 28:14.
colonies 67:6.
colossal 50:3, 50:4.
colossally 3:18.
Columbia 1:44.
COLUMBIA 1:2.
combination 15:9, 63:8.
combined 39:21.
Comey 65:25.
coming 35:3, 66:13, 84:9.
comments 32:16, 44:14.
Commission 5:22.
commit 3:18, 79:6.
commitment 58:4, 58:7, 63:1.
committed 26:12, 35:14,

46:10, 47:2, 50:4, 62:3, 73:8, 78:1, 84:13.
Committee 5:14.
committing 51:21.
common 45:22, 47:6.
communicate 30:13.
communicates 27:4.
communications 79:24.
Community 16:19, 53:2, 70:25, 78:17, 80:15, 80:16.
Company 9:13, 9:14, 10:10, 48:25, 60:18, 77:15.
comparators 77:11.
comparison 30:25.
comparisons 73:7.
compassion 62:3.
compelling 65:3.
compensation 51:21.
competitor 74:10.
complete 80:16.
completely 42:18.
completion 81:8.
complex 64:11.
compliance 60:15.
comply 53:9,

60:11, 79:14.
component 17:18, 71:15.
Computer 79:19, 79:20, 79:22, 80:5.
computer-aided 1:50.
computers 79:22, 79:25.
conceded 47:18, 54:4.
concedes 13:1, 13:7, 13:12.
conceivable 23:3.
concern 21:2, 58:6, 60:3.
concerned 68:14.
concerning 61:4.
concerns 24:7, 37:1.
conclude 54:9.
concluded 55:25, 85:9.
concludes 63:19.
conclusion 43:9, 43:12.
conclusions 56:7, 56:11, 71:6.
condemnable 71:24.
condition 15:8, 16:20, 71:1, 78:16, 79:8, 80:2, 80:3, 80:5, 84:24.
conditions

15:9, 38:22, 74:15, 78:25, 79:1, 79:5, 79:14.
conduct 5:24, 10:20, 10:21, 11:15, 21:19, 23:19, 31:23, 40:7, 41:13, 42:10, 46:12, 46:25, 47:1, 47:2, 47:8, 50:15, 53:14, 53:24, 56:17, 57:13, 58:7, 59:17, 61:15, 64:9, 64:24, 72:6, 79:4, 80:3.
conducted 23:16, 80:7.
confidence 52:21.
confident 21:11, 22:12, 22:21.
confidential 12:22, 21:12, 43:20, 60:13, 73:19.
confinement 15:9, 76:22.
confirm 9:10, 85:1.
Congress 5:22, 6:8, 53:7, 55:11, 69:18.
congressional 56:20.
connection 8:24.
consequences 27:7, 31:11, 31:20, 43:17, 52:9, 61:3, 64:3.
consider 5:25,

12:16, 16:2, 17:16, 23:12, 53:6, 53:18, 54:8, 65:4, 71:13, 77:7, 84:10.
considerable 66:18, 72:24.
considerably 84:9.
consideration 5:18, 14:21, 36:21, 51:8, 51:13, 78:9.
considered 54:2, 71:2, 71:16, 77:21.
considering 5:16, 11:22, 31:17, 66:12, 66:19, 76:19.
consistent 62:23, 68:5.
constant 37:3.
Constitution 5:4, 45:21, 68:8.
constitutional 5:7, 40:2, 45:16, 57:2, 58:12.
constructed 66:7.
consultant 64:1, 64:19, 72:22.
consumer 56:4.
contain 6:5.
contained 26:17, 72:23.
containing 58:20.

contains 80:6.
contemplate 24:14.
contend 74:11.
contest 59:16.
context 68:24.
continue 5:10, 57:15.
continued 68:16.
continues 60:14, 76:14.
Contitution 1:45.
contract 42:15.
contractors 64:14.
contribute 53:1, 59:11.
control 82:6.
controlled 79:7.
convey 38:23.
convicted 20:1, 36:12, 43:10, 43:11, 43:14.
conviction 10:19, 10:21, 17:3, 71:10, 82:17, 82:25.
convinced 48:19.
cooperate 27:12, 79:10.
cooperated 11:7, 19:16, 24:18, 24:24, 46:14, 61:13.
cooperating

35:24.
cooperation 20:15, 27:11, 27:20, 27:22, 28:6, 28:7, 28:13, 28:14, 46:21, 61:18, 75:21, 76:1.
core 22:4, 23:19, 23:22.
correct 13:6, 17:24, 18:2, 19:12, 27:15, 27:24, 85:12.
corresponding 74:21.
corrosive 68:15.
corruption 33:18, 33:20.
cost 17:16, 50:9, 71:13, 83:5, 83:7.
counsel 5:18, 7:3, 11:6, 11:13, 46:2, 47:20, 53:5, 73:16, 83:8.
Count 17:14, 19:11, 21:9, 21:18, 21:25, 22:1, 22:15, 22:19, 22:20, 23:15, 23:16, 24:2, 25:4, 25:8, 25:21, 35:12, 78:15, 78:16, 78:20, 84:7.
countless 60:17, 62:20.
country 3:23, 39:4, 52:3, 53:2, 55:25,

58:19, 65:25, 72:15.
counts 19:8, 21:21, 21:24, 22:2, 22:8, 25:8, 25:11.
course 5:2, 7:10, 7:25, 13:17, 25:25, 29:21, 40:17, 41:18, 41:19, 41:20, 50:6, 51:16, 55:20, 59:13, 63:22, 68:20, 68:22, 70:5, 81:21, 85:6.
court-appointed 83:8.
courthouse 6:15.
courtroom 3:9, 8:11, 8:13, 28:19, 32:9, 33:9, 52:12, 69:23.
courts 5:23.
cover 26:9, 50:21.
coverage 60:12.
covered 13:15, 21:19.
covers 25:4, 31:23.
create 83:21.
created 66:3.
creative 22:2, 23:21.
credible 40:18, 58:16, 69:13.
credit 47:23.
crime 25:17, 27:1, 27:3, 33:8, 33:24, 35:13, 41:14, 45:15, 46:10, 47:1, 49:4,

50:4, 51:20, 52:12, 62:3, 62:5, 76:8, 79:6.
Crimes 20:1, 26:13, 31:12, 31:13, 31:14, 31:15, 33:24, 46:14, 46:19, 53:15, 65:16, 78:1.
Criminal 1:5, 2:2, 12:4, 12:6, 12:7, 12:11, 14:25, 26:6, 31:7, 36:23, 36:25, 52:14, 53:14, 54:6, 57:5, 57:13, 61:23, 63:14, 64:3, 64:9, 64:12, 77:16, 80:24, 84:13.
criteria 10:24.
Criticism 57:20, 58:1.
criticize 57:25.
Crito 66:24, 67:15, 67:17.
cry 73:15.
crystal 41:24.
cultivated 48:14, 74:6.
cum 42:5.
current 44:7, 59:12, 65:5.
cushion 4:10.
cut 32:10, 49:21.
.
.
< D >.

dad 46:16.
damage 26:5, 26:6, 26:20, 60:10, 60:19.
dangerous 9:17, 33:17.
darkness 54:21, 54:25.
data 10:11, 10:12, 10:13, 11:21, 13:21, 13:24, 13:25, 14:13, 21:25, 26:3, 26:19, 26:25, 27:5, 29:25, 30:14, 32:22, 43:20, 48:10, 49:19, 49:20, 63:6, 73:1, 79:24.
databases 11:17, 48:10, 61:17, 75:9.
date 17:20, 81:12, 81:13, 81:15, 81:18.
daughter 34:6.
day 5:15, 5:17, 14:8, 25:3, 48:4, 60:4, 62:11.
days 4:16, 80:14, 80:21, 83:3.
DC 1:29, 1:36.
deal 32:19, 32:20, 33:24, 33:25, 34:24, 35:2, 60:23, 84:7, 84:10.
dealing 21:5.
death 54:25, 58:16,

67:16.
debated 67:14, 67:21.
decades 39:13.
decide 55:7, 55:8.
decided 9:14, 51:25.
deciding 52:8, 54:2, 57:7.
decision 6:9, 6:23, 18:8, 21:7, 23:2, 23:9, 23:15, 25:3, 38:14, 46:19, 49:23, 49:24, 52:11, 55:7, 66:11, 66:13.
decisions 4:1, 52:4, 64:15, 64:17, 77:18.
declaring 57:2.
declined 73:25.
decrease 11:1.
decreased 11:3.
dedicated 42:12.
deeds 33:1.
deep 3:14, 50:7, 50:8, 50:10, 50:11.
deeper 84:11.
deeply 4:15, 13:22, 61:4, 67:8, 84:15.
defend 5:4, 67:24.
defendants 53:22, 73:6, 74:21, 74:22, 75:5, 75:7,

75:16.
defense 4:18, 11:6, 30:21, 45:9, 47:20, 84:6, 84:13.
deference 43:25.
define 83:17, 83:18.
defined 79:21, 79:23.
definitely 42:9, 42:23, 82:15.
defying 70:1.
degree 42:7.
Delaware 62:15.
deliberate 64:11, 64:15.
deliberately 77:15.
deliberations 21:3, 21:5.
delivering 63:4.
demands 5:9, 65:6.
Democracy 5:7, 9:18, 40:1, 45:16, 54:20, 54:21, 54:22, 57:2, 58:2, 58:8, 58:25, 59:5, 76:15, 76:24.
democratic 59:14.
democrats 56:20.
demonstrated 11:2.
demonstration 69:1.
depart 74:1.
Department 1:25, 7:2, 8:22, 11:10,

23:1, 33:5, 43:4, 44:3.
departure 12:17, 12:19, 13:2, 13:7, 13:13, 14:23, 15:3, 15:15, 17:6, 29:14, 36:4, 36:6, 37:8, 37:17, 54:4, 54:11, 54:15, 71:21, 75:21, 78:13, 81:18.
departures 11:22, 12:16, 75:15, 75:18.
deprive 51:6.
described 18:4, 47:2, 50:3, 61:20.
describes 68:24.
deserved 52:1.
deserves 21:8, 40:3.
designated 12:7.
designation 81:20, 81:23.
desire 52:6, 66:2.
desires 33:13.
Despite 47:7, 52:5, 72:17.
destroying 26:10.
destructive 68:18.
detail 16:4, 20:23.
details 28:24, 30:6.
detect 11:20.
deter 11:20,

40:5, 53:14, 64:13, 67:9.
determination 20:4, 20:5, 23:5, 23:14, 23:17, 79:9.
determinations 8:7, 22:25.
determined 12:15, 54:10, 71:3.
determining 17:15, 71:12, 71:17.
deterrence 30:12, 31:13, 37:2, 42:4, 43:5, 64:8, 77:25.
deterrent 44:2.
device 80:5.
devices 30:1, 79:24, 80:1.
devoted 61:24, 63:3.
devotion 62:2, 62:17.
diary 34:6.
dice 23:21, 27:13.
die 54:22.
dies 54:21.
difference 18:22, 18:24.
differences 74:2.
different 3:12, 5:2, 21:25, 30:1, 49:14, 72:5, 72:6, 73:21, 74:24, 75:19, 75:23, 76:8, 84:17.
differently

4:12.
difficult 23:23, 51:5, 60:10, 62:1.
diligent 63:1.
direct 60:16.
directed 79:11.
directly 24:14, 28:18.
disagree 5:21, 40:2, 45:13, 74:18.
disagreement 59:12.
disagreements 69:15.
disagrees 46:10.
disclose 29:24, 52:8, 55:4, 55:5, 66:1, 66:5, 74:5, 74:21.
disclosed 14:13, 26:18, 28:20, 29:7, 32:24, 60:22, 61:7, 72:11, 73:19, 73:25.
disclosing 21:11, 21:12, 26:4, 30:14, 30:19, 50:20, 56:8, 57:8, 64:3, 64:20, 66:22.
disclosure 3:2, 16:6, 21:25, 22:1, 22:5, 22:8, 22:20, 23:19, 41:4, 41:8, 55:11, 56:18, 59:19, 69:16, 70:20, 72:3, 72:24, 73:11, 76:4,

80:8.
disclosures 11:21, 13:3, 26:5, 26:11, 28:18, 29:11, 29:21, 31:10, 59:17.
discourse 26:8.
discovery 11:15, 61:16.
discretion 5:23, 65:2.
discretionary 78:25.
discuss 7:17, 7:20, 16:4, 18:7, 54:1, 61:21, 67:5, 69:7, 76:6.
discussed 9:2, 12:12, 16:3, 59:7, 73:17, 75:3, 76:1, 76:3.
discussing 43:1, 66:25, 67:3.
discussion 4:8, 65:5, 66:23, 68:20, 69:10, 69:12.
dismissing 66:17.
disobedience 69:10.
disobey 69:7, 69:11.
disobeying 70:15.
disparaged 60:17.
disparities 53:22, 71:19.
disparity 75:24.
disputed 9:7.
disregard

39:11, 39:12, 39:13.
disregarding 40:3.
disrespect 32:17.
dissecting 3:22.
disseminated 29:4.
dissemination 10:13.
dissimilar 50:15.
dissuade 65:2.
distance 82:1.
distinct 41:12.
distinction 41:2.
distinguishing 69:3.
distress 59:25.
District 1:1, 1:2, 1:18, 1:43, 1:44, 80:20, 81:5.
division 56:4.
divulge 30:6.
DNA 79:10.
docket 7:24, 13:5, 59:21.
documents 7:3, 73:19, 74:8.
Doe 44:24.
doing 5:1, 7:22, 34:4, 40:5, 45:19, 63:5, 64:4, 66:18.
DOJ 22:1, 33:20.
dollars

13:22.
domestic 5:5.
Donald 9:17,
  33:9, 34:9.
done 8:18,
  10:4, 34:14,
  38:10, 61:10,
  84:3, 84:8.
doorstep
  14:6.
doubt 6:22,
  50:3, 54:12,
  62:23,
  84:5.
down 61:14,
  77:11.
download
  10:13.
downward
  75:15.
dozens 37:15,
  68:4.
draw 56:10,
  73:7.
driven 52:5,
  66:6.
driver 13:24.
drives 28:5.
drug 79:7.
due 38:21,
  46:1.
dumb 42:8,
  42:9.
during 6:18,
  62:1, 62:8,
  73:5, 78:17,
  82:13.
duties 58:5.
duty 67:17,
  68:12.
.
.
< E >.
earlier 30:12,
  42:1, 46:13,
  65:5, 70:18,
  70:25, 71:3,
  76:1,
  80:15.
Easter 81:15.

easy 38:14,
  52:1,
  66:11.
economic 31:18,
  55:22,
  60:10.
economics
  42:7.
economy 67:5.
editor 74:9.
Edward 2:3,
  78:10.
Edwards 48:7,
  73:17, 73:22,
  74:1, 74:3,
  74:14, 74:18,
  75:11,
  75:14.
effect 44:2,
  58:12, 68:15,
  83:10.
effective
  55:19,
  65:17.
effects 6:10.
efficiency
  63:5.
egregious 47:8,
  62:5, 71:23,
  73:8.
eight 49:10.
either 5:25.
elected 19:25,
  41:22, 41:25,
  57:3, 58:3,
  58:5, 59:3,
  65:8.
election 26:7,
  58:20.
electronic
  79:23.
eligibility
  55:10.
eligible 16:23,
  71:8.
Elon 33:9,
  34:9.
email 5:12,
  5:17, 7:20.
emailed 7:14.

emailing
  38:6.
embarrassing
  28:24.
embodiment
  39:20.
emotional
  61:2.
employed
  82:13.
employee
  30:22.
employees 75:7,
  75:10.
Employment
  9:13, 77:14,
  79:15.
Emporer
  52:21.
enable 60:14,
  79:17.
encouraged
  74:12.
end 9:18,
  11:21, 14:8,
  14:15, 15:14,
  23:7, 25:3,
  37:7, 52:12,
  53:9, 56:5,
  57:22, 60:7,
  60:15, 60:20,
  61:3.
endangers
  50:21.
endorsed
  67:19.
endorsing
  56:6.
ends 54:23.
enemies 5:5.
enforcement
  37:4, 50:19,
  75:9.
engage 77:15,
  79:15.
engaged
  64:11.
engagement
  37:3.
engenders

76:25.
engineer
  76:4.
enhancement
  24:15.
enhancements
  47:19.
enormous 25:16,
  26:21.
enough 3:17,
  8:21,
  84:14.
ensure 53:8,
  58:4.
entered 81:1,
  82:22,
  82:25.
enthusiasm
  63:3.
entirely
  50:14.
entities 28:22,
  59:20.
entitled 6:20,
  14:11, 14:18,
  14:21, 55:23,
  56:14.
entries
  49:25.
entrusted
  26:2.
entry 83:3.
episode 6:12.
equal 14:11,
  14:14.
equally
  69:17.
equivalent
  37:7.
error 50:4.
Espionage
  50:17.
Esquire 1:23,
  1:24, 1:31,
  1:32.
essentially
  28:23.
establish
  13:10, 68:11,
  79:3.

established 68:13, 70:18.
estimated 56:1.
ethics 66:12, 66:19.
evacuations 58:19.
evading 70:1.
event 20:3.
Everyone 32:8, 44:18, 46:2, 56:14, 63:9, 66:24, 67:24, 69:17, 85:8.
everything 41:23, 60:3, 65:6, 65:8, 66:14, 82:7.
evidence 11:15, 26:10, 61:16, 74:11, 80:6.
evidentiary 8:10.
evolution 67:5.
ex-husband 30:22.
exact 21:20, 47:1.
exactly 35:13, 47:2, 60:2, 68:2.
example 30:20, 34:5, 36:23, 41:2, 48:7, 62:8.
examples 12:19, 58:22.
excellent 46:2.
exceptional 29:16, 39:18.
exceptionally 84:8.

excerpts 59:24.
excess 16:21.
exchange 26:23.
exclusive 3:20.
excuse 6:16.
execute 81:6.
executed 31:16, 44:15.
execution 29:19, 31:10, 68:17.
exemplary 42:11.
exercise 58:5, 65:2.
exercising 56:19.
exist 75:3.
exists 68:8, 80:4.
expect 21:13, 26:23, 26:24, 83:9.
expectation 64:20.
expectations 79:3.
expected 17:16, 71:13, 75:20.
expecting 8:10.
experience 52:25, 64:5.
experienced 26:1, 72:22.
expiration 11:9.
explain 18:22, 20:22, 25:1, 54:17.
explained 29:2, 36:10, 61:5, 62:25.
explains 11:6,

62:9, 62:19, 63:16, 65:24, 66:8.
explanation 19:21.
explicit 68:9.
exploit 29:22.
exposed 20:7.
exposing 58:6.
exposure 20:2.
expressed 63:22, 76:13.
expression 65:10.
expressly 5:22, 56:20.
extensive 26:20, 29:19.
extent 25:5, 83:1.
extract 30:5.
.
.
< F >.
F.4th 57:16.
face 27:7, 31:1, 55:6.
faced 19:25, 20:17.
faces 70:22.
facility 82:2.
facing 20:14, 20:15, 20:16, 20:17, 20:20, 21:9, 24:2, 73:22.
fact 6:7, 6:9, 9:7, 9:25, 20:15, 24:1, 40:12, 40:19, 44:20, 45:9, 46:20, 52:13, 72:25, 73:1,

76:3, 84:17.
factor 29:18, 54:8, 59:7.
factors 16:2, 17:16, 18:8, 18:11, 19:18, 32:1, 36:21, 38:13, 45:15, 53:7, 53:25, 54:2, 54:9, 54:14, 61:21, 65:19, 71:13, 75:2, 76:2, 77:21.
facts 9:24, 18:14, 36:9, 49:21, 75:1, 76:20.
factual 8:7, 9:22, 11:18.
failure 83:19.
failures 3:23.
fair 20:19, 48:3.
fairness 48:2, 66:13, 66:20.
faith 27:1, 52:17, 52:24, 83:20.
fall 77:4.
false 60:14.
families 56:1, 57:11.
family 3:13, 4:11, 4:23, 14:5, 29:1, 32:23, 38:18, 49:5, 50:11, 51:14, 58:6, 59:25, 60:17, 60:25, 62:9, 62:11, 62:12, 62:17, 81:11, 81:16, 81:24, 83:11, 83:12,

83:24.
far 46:5,
 71:23, 73:14,
 76:16,
 77:5.
farewell
 68:7.
fatal 68:18.
fate 49:16,
 63:21.
father 43:18,
 82:2.
favor 70:11.
FBI 34:7.
FCRR 1:41,
 85:11.
fear 29:2,
 57:10, 76:13,
 76:25.
fearful
 65:24.
fears 67:2.
Federal 33:18,
 42:22, 42:23,
 55:24, 56:1,
 60:11, 69:17,
 75:7, 75:10,
 79:6, 80:24,
 81:23,
 82:12.
federalism
 66:13,
 66:20.
feel 6:8, 8:21,
 44:10, 63:21,
 67:9,
 84:16.
feelings
 4:10.
fell 36:15.
felon 43:10,
 43:14.
felony 18:24,
 21:9, 21:19,
 24:2, 25:20,
 43:11, 73:22,
 76:17,
 84:7.
felt 49:13,
 50:1, 50:2,

51:23, 52:1,
 65:24, 66:2,
 66:15.
fentanyl
 58:20.
few 4:16.
fictional
 78:3.
fighting 22:22,
 56:21.
figure 20:13,
 23:10.
file 83:6.
filed 7:7,
 7:11, 7:12,
 7:18, 8:3,
 8:23, 55:14,
 75:4, 83:2.
files 75:9.
filing 7:20,
 7:24, 61:5,
 83:3.
filings
 13:21.
final 4:20,
 8:3, 13:10,
 14:24, 16:9,
 18:8, 20:5,
 30:9, 53:4,
 54:10,
 81:1.
finances
 56:4.
Financial
 13:24, 26:22,
 28:25, 30:20,
 32:22, 32:25,
 41:11, 73:20,
 80:8, 80:9,
 80:10, 80:11,
 80:19,
 80:22.
Financing
 6:21.
find 57:12,
 58:10, 61:4,
 64:12, 72:17,
 73:11, 74:23,
 75:24, 76:9,
 77:13.

finding 73:4,
 83:23.
findings
 9:25.
finds 77:22.
Fine 17:3,
 17:7, 17:9,
 17:15, 18:13,
 71:10, 71:12,
 78:19, 80:13,
 80:14.
finish 83:15.
fired 74:9.
firing 66:1.
firm 52:15.
firmness 5:9.
First 10:24,
 28:17, 30:17,
 35:6, 36:9,
 36:11, 38:2,
 47:22, 51:12,
 51:17, 56:17,
 56:19, 57:24,
 69:4, 69:20,
 74:3.
firsthand
 83:12.
fiscal 73:5.
fit 33:9.
five 16:7,
 16:24, 17:1,
 44:1, 70:21,
 71:9, 73:5,
 73:14.
five-year
 20:17, 20:20,
 73:13,
 73:22.
flat 56:9.
flavor 30:24.
flee 67:15.
Floor 1:28.
follow 26:11,
 39:5, 70:14,
 73:3.
following 7:3,
 13:14, 14:23,
 17:6, 52:22,
 70:23, 75:18,
 78:13, 78:25,

79:14.
follows 10:5.
Forbes 56:4.
force 52:23.
forced 19:9,
 84:10.
forcefully
 63:23.
foregoing
 85:12.
foreign 5:5.
foremost
 51:17.
Forfeiture
 81:1.
forget 4:21.
forth 3:25,
 8:7, 16:8.
forthrightly
 63:23.
forward 2:4,
 40:8, 52:24,
 77:7, 85:4.
found 12:5,
 53:23.
founders 67:22,
 68:1, 68:2,
 68:14.
four 12:14.
four-level
 13:1, 13:7,
 13:13, 14:23,
 15:15,
 71:21.
four-point
 37:17.
fragile
 52:17.
framework
 15:22, 18:4,
 66:6.
frank 4:7,
 39:15.
frankly 31:2,
 47:22.
fraud 41:11,
 41:15.
freaks 66:24.
frequently
 19:4.

Friday 75:6.
friend 3:16,
  61:24, 62:18,
  62:25, 66:8,
  66:18.
friends 3:13,
  4:11, 4:23,
  38:19, 38:21,
  42:13, 49:6,
  50:10, 83:11,
  83:12.
friendship
  62:21.
front 3:21,
  60:5.
Fry 73:13.
fulfill
  62:12.
full 4:1, 25:4,
  29:21, 40:9,
  52:11, 64:21,
  80:23,
  83:21.
fully 4:8,
  8:16, 60:11,
  60:19.
function 20:8,
  39:5, 58:8.
functioning
  58:2.
fundamental
  47:12,
  68:18.
fundamentally
  31:4, 42:16,
  62:6.
funds 35:16.
future 11:17,
  11:20, 50:12,
  53:15, 57:11,
  57:16, 61:9,
  61:12, 61:17,
  65:16, 78:1,
  79:9.
.
.
< G >.
G. 10:7, 10:9,
  12:18.
gain 30:20,

41:11.
gave 48:11,
  84:9.
general 30:12,
  30:23, 31:13,
  43:5,
  50:18.
generally
  15:14, 16:21,
  19:21.
generously
  33:6.
genuine 5:1.
George 68:7.
gesture
  62:20.
gestures
  62:21.
getting 27:18,
  33:24, 43:7,
  46:5.
give 18:17,
  19:22, 24:12,
  24:18, 25:6,
  27:10, 33:7,
  34:5, 34:25,
  43:25, 46:3,
  81:17.
given 51:13,
  57:14, 64:5,
  64:21,
  83:17.
gives 6:16,
  25:6,
  31:24.
giving 21:9,
  24:24, 32:15,
  32:16.
Google 44:7.
gotten 4:3,
  28:8, 46:6,
  50:6, 77:1.
governing
  54:22.
grab 2:14.
graduated
  42:5.
grand 62:20.
grandfather
  62:13,

62:15.
grandkids
  34:22.
grave 27:7.
great 47:5,
  59:25, 78:5,
  84:10.
greater 17:2,
  53:9, 74:22,
  77:23.
greatly
  38:12.
Greeks 67:1.
Griffin
  33:10.
group 60:8.
guarantee
  14:12.
guess 43:22.
guidance
  39:12.
guided 4:25.
guideline 10:3,
  10:6, 13:11,
  14:25, 15:2,
  15:4, 16:13,
  17:9, 18:10,
  64:13,
  70:24.
guilty 3:1,
  11:8, 33:2,
  35:13, 35:23,
  46:11, 46:15,
  53:23,
  75:7.
guy 67:6.
.
.
< H >.
half 15:20,
  36:17.
Hamilton 68:2,
  68:4.
hand 49:22,
  77:11.
handful
  58:21.
handled 3:17.
hands 39:10,
  51:7, 57:8,

64:15,
  77:19.
happened 21:10,
  25:16, 28:2,
  30:18, 31:1,
  34:1, 36:18,
  41:25, 48:23,
  49:18.
happens 44:22,
  82:8.
happy 82:2.
harass 14:5.
hard 45:6,
  63:5, 84:2,
  84:14.
harder 83:25,
  84:9.
hardest 83:9.
harm 12:24,
  13:18, 14:21,
  26:14, 26:15,
  26:19, 27:25,
  29:12, 32:23,
  52:7, 56:10,
  57:14, 58:7,
  58:25, 61:10,
  64:6, 70:8,
  70:10, 72:3,
  72:18, 72:24,
  73:9, 77:9,
  77:17.
harmed 58:25,
  63:18.
harming 59:1.
harms 57:10,
  72:6, 73:3.
harsh 4:9.
head 31:15.
heads 44:18.
healing
  62:22.
health 13:25,
  38:22,
  74:15.
hear 32:6,
  40:24,
  49:7.
heard 19:20,
  59:15.
Hearing 3:22,

6:4, 7:4, 7:15, 7:17, 8:10, 9:22, 35:17, 39:3, 43:9, 48:4, 53:5.
heartbroken 39:1.
heist 21:6.
held 34:23.
help 4:24, 20:10, 22:22, 27:23, 27:25, 52:20, 57:6, 61:17, 61:25, 62:10.
helped 62:14, 72:12.
helpful 6:14, 74:18, 75:21, 76:9.
Helton 36:19.
Herbert 39:21.
hereby 85:11.
hero 78:5.
herself 58:6.
high 25:15, 36:24.
high-level 50:19.
highest 36:24, 57:3.
highlight 28:16, 29:18.
highlighting 69:24.
highly 6:19, 11:18, 72:2, 72:7, 73:8.
hindsight 56:22.
historic 66:19.
historical 66:12.
History 12:5, 12:6, 12:7, 12:12, 14:25,

21:6, 25:17, 26:13, 36:23, 36:25, 37:2, 53:19, 59:18, 61:22, 61:23, 66:9.
hoax 58:19.
hold 58:3.
home 13:23, 14:7, 76:22.
honestly 62:23.
HONORABLE 1:17.
Hoover 39:21.
hope 21:13, 34:24, 48:6, 52:24, 64:19.
hours 16:22, 38:6, 49:10, 62:11, 78:17, 80:16.
House 3:10, 5:13, 55:14, 55:15, 55:22, 58:13.
housekeeping 5:10.
Hugo 67:11.
human 62:4.
Hunting 67:7.
hurdles 22:15.
hurt 14:19, 51:19, 70:13.
.
.
< I >.
I. 12:7.
iceberg 29:6.
idea 45:23, 56:7, 58:23, 68:10.
identification 12:21.
identify 2:4.
identifying

7:10, 75:10.
ideological 31:19, 50:15, 50:23, 64:25.
ignore 37:14, 37:18.
ill 62:13.
illegal 11:20, 52:6, 54:23.
illness 62:8.
imagine 60:3.
imagined 66:2.
immediately 80:19.
immense 3:14, 29:13, 77:9.
impact 6:9, 7:7, 13:20, 33:7, 43:7, 43:8, 50:11, 59:22, 60:10, 74:17.
impacted 28:18, 57:14, 69:18.
impacts 34:21, 34:22.
impartiality 52:18, 63:15.
impede 10:17.
impeded 10:16.
imperative 4:5, 58:2, 66:15.
imperfect 62:4.
implausible 72:18.
implicitly 67:19.
important 4:1, 30:10, 59:11, 84:12.

impose 6:8, 13:12, 16:12, 37:20, 37:21, 53:8, 54:12, 54:17, 71:17, 77:13, 77:23.
imposed 16:15, 16:21, 16:25, 29:15, 53:12, 54:4, 64:7, 76:7, 78:14, 79:3, 82:25, 84:19.
imposes 16:16.
imposing 75:25.
impossible 4:21.
impression 28:8.
impressive 84:18.
imprisonment 12:14, 13:11, 15:5, 15:6, 15:7, 15:14, 15:18, 15:19, 15:21, 16:8, 16:9, 16:14, 16:17, 17:17, 70:22, 70:23, 71:14, 78:15.
improbable 40:22.
improve 42:19.
improving 63:3.
inability 19:4.
incarceration 18:12, 42:21, 65:4, 74:2, 74:16, 82:14.
incarceratory 32:1.

include 12:20, 53:11, 78:16, 79:5, 82:12.
included 13:23, 81:2.
includes 15:7, 15:8, 15:19, 65:8, 81:5.
including 6:17, 7:6, 16:2, 28:20, 32:23, 38:20, 53:21, 53:25, 57:6, 73:9, 73:19, 75:9, 76:3.
income 6:17, 28:20, 28:21, 56:1, 56:4, 56:14, 60:12.
increase 10:8, 10:15, 30:23.
increased 15:1.
increasingly 65:24.
incremental 63:8.
incurred 60:19.
independent 65:12.
indicated 7:9.
indictment 18:23, 19:4, 19:6, 19:9.
indisputably 6:6.
individual 30:19, 39:9, 41:2, 55:24, 58:4, 67:12, 68:12, 74:25, 76:20.
individuals 12:23, 12:25, 13:4, 13:16,

27:4, 28:17, 28:21, 29:11, 31:9, 31:17, 51:19, 55:6, 55:19, 57:9, 59:20, 61:8, 63:18, 65:3, 72:15, 72:21, 76:11, 76:16, 77:5.
Industries 82:13.
influence 26:7.
informed 52:4.
inherently 66:10.
initial 10:3, 12:13, 15:1, 24:9.
innocent 52:16, 63:12, 70:10.
innumerable 55:1.
inquiry 5:24.
inspecting 64:3.
install 79:20.
instant 10:19, 77:24.
Instead 20:16, 30:4, 42:15, 56:8, 66:17, 67:5, 67:7.
Institute 43:4.
institutions 52:18, 63:16.
instructions 7:23.
insufficient 64:13, 73:6.
insurrection 67:25, 76:18.

Integrity 1:26, 11:11.
intelligence 3:14.
intelligent 4:4.
intend 72:3, 72:18.
intended 19:21, 26:5, 73:8, 77:16.
intent 49:4, 74:4, 76:19.
intentional 49:2.
intentionally 32:22, 77:8.
interest 51:23.
interested 6:17.
interesting 69:10.
Internal 21:3, 21:4, 25:18.
internalize 52:25.
internally 23:1.
internet 80:1.
interviews 49:10.
intimidated 14:7.
intolerable 57:1, 59:9.
introduction 6:18.
intrusions 14:19.
invading 14:10.
invasion 13:19.
investigation 10:18, 11:8,

26:10, 34:8, 81:4.
investigators 74:25.
investments 60:4.
involve 30:17, 71:23, 72:1, 72:6, 74:24.
involved 12:21, 13:3, 20:2, 31:8, 36:12, 50:13, 76:18.
involves 31:9.
involving 59:19, 75:8.
IRS 10:11, 10:12, 11:17, 11:20, 11:21, 21:6, 26:13, 26:22, 26:24, 29:22, 29:23, 30:22, 42:15, 56:3, 59:18, 61:17, 64:19.
issue 5:11, 7:13, 7:21, 35:11, 40:6, 48:15.
issues 9:7.
itself 43:4, 44:3, 82:23.
.
.
< J >.
Jacobson 2:7, 7:21, 7:25, 11:25, 17:24, 18:19, 18:21, 20:10, 45:1, 84:21, 85:1.
Jail. 68:23.
James 39:20,

65:25.
Jane 44:24.
January 29
1:11.
Jennifer 1:24,
2:12, 2:15.
jeopardized
60:25.
job 8:19, 38:7,
42:13, 72:8,
84:4.
jobs 49:14.
Johnson
39:21.
join 74:4.
joining
38:24.
Jon 38:9.
Jonathan 2:6.
Jonathan E.
Jacobson
1:23.
journal
49:25.
journalist
14:4, 74:6.
Jr. 68:23.
JUDGE 1:18,
3:24, 19:17,
36:25, 41:5,
41:6.
judgement
80:14,
81:2.
judges 41:23.
judgment 30:2,
63:21, 64:16,
78:10,
83:3.
judiciary 59:1,
65:12.
jurisdictions
37:4.
Justice 1:25,
10:15, 10:18,
11:11, 23:1,
31:25, 33:5,
33:18, 34:8,
43:4, 44:2,
52:20.

justifiable
64:24.
justification
36:7.
justified
36:6.
justifies 25:2,
27:3,
29:13.
justify
54:23.
.
.
< K >.
Ken 33:9.
key 74:2,
84:6.
kids 34:22.
kind 5:25,
20:5, 22:2,
31:8.
kinda 34:16.
kinds 53:20,
70:17, 70:19,
71:16.
King 68:23,
68:25,
69:24.
knowing
83:10.
knowledge
10:11, 52:11,
64:21.
known 61:10.
knows 3:16.
.
.
< L >.
lab 36:13.
labored 63:6.
Language 4:9,
4:10.
lapse 30:2.
laptop 4:18.
large 43:3.
largely 5:24.
largest
50:17.
last 5:11,
6:13, 73:5.

later 54:1,
72:13.
latter 70:11.
laude 42:6.
law-abiding
77:2.
lawful 51:9,
53:1, 55:1,
55:6, 55:16,
56:25.
lawfully 55:14,
55:15.
lawlessness
54:21, 54:25,
68:15.
lawmaker
58:16.
laws 14:12,
39:4, 39:5,
45:24, 55:10,
55:21, 56:12,
56:18, 65:10,
67:13, 67:14,
67:20, 68:17,
68:21, 69:5,
69:6, 69:7,
69:8, 70:14,
70:15.
lawyer 47:23.
lawyers
84:15.
lays 10:2.
lead 70:2,
83:21.
leaders 58:1.
leak 56:15.
leaked 74:8.
leaker 44:9.
leakers 43:7,
50:16.
leaking
73:14.
learned
29:22.
least 8:12,
8:13, 15:20,
17:1, 28:18,
61:5, 67:14,
72:8,
72:18.

leaving 44:5.
led 42:10,
58:19.
left 14:6,
51:7.
legal 7:15,
43:15, 47:6,
55:4, 56:21,
59:24, 69:5,
84:6.
legislative
58:18.
legislatures
55:9.
length 43:1,
69:7.
lengthy 65:4.
leniency
48:2.
Lepage 36:16.
less 14:18,
14:19, 14:20,
16:14, 16:24,
71:9,
84:18.
Letter 5:13,
5:15, 5:18,
6:3, 6:7,
6:10, 6:24,
65:22, 65:23,
68:23, 69:2,
69:25.
letters 3:13,
3:16, 5:19,
7:6, 38:17,
40:14, 42:12,
49:5, 58:20,
61:23.
level 10:6,
10:7, 10:22,
11:3, 11:23,
11:25, 12:11,
12:20, 13:7,
13:13, 13:14,
14:24, 17:2,
17:5, 17:6,
17:9, 25:16,
33:18, 47:8,
54:11,
71:11.

levels 11:4.
liberty 3:24,
   4:2, 4:22,
   51:6.
license
   13:24.
life 3:7, 30:3,
   42:11, 43:17,
   44:9, 50:1,
   50:2, 58:11,
   60:1, 62:22,
   83:17, 83:18,
   83:22.
light 55:2.
lighter 31:5.
lightly
   52:10.
likelihood
   65:4.
likely 52:11,
   66:10.
limitations
   11:9.
limited 26:19,
   28:5.
Lincoln 6:20.
line 23:18,
   34:17,
   49:8.
lined 14:7.
link 38:24.
Lisa 2:9.
Lisa Manning
   1:31.
list 33:10.
listen 33:20.
listening
   48:16.
literally
   24:24.
litigation
   55:14,
   55:15.
little 24:4,
   24:5, 63:9.
live 57:10,
   67:19.
lives 26:22,
   28:25, 45:18,
   57:3, 59:10,

   74:25.
living 39:20.
LLP 1:33.
lobby 55:9,
   55:10,
   69:20.
local 69:2,
   79:6.
located
   75:11.
locating
   28:5.
long 3:22,
   31:16, 33:10,
   34:22, 37:2,
   69:9,
   74:16.
look 30:18,
   34:4.
looked 30:22.
looking 17:12,
   22:3, 24:21,
   62:15.
loopholes
   29:22.
lose 43:15,
   50:1, 50:2.
loss 35:19.
lost 44:18,
   60:18.
lot 38:13,
   42:14,
   51:14.
Louis 62:10,
   62:11,
   81:24.
love 4:23,
   18:17,
   83:13.
lovingly
   70:3.
low 55:19,
   65:16,
   79:9.
Lowenstein
   6:20.
loyalty 3:15,
   62:2.
luck 83:23.
Luther 68:22.

lying 74:25.
.
.
< M >.
ma'am 2:11,
   2:16.
machine 1:49.
Magazine
   56:5.
magnitude
   25:16,
   29:12.
main 44:14.
malice 32:23,
   40:11.
manage 61:2.
mandatory
   17:15, 78:25,
   79:5, 79:7.
manner 65:17,
   80:7.
Manning 2:9,
   2:10, 7:23,
   9:1, 9:10,
   12:2, 13:6,
   35:4, 37:9,
   37:23, 37:24,
   38:1, 39:14,
   40:17, 40:18,
   41:17, 45:5,
   51:10, 71:5,
   81:10, 83:25,
   84:2, 85:5.
manual 10:5.
Marcus 52:21.
Marion 81:23.
market 67:5.
Martin 68:22.
materials
   6:25.
matter 5:11,
   8:4, 63:2,
   64:25,
   85:13.
Max 35:23,
   36:15, 37:5,
   37:14,
   37:17.
max. 36:18,
   51:1.

maximum 16:7,
   17:3, 19:14,
   20:18, 20:20,
   25:12, 27:14,
   34:25, 40:4,
   70:21, 71:10,
   78:14,
   78:19.
Mead 1:33.
mean 21:24,
   22:1, 27:22,
   34:1, 34:16,
   34:17, 37:9,
   40:19, 40:20,
   40:22, 41:16,
   42:8, 42:21,
   43:2, 44:5,
   44:18, 44:19,
   44:22, 44:23,
   45:12, 45:18,
   46:17, 47:9,
   47:23, 48:21,
   48:22.
meandering
   63:4.
meaning 27:19,
   27:20,
   28:14.
meaningful
   30:25,
   73:7.
Means 5:14,
   6:12, 6:20,
   12:21, 14:16,
   14:17, 32:17,
   51:14, 54:23,
   55:1, 56:21,
   56:25.
measure
   39:18.
media 48:11,
   60:12, 60:18,
   79:24.
media. 9:19.
medical
   74:15.
meditations
   52:22.
meet 62:16.
meeting 3:12.

meets 10:24.
members 5:13, 5:19, 6:7, 58:14, 62:10.
memo 56:13, 59:21.
memorandum 7:5, 36:1, 84:8.
men 81:23.
mental 61:2, 74:15.
mention 6:16, 65:21, 76:23.
mentioned 30:12, 35:14, 56:20, 65:21.
mercy 52:19.
merely 58:1.
message 27:8, 27:11, 30:13, 42:3, 53:1, 65:9.
methamphetamine 36:13.
methodology 56:7.
mildly 72:7.
military 50:19.
militia 68:4.
mind 49:12.
mine 13:25.
minimum 15:5, 15:17, 15:20.
mis- 27:15.
misconduct 22:4, 23:19, 23:23, 24:8, 25:5.
misguided 4:25, 40:10, 40:21, 51:22, 60:12.
misimpression 27:16.
mistaking

52:13.
mitigating 61:18, 65:19.
moment 23:14, 49:23, 78:6.
momentarily 31:15.
momentary 30:2.
moments 62:1.
money 42:15, 49:15.
monitoring 79:19, 79:20.
month 29:2, 54:10.
months 12:14, 13:11, 15:1, 16:7, 16:10, 18:12, 19:15, 24:12, 24:24, 25:6, 25:9, 27:10, 30:11, 32:2, 43:23, 49:7, 64:13, 73:23, 74:1, 75:12, 77:6, 78:15.
moral 4:5, 41:14, 44:10, 56:23, 66:6, 66:15, 66:21, 67:9, 68:20, 69:6, 69:10, 70:7, 70:8, 70:10.
morally 57:22.
morning 2:6, 2:8, 2:9, 2:11, 2:16, 2:17, 2:22, 3:6, 3:7, 32:13, 32:14, 35:9, 35:10, 37:25, 38:1, 44:5, 44:6.

mother 38:21, 38:25.
motivation 5:8, 40:15, 40:16, 41:14, 50:23, 65:1.
motivations 67:8.
motive 40:10.
motives 71:24.
move 33:21.
moving 52:24.
MR. CHERRY 35:9, 35:11, 35:21, 37:13.
MR. WILSON 2:22.
Ms 2:9, 2:17, 7:22, 9:1, 9:9, 12:2, 13:6, 35:4, 37:9, 37:23, 37:24, 38:1, 39:14, 40:17, 41:16, 45:5, 51:10, 71:5, 74:3, 81:10, 83:24, 84:2, 85:5.
MS. CLARKE 2:12, 2:15.
Multi-year 54:6, 77:16.
multiple 29:25, 37:4, 72:12.
multiyear 64:12.
mundane 63:2.
Musk 33:9, 34:9.
mutually 3:19.
.
.
< N >.
name 2:14,

44:6, 48:17, 48:19.
named 33:15.
Narratives 60:22.
narrow 82:18.
nation 26:7, 56:11, 63:14, 65:9.
National 43:4, 50:21.
nature 31:8, 44:13, 53:19, 54:5, 56:23, 57:1, 57:14, 59:5, 59:7, 59:9, 61:19.
naught 48:6.
necessarily 37:18, 61:10.
necessary 32:2, 53:9, 54:11, 56:17, 77:13, 77:23.
need 4:8, 4:9, 20:23, 21:7, 27:23, 31:7, 31:19, 31:20, 53:11, 53:21, 53:24, 62:1, 64:7, 65:15, 66:2, 71:18, 81:12, 83:17.
needed 49:14, 55:18.
negate 73:1.
negotiated 19:2, 23:6.
negotiation 21:13.
neither 5:19, 69:11, 71:5.
New 6:5, 56:14, 67:23, 72:11, 72:19.
news 26:17,

26:18, 29:25, 30:1, 44:7, 44:14.
newspaper 60:6.
newspapers 32:19.
Next 5:17, 12:16, 29:1, 29:2, 36:16.
night 6:13, 14:8, 62:12.
nine 71:22.
NO. 1:5.
Noah 1:32, 2:10.
noble 56:23.
nobody 34:23.
noise 44:21.
non-monetary 12:24, 13:18.
non-tax 73:11.
None 18:5, 44:25, 50:24, 55:4, 70:5, 76:17, 76:18.
Nor 5:20, 16:24, 52:10, 69:12, 71:5, 73:11.
norms 45:24.
Note 11:5, 12:18, 13:2, 13:14, 15:11, 16:19, 29:15, 71:7, 82:1.
noted 70:25, 85:6.
notes 14:6, 15:10, 17:4.
nothing 6:3, 24:25, 27:10, 30:18, 34:10, 50:1, 50:2,

51:7, 56:23.
Notice 7:11, 75:4, 82:16, 83:2, 83:4.
notify 18:9, 80:21.
noting 26:14, 74:8.
number 12:23, 13:4, 13:16, 13:24, 19:8, 22:11, 30:19, 58:10, 59:23, 73:6, 73:24.
numerous 28:2, 30:15, 55:5, 55:6, 58:21, 58:22, 59:23, 67:25.
NW 1:27, 1:45.
.
.
< O >.
oath 5:3, 14:14.
obey 67:17, 68:12, 69:6.
obeying 68:6, 69:5.
objected 5:18, 71:5.
objection 7:9, 8:7, 9:20, 9:22, 17:8, 17:12, 17:13.
objections 9:4, 9:11, 11:24, 12:8, 15:22, 18:3, 84:19, 85:5.
objectives 52:14.
obligated 26:21.
obligation

44:10, 52:10, 55:4, 58:12, 66:4, 66:21, 67:9, 68:20, 69:11, 69:23, 70:9, 70:10, 80:13, 80:23.
obligations 60:12, 62:13, 62:16, 69:7, 80:19.
obligatory 68:10.
obscure 63:6.
observed 37:1.
obstruct 10:17.
obstructed 10:16.
obstruction 10:15.
obstructions 68:16.
obstructive 10:20.
obtain 56:21.
obtained 13:1, 60:13.
obvious 57:18.
occasions 72:12.
occupation 79:16.
occur 31:14, 57:10, 78:17.
occurred 4:9, 75:6.
offenses 31:18, 37:3.
offensive 67:14.
offered 33:7.
offers 42:13.
Office 10:3, 18:9, 18:14, 39:13, 39:25,

43:24, 44:5, 58:5, 58:6, 59:1, 59:4, 79:1, 80:3, 80:11, 80:12, 81:3, 81:5, 81:8.
officer 79:11, 79:18, 79:20, 80:9, 80:17.
officers 50:19, 50:20.
offices 58:18, 58:20.
Official 1:42, 73:18, 85:17.
officials 41:22, 41:25, 57:3, 58:3, 59:3, 64:14, 65:8.
often 31:9, 47:20, 74:23.
Okay 2:16, 19:24, 20:22, 21:16, 32:4, 33:19, 34:5, 35:20, 37:12, 82:4, 84:23.
Once 49:19.
ones 85:6.
ongoing 26:15, 33:17.
Onorato 1:33.
open 32:17, 41:22, 41:24, 42:2, 57:2.
openly 70:3.
operating 36:12.
opinion 56:14.
opportunities 18:18.
opportunity 18:18, 21:10,

30:13, 31:24,
32:16, 33:7,
51:24.
optional
16:15.
options 55:6,
79:2,
83:21.
Order 3:24,
7:23, 30:22,
40:5, 48:25,
80:25, 81:6,
81:11.
ordered 16:19,
17:20, 70:25,
78:20, 84:24,
85:2.
ordering
78:22.
organization
26:18,
80:16.
organizations
26:17, 29:25,
30:1.
Ortiz 36:11.
others 4:24,
39:10, 61:25,
64:23, 67:9,
70:8.
otherwise 30:3,
42:11,
77:2.
ought 62:6.
outcome 6:19,
25:9, 25:13,
84:1.
outlet 48:11.
outrageous
44:16,
44:19.
outright
66:17.
outside 6:15,
14:7.
outweighed
61:19, 65:20,
76:2.
overseas
75:11.

overwhelming
66:3.
own 21:6, 27:6,
39:10, 57:8,
60:2, 64:15,
77:19.

.

.
< P >.
p.m. 85:9.
packed 3:9.
page 60:5.
pages 79:2.
paid 56:1,
80:23.
paper 7:22.
papers 4:18,
8:23, 40:24,
43:18.
paragraph
9:11.
parallels
73:18.
paraphrase
39:4,
68:16.
parents 38:22,
62:14.
parlance
28:14.
Part 6:23,
9:12, 30:11,
33:17, 48:25,
56:15, 57:5,
72:8, 79:1,
81:2, 82:9,
82:12, 82:21,
83:9.
particular
4:20, 9:11,
38:9,
58:15.
particularly
42:17.
parties 2:4,
5:20, 7:14,
7:17, 10:14,
18:9, 18:15,
18:18, 19:3,
75:11.

Parting
68:24.
partisan 40:15,
44:13,
54:23.
partner 38:20,
38:21, 43:17,
61:25,
83:24.
parts 38:7,
69:1.
pass 20:4.
passage
69:19.
passes 69:17.
passion 31:14,
49:4.
past 58:21,
75:6,
76:11.
Patel 75:12,
75:14.
patently
60:14.
pay 55:19,
78:20,
80:13.
payable
80:19.
payer 60:15.
paying 52:2.
payments
30:23.
peaceful
58:13.
penal 16:5.
penalty 19:14,
67:16, 70:4,
70:21.
people 6:11,
39:22, 41:18,
44:25, 45:17,
48:16, 50:18,
51:23, 52:17,
57:22, 63:13,
65:7, 67:25,
68:9, 68:11,
69:15, 70:10,
77:2, 78:4,
79:25.

Pepper 6:1.
per 17:14,
35:6, 35:11,
35:22.
percent 36:24,
56:2.
perfect 63:8.
perhaps 70:14,
78:5.
period 56:2.
permission
79:18,
83:6.
permit 64:23.
permitted
83:1.
person 3:14,
3:18, 59:12,
60:6, 62:6.
personal 12:21,
13:15, 13:22,
27:6, 30:6,
32:21, 41:9,
41:11, 43:17,
50:23, 58:7,
59:10, 60:1,
60:2, 65:13,
75:9, 77:9.
personally
51:14, 60:4,
60:17.
perspective
45:9.
persuade
67:18.
persuasive
48:20.
phenomenal
38:8.
philosophical
70:14.
philosophy
54:22, 66:12,
66:19,
66:25.
phone 12:22.
physical
58:24.
physics 42:7.
pick 70:13.

pick-your-poison 54:24.
piece 56:14, 68:22.
place 40:11, 52:17, 58:9, 69:12, 69:22.
Plaintiff 1:7.
planned 31:16, 77:6.
planning 29:19, 31:10, 76:18.
Plato 66:24, 67:3, 67:16.
plausible 68:17.
plea 4:16, 7:4, 18:22, 19:1, 19:3, 21:12, 26:15, 32:19, 32:20, 33:25, 34:24, 35:2, 39:3, 48:4, 75:20, 82:18, 82:21, 82:22, 83:1, 84:7.
plead 11:8.
pleading 33:2, 35:23.
Please 2:4, 9:9, 18:22, 33:21, 78:7.
pled 3:1, 19:10, 35:13, 46:11, 46:15, 47:3, 75:7.
plotted 29:20.
plus 70:22.
point 4:3, 18:9, 18:17, 23:18, 23:25, 30:9, 30:10, 37:8, 40:25, 41:12, 42:20,

43:22, 45:8, 46:13, 46:22, 52:24, 55:18, 56:7, 56:16, 63:6, 68:5, 70:6, 70:12, 73:12, 74:8, 74:20, 77:1.
pointed 42:1, 47:25.
pointing 38:5.
points 28:16, 36:24.
policy 53:17, 56:11, 59:13, 69:16.
political 26:8, 27:6, 31:19, 33:10, 33:12, 33:13, 33:25, 40:13, 40:15, 40:16, 44:13, 54:23, 58:1, 64:25, 65:6, 65:11, 65:13, 66:10, 77:4.
politically-minded 59:2.
politics 66:9.
poor 14:11, 14:15, 14:16.
popped 31:15.
pose 65:16, 76:14, 79:9.
posed 66:21, 76:14.
position 10:10, 14:14, 30:5, 32:21, 35:13, 35:19, 48:10, 49:15, 49:16, 63:13.
possess 79:7.
possibility

9:15, 35:15.
possible 19:7, 27:16, 65:9.
possibly 3:11, 22:20, 24:11, 24:12.
post-booker 47:11.
potential 20:2, 43:6, 44:9, 52:9.
power 41:23, 58:13, 65:6, 65:8, 68:10.
precedent 36:5, 37:14, 37:19, 39:13, 41:3, 51:2, 59:18, 66:12, 66:19.
precisely 72:11.
predicated 60:13.
prejudices 6:3.
Preliminary 80:25.
preparation 4:20, 6:4.
prepared 7:15, 7:20, 19:8, 21:13, 23:24, 24:1, 35:16.
presence 62:23.
Present 1:39, 8:11, 8:13, 71:24.
presented 54:24.
presentence 7:1, 8:2, 8:3, 8:8, 8:23, 9:2, 9:5, 9:23,

9:25, 10:2, 11:5, 12:5, 12:12, 17:18, 18:16, 79:2, 81:3, 81:7, 82:11.
presents 72:7.
preserved 5:23.
presidency 41:21, 59:1.
President 4:6, 5:6, 9:16, 34:6, 39:16, 39:19, 39:23, 39:24, 39:25, 44:23, 45:2, 45:3, 47:15, 48:9, 50:14, 51:24, 54:6, 57:4, 57:18, 57:20, 57:21, 57:25, 58:11, 64:20, 72:9, 73:10, 77:20, 78:3, 78:11.
press 54:20, 56:16, 66:2, 72:10.
pressure 74:7, 74:13.
presumptively 36:10, 36:16.
presupposes 68:12.
pretentious 67:3, 67:4.
pretty 22:1, 50:6.
prevent 61:17.
preventing 11:17.
prevents 75:25.
pride 63:3.

principle
68:18.
Prior 11:8,
11:21,
15:3.
Prison 19:15,
42:22, 42:24,
43:8, 67:15,
69:1, 72:1,
75:12, 76:21,
81:24, 82:13,
83:16.
privacy 13:19,
14:2, 14:10,
14:18, 52:16,
57:9, 63:12,
77:17.
private 12:25,
13:22, 26:22,
27:5, 28:25,
30:20, 32:24,
57:3.
privately
60:3.
privilege
3:16.
privileged
27:5.
probably 49:17,
50:17,
51:5.
probationary
30:16, 71:7,
71:25,
73:13.
problem 39:14,
67:11.
Procedure
80:24.
procedures
10:12,
45:24.
proceed 20:1,
21:1,
38:18.
Proceedings
1:49, 3:5,
85:9,
85:13.
process 26:8,

46:1, 46:5,
46:6, 51:5.
processes
63:7.
produce
56:24.
produced 1:49,
56:25.
product
21:12.
productive
83:22.
profession
79:16.
professional
26:1, 42:4.
proffers 11:10,
11:18, 28:4,
28:6,
61:14.
profoundly
13:22.
Program
82:13.
Project 9:15,
34:6,
49:17.
promote 53:12,
53:16, 64:9,
77:24.
proof 34:1.
propel 83:19.
proper 36:1,
48:15,
48:18.
properly 6:6,
52:4.
property 14:6,
22:13,
22:15.
proposal
81:13.
propose
81:14.
proposition
67:21.
Propublica
34:8, 34:17,
72:16,
72:20.

proscribe
16:3.
proscribes
46:12.
prosecuting
28:1, 34:2.
prosecution
10:18, 75:16,
75:22.
prosecutors
22:1,
32:18.
protect 26:25,
53:15, 64:2,
65:15,
77:25.
protected
12:25.
protection
14:12.
provable
21:18.
proves 56:16.
provide 4:13,
9:18, 26:21,
53:13, 53:24,
64:9, 72:10,
74:7, 75:22,
76:2, 78:2,
80:8, 82:2,
82:4,
84:11.
provided 10:11,
11:12, 15:20,
27:18, 30:7,
62:22, 72:15,
72:19.
provides
15:11.
providing
11:18,
62:22.
provisions
78:9.
PSR 17:4,
27:17,
73:4.
Public 1:26,
10:13, 11:11,
21:8, 21:10,

27:4, 44:11,
44:15, 48:18,
49:1, 51:22,
53:15, 55:13,
55:16, 55:21,
56:15, 61:11,
61:12, 63:1,
63:3, 65:15,
66:3, 69:3,
70:9, 77:25,
84:4,
84:12.
publications
73:2.
publicity
44:4.
publicized
44:8.
publicly 55:20,
56:3.
publish 73:2.
published
26:16, 28:23,
29:1, 60:22,
61:6, 61:9.
publishing
14:3.
Pugh 36:10.
pulled 21:6.
punish 5:8,
65:12,
69:23.
punished 33:3,
46:25,
70:16.
punishment
40:4, 53:13,
64:10, 64:22,
78:2.
purported
64:25.
purpose 5:9,
10:1.
purposes 29:4,
33:11, 33:12,
53:9, 53:11,
53:18, 64:10,
65:14,
65:21.
Pursuant 12:17,

17:19, 32:7,
78:8, 80:2,
80:3, 80:24,
82:10,
82:24.
pursuit 63:7.
pushed 56:15.
put 34:7,
34:20, 49:16,
51:7, 60:8,
68:7, 72:6,
76:3,
81:12.
puts 34:9,
65:13.
putting 50:9,
74:25.
.
.
< Q >.
quantified
60:20.
quantify
60:11.
quell 68:4.
question 7:16,
7:18, 19:22,
23:23, 24:10,
24:23, 35:6,
35:22, 42:25,
54:24, 63:15,
66:20, 66:23,
68:22.
questioned
49:4.
questioning
25:20.
questions
22:25.
quick 67:2.
Quickly 49:20,
68:25.
quite 3:4,
3:22, 6:12,
39:15, 68:1,
76:8.
quoting 11:6.
.
.
< R >.

rabid 70:1.
raid 34:7,
34:8, 34:12,
58:10.
raising 45:9.
rally 32:9,
32:10.
range 10:3,
12:13, 12:15,
13:11, 14:25,
15:2, 15:4,
16:3, 16:9,
16:13, 17:5,
17:7, 17:9,
18:10, 53:5,
57:12, 64:13,
70:18, 70:22,
70:23, 70:24,
71:2, 71:4,
71:11, 73:23,
74:22,
75:18.
rate 55:19,
55:24,
56:1.
rather 31:6.
rational
77:2.
reach 20:4,
54:12.
reached 18:22,
18:23, 19:1,
19:3, 23:4,
23:6, 23:9,
23:13, 48:13,
48:14.
reacted
76:24.
read 3:12,
3:15, 5:14,
9:2, 40:14,
42:12, 43:18,
48:5.
readily 21:18,
49:9,
49:11.
reading 7:8,
7:22.
ready 65:12.
real 61:2.

realize 4:13,
49:21,
63:19.
realized 48:24,
50:1.
really 22:2.
realm 74:24.
reapply 9:14.
rearrange
59:25.
reason 25:19,
45:17, 46:20,
63:15,
84:6.
Reasonable
36:11, 36:16,
37:20, 37:21,
69:15, 80:4,
80:7.
reasonableness
35:7.
reasoned
84:11.
reasoning
76:9.
reasons 3:25,
9:14, 13:14,
31:18, 31:19,
46:3, 74:18,
78:13.
Rebellion
68:3.
rebuild
52:19.
recall 48:12.
recalled
6:12.
receive
74:23.
received 5:12,
7:1, 15:12,
17:21, 17:25,
51:20, 58:16,
59:22, 64:1,
73:13, 75:11,
75:12,
84:6.
recent 6:19.
recess 54:19.
recidivism

43:20.
recitation
9:23.
recognize
24:15, 31:25,
38:15,
38:18.
recognized
40:8, 40:9,
40:23.
recognizes
56:22.
recognizing
38:11.
recommend 6:19,
81:22.
recommendation
7:2, 8:4,
18:12, 18:13,
25:11, 43:24,
82:7, 82:10,
82:11,
82:12.
recommended
18:10,
79:1.
record 2:5,
6:6, 9:10,
46:18, 46:23,
71:7, 84:20,
85:6,
85:13.
recorded
1:49.
records 12:22,
41:8, 48:11,
53:23, 66:22,
74:5.
reducing
19:18.
referenced
36:8.
referencing
47:5.
referral
82:12.
reflect 6:7,
53:12, 57:13,
64:7,
77:24.

Reflected 52:22, 67:16, 67:22.
Reform 78:8.
regard 30:10, 52:23.
regarding 9:23, 75:5.
regardless 54:14.
regret 44:20.
regular 64:1.
rehabilitate 65:17.
rehabilitation 53:16.
reinforce 31:6.
reiterate 62:4.
reject 34:24, 35:1.
related 10:20.
relation 67:12.
relationship 62:24.
release 15:7, 15:19, 16:11, 16:12, 16:13, 16:15, 16:16, 16:20, 17:17, 18:13, 55:12, 55:14, 70:9, 70:22, 70:23, 71:1, 71:14, 78:16, 78:18, 80:10, 80:18, 81:3, 82:1.
released 32:22, 41:19, 46:7, 55:15, 55:23.
relevant 10:21, 53:7, 65:19, 73:21.
relocated 62:9.
relocating

62:14.
remaining 61:21.
remediate 27:25.
remind 32:8.
reminded 6:11.
reminding 57:19.
remorse 19:17, 47:24, 50:7, 50:8, 50:10, 50:11, 63:22.
remorseful 63:10.
remotely 62:11, 62:15.
removed 72:25.
removes 15:15.
repeal 69:21.
repeat 25:23.
repeatedly 4:24, 26:3, 30:5, 75:3.
report 7:1, 8:3, 8:8, 8:23, 9:2, 9:5, 9:11, 9:23, 9:25, 10:2, 11:5, 12:5, 12:13, 17:18, 18:16, 43:3, 44:12, 79:2, 81:4, 81:7, 82:11.
Reported 1:41.
Reporter 1:42, 48:17, 48:19, 74:12, 85:17.
reporters 48:13, 48:14, 57:6, 72:12.

reporting 72:13.
reports 73:14, 73:20, 73:25.
Representatives 5:14.
representing 22:17, 50:7.
Republican 5:13, 33:12, 58:13, 58:15.
reputational 29:5, 60:9, 60:19, 61:3.
reputations 26:6.
request 30:11, 37:13, 44:1, 81:22, 83:6.
requested 75:17, 80:9, 81:20.
requesting 85:4.
requests 17:21, 18:1.
require 4:1, 59:6, 79:17.
required 3:25, 16:16, 16:17, 54:8.
requires 16:1, 40:4.
research 23:16.
researcher 84:10.
researching 31:11.
resemblance 36:9.
reshape 26:7.
residence 81:6, 81:24,

82:1.
resolution 19:3, 23:6, 51:9.
respect 10:18, 16:11, 16:23, 53:13, 64:9, 71:8, 77:25.
respectfully 47:7.
responded 69:2.
response 7:12, 35:21, 67:13.
responses 30:16.
responsibilities 28:3.
responsibility 5:3, 11:2, 11:14, 19:5, 19:16, 35:24, 40:9, 61:15, 69:6.
responsible 4:22, 51:20.
responsive 19:22, 22:24.
rest 44:8.
restitution 17:20, 17:21, 17:22, 18:1, 53:24, 78:22, 79:11, 79:13, 84:24, 85:2, 85:4.
restore 52:21.
restricted 79:17.
restrictions 79:15.
result 19:2, 19:4, 31:22, 32:3, 57:15, 58:24, 60:16,

63:14, 64:6,
64:22, 70:7,
84:3.
resulted 13:18,
57:15,
71:24.
resulting 16:9,
60:24,
73:3.
return 3:2,
12:22, 13:4,
13:16, 26:4,
29:9, 30:20,
30:22, 51:21,
54:17, 59:19,
61:7, 72:14,
81:7.
returning
65:5.
returns 3:2,
22:6, 23:20,
26:4, 28:20,
28:21, 29:6,
29:9, 34:9,
34:21, 48:24,
49:1, 51:24,
55:3, 55:13,
55:16, 55:17,
56:16, 56:21,
57:7, 57:8,
66:2, 70:9,
70:20, 72:9,
72:13, 72:14,
72:19, 72:23,
73:15.
revealed
18:15.
Revenue
25:18.
reviewed 6:25,
7:1, 7:19,
49:19.
rewatched
6:13.
rich 14:15,
33:11.
rights 14:9,
43:15,
82:23.
riot 76:19.

rioters 67:25,
68:5.
risk 43:20,
65:17, 74:25,
79:9.
risked 12:24,
13:17, 23:21,
77:8.
Roger 6:19.
role 10:8.
roll 27:13.
rolled 23:21.
Roman 52:21.
Roosevelt
57:18.
rooted 47:13.
rooting
83:25.
round 58:17.
RPR 1:41,
85:11.
ruin 50:2.
Rules 80:24.
rulings 41:6.
.
.
< S >.
S. 1:25, 1:39,
5:13, 6:1,
6:2, 35:15,
43:24, 57:16,
58:11, 73:17,
78:3, 80:12,
80:20, 81:5,
82:17.
sacredly
68:10.
sad 42:17,
44:12.
safety 60:25.
salient
66:20.
sat 4:18, 4:19,
11:10, 49:20,
61:14.
satisfied 8:16,
15:5, 15:18,
15:21.
Saturday 7:12,
7:14.

saying 3:21,
41:20,
49:23.
says 9:12,
46:16.
scale 41:14,
57:14,
59:16.
scenarios
55:22.
scheme 54:6,
57:5, 64:12,
76:5, 77:7,
77:16.
Schertler
1:33.
scope 5:24,
59:16,
61:9.
Scott 32:13,
38:15, 51:18,
53:6.
SCP 81:23.
se 35:7, 35:11,
35:22.
seal 7:7,
82:5.
search 44:6,
79:22, 79:24,
80:3, 80:6.
searches
80:2.
Sears 1:33.
season 41:22,
41:24, 42:3,
57:2.
seat 3:10,
4:19, 42:2.
seated 78:23.
Second 11:1,
29:18, 56:19,
74:6.
Secretaries
58:18.
secretly
30:5.
Section 1:26,
3:3, 10:15,
10:25, 11:4,
11:11, 13:3,

50:17, 71:22,
72:1,
77:21.
secure 26:25.
Security 10:12,
13:23,
50:21.
seeing 49:13,
63:20.
seek 29:24,
53:1, 60:7,
71:7,
75:21.
seeking 25:9,
48:2,
77:14.
seeks 12:17.
seems 40:22.
segregated
69:1.
segregationist
70:2.
self-serving
72:3.
selfish
63:18.
selfless
62:17.
sell 75:10.
Senator 32:13,
33:19, 38:15,
51:18,
53:6.
SENATOR SCOTT
32:14, 33:23,
34:14,
34:17.
send 27:8,
27:11, 58:17,
58:20.
sending 65:9.
sense 24:6,
33:16, 34:3,
66:3,
69:25.
sensitive
14:13, 60:21,
72:25,
75:8.
sent 42:3,

68:4.
sentenced 36:13, 36:17, 36:20, 74:1, 76:11, 76:16, 77:5.
sentences 30:16, 31:4, 31:5, 53:20, 70:17, 70:19, 71:16, 71:25, 72:1, 76:6, 84:14.
SENTENCING HEARING 1:16.
sentencings 3:17.
separate 22:8.
separately 48:21.
series 64:16, 77:18.
serious 26:13, 27:7, 31:21, 37:1, 41:14, 41:19, 43:16, 52:12, 61:1, 66:23.
seriousness 30:14, 41:16, 41:18, 47:9, 53:12, 57:13, 64:8, 77:24.
serve 83:14, 83:22.
Service 16:19, 25:18, 42:12, 43:21, 63:1, 63:4, 70:25, 78:17, 80:15, 80:16.
servile 57:21.
serving 51:22.
set 3:25, 8:7, 16:8, 53:7.

sets 17:3, 71:10.
setting 29:14, 46:15.
several 38:20, 49:14, 62:8, 64:2, 74:2, 74:15.
severe 31:22.
severity 40:7.
shall 16:25, 17:15, 17:20, 47:13, 71:12, 78:16, 78:24, 79:14, 80:21, 81:1, 81:3, 81:7.
share 80:11.
shared 11:16, 11:19, 61:16.
sheer 28:17.
short 7:18, 75:23.
shorthand 1:49.
shot 6:15.
show 61:24, 67:7.
shown 19:17.
side 6:10.
signatories 5:15.
signed 7:4, 9:15, 59:23, 75:19.
significant 27:3, 31:7, 36:6, 36:7, 52:7, 63:25, 73:17.
significantly 65:20, 74:22.
similar 5:19, 31:18, 37:2, 53:23, 68:21.
similarly

73:6.
simply 39:11, 59:18.
sincere 51:22.
sincerely 66:15.
sincerity 83:24.
single 18:24, 31:23, 33:2, 48:4, 50:24, 56:24.
Sir 2:8, 23:25, 32:13, 78:7, 78:23, 82:16.
sister 62:8.
sit 28:24, 41:23, 68:2.
sitting 4:6, 4:19, 5:6, 39:16, 39:23, 39:24, 41:5, 42:2, 44:23, 45:2, 45:3, 45:10, 47:15, 50:13, 51:24, 54:6, 57:4, 72:9, 73:9, 77:19, 78:11.
situated 48:22, 73:6.
situation 81:11.
situations 30:17.
Six 7:7, 37:6, 59:22, 74:1, 76:16, 76:17.
skills 52:15, 63:11.
skip 33:1.
small 30:19, 62:20.
smooth 58:2.
smoothly

58:8.
snap 64:16.
so-called 70:7.
Social 13:23, 56:24.
societal 43:15.
society 4:3, 39:5, 59:11, 67:18, 68:15, 70:13, 77:2.
Socrates 67:15, 67:17.
software 79:20.
solace 4:14.
solely 54:13.
somebody 33:25, 55:8.
somehow 4:3, 58:9.
Someone 3:24, 4:2, 4:4, 4:22, 4:23, 4:24, 21:5, 22:12, 22:18, 31:15, 34:12, 51:5, 51:6.
sometimes 49:22.
somewhere 69:9.
son 61:24.
sophisticated 31:9, 64:1, 72:21.
Sorry 2:14, 2:24, 3:10, 17:11, 22:17, 23:8, 36:14, 43:13, 45:5, 83:2.
sought 9:12, 26:7, 64:19, 72:8, 75:15.
sound 56:7, 69:16.

sounds 39:6.
source 6:1.
southern 67:6.
space 25:6, 25:12, 31:22, 31:24.
spare 4:10.
sparked 65:25.
speaker 58:15.
speaks 62:19.
special 17:14, 78:21, 79:14.
specific 24:4, 37:1.
Specifically 11:5, 14:5, 73:24.
speeches 63:4.
spend 81:15.
spending 3:22.
spent 38:3, 48:3, 62:21, 66:11, 66:18.
spirit 38:25.
splashed 60:5.
spouses 58:14.
spread 29:25.
spreadsheets 63:7.
Spring 66:1.
spur 49:22.
square 62:1.
St. 1:27, 62:10, 62:11, 81:24.
staff 32:18.
stand 57:20, 78:7.
standards 45:23.
standing

25:8.
stands 26:12, 65:12.
stark 4:9.
start 3:4, 8:2, 18:21, 25:14, 55:20.
starts 6:14, 66:23.
State 55:9, 58:17, 58:18, 67:12, 79:6.
stated 9:25, 39:4, 57:18, 70:18, 78:13.
statement 7:4, 11:6, 13:20, 33:7, 51:15.
statements 7:7, 27:17, 53:5, 53:17, 59:22.
statistics 56:3.
status 43:16.
statute 11:9, 16:18, 17:3, 36:4, 36:13, 46:11, 47:3, 47:12, 71:10, 73:21, 79:13, 83:1.
statutes 16:5.
statutory 16:7, 17:7, 18:4, 19:14, 25:5, 25:12, 35:23, 36:15, 36:18, 37:5, 37:14, 37:17, 50:25, 70:21, 78:14, 78:19.
Ste 1:28.
steadfast 65:12.
steal 22:18,

49:19, 72:9.
stealing 14:2, 26:3.
steals 22:13.
stenographic 85:12.
step 12:16.
stipulated 10:14.
stole 21:24, 26:20, 32:21, 41:8, 48:10.
storage 79:24.
stream 44:14.
Street 1:34.
strike 7:24.
strongest 65:9, 65:10.
strongly 6:8, 76:25.
struggled 4:15, 62:18.
student 66:9.
studied 4:14.
studies 44:2.
study 55:21, 55:23, 55:25, 56:6.
stunning 64:18.
subject 80:2.
submit 39:8, 40:12, 42:11, 47:6, 63:21, 79:22.
submitted 7:3, 44:2, 61:24.
subset 45:17.
substance 79:7, 79:9.
substantial 12:23, 12:24, 13:4, 13:16, 13:18, 27:19, 31:21, 56:10, 58:10, 59:6,

75:16, 75:22.
substantially 35:18.
substitute 15:9.
subverting 26:10.
successful 26:1.
suddenly 60:5.
suffer 43:16.
suffered 60:9, 74:14.
suffers 74:17.
suffice 55:13.
sufficient 53:8, 77:23.
suggest 23:25, 40:3.
suggested 43:24, 66:18.
Suite 1:35.
summa 42:5.
summarize 70:19.
Sunday 7:12.
Supervised 15:7, 15:19, 16:11, 16:12, 16:13, 16:15, 16:20, 17:17, 18:13, 70:22, 70:23, 71:1, 71:14, 78:16, 78:18, 80:18, 84:25.
supervision 78:24, 79:4, 80:5.
supplemental 7:11, 75:4.
support 5:3, 7:7, 30:23, 37:5, 37:15,

38:19, 61:24, 62:12, 63:25.
supported 36:4.
supporting 39:1.
supports 57:11, 71:20.
Supreme 5:21, 36:5, 36:9.
surely 54:22.
surprise 68:1.
surrender 81:12, 81:13.
survey 56:4.
susceptible 31:13.
suspended 79:8.
suspicion 80:4.
suspicious 73:14, 73:24.
sweetheart 33:24.
sympathetic 3:9, 81:10.
system 33:18, 40:2, 41:7, 42:16, 42:18, 45:16, 45:21, 45:22, 45:23, 47:6, 50:9, 51:3, 52:3, 52:21, 59:14, 67:23.
systematically 52:16, 63:12.
systems 29:23.
.
.
< T >.
T. 1:41, 85:16.

tab 50:17.
table 2:13, 4:19, 15:4, 15:17, 71:4.
talked 34:2, 48:22.
talks 43:5.
target 4:6, 39:23, 39:25, 44:23, 44:24, 45:3, 59:4, 59:5.
targeted 14:9, 39:15, 41:5, 44:24, 45:2, 45:16, 48:8, 59:3, 77:16.
targeting 5:6, 39:24, 40:1, 41:2, 47:15, 54:6, 57:4, 65:7, 77:19, 78:11.
task 38:14, 63:2, 63:14.
taxes 56:15.
taxpayer 9:16, 10:11, 10:12, 22:19, 26:2, 29:24, 30:14, 50:10, 73:15.
taxpayers 50:14, 52:1, 60:9, 60:11, 64:2, 64:6, 72:4, 72:19, 73:9, 77:17.
Taylor 68:23.
team 84:2, 84:3, 84:16.
technical 11:18.
temporarily 62:14.

ten 12:14.
tendency 68:19.
term 15:5, 15:7, 15:18, 15:19, 15:20, 16:12, 16:13, 16:15, 16:16, 16:25, 46:4, 65:4, 78:14, 78:17.
termination 81:9.
terms 25:11, 40:15, 41:13, 42:4, 43:1, 44:4, 46:8, 47:5, 49:8, 49:11, 76:13.
Terrific 8:19, 35:8.
testing 79:8.
thankful 38:9.
thankfully 3:25.
thanking 5:16.
THE CLERK 2:2, 2:20.
THE DEFENDANT 8:17, 8:20, 8:25, 51:12, 51:17.
theft 22:5, 22:8, 22:15, 35:15, 35:19, 75:8.
thefts 11:20, 29:20.
themselves 2:5.
Theodore 57:18.
They'll 44:12.
thinking 31:11, 44:9, 48:4, 78:6.

Third 9:13, 36:19, 74:14, 75:11.
thorough 4:8.
though 22:4, 23:3, 28:1, 40:12, 76:21.
thoughtfulness 62:2.
thousand 4:7, 13:17, 21:21, 25:8, 56:9, 59:20, 77:9.
thousands 22:18, 26:4, 30:6, 32:25, 33:3, 33:4, 34:3, 34:19, 41:18, 50:14, 52:16, 54:7, 57:9, 59:10, 61:7, 63:12, 66:5, 70:8, 70:10, 72:14, 73:9, 73:15, 77:17, 77:20, 78:12.
threat 9:17, 58:16, 76:14, 76:24.
threaten 58:11, 58:13.
threatened 60:17.
threatening 14:6, 59:3.
threats 58:17, 61:2.
three 7:16, 15:8, 16:12, 18:12, 28:16, 64:17, 70:24, 77:18, 80:18.
three-year 57:5.
throw 45:10, 45:14,

45:23.
throwing
  45:25.
TIGTA 2:13,
  11:11,
  11:19.
tip 29:6.
tirelessly
  59:11.
Title 3:3.
to-date
  77:10.
tolerated
  58:1.
tomorrow
  29:1.
tons 29:7,
  42:13.
took 4:16, 5:3,
  14:14, 27:22,
  36:21, 38:17,
  50:22, 60:25,
  72:13.
total 11:22,
  78:17.
totaling
  78:21.
totally
  48:21.
touches 70:5.
tough 84:14.
tracks 26:9.
trade 64:24.
traditional
  5:23.
training 64:1,
  64:22.
transactions
  73:20.
TRANSCRIPT
  1:16, 1:49,
  85:12.
transcription
  1:50.
transfer
  58:13.
transparency
  4:2, 52:6.
travel 38:22.
treason 68:5.

treasonable
  57:22.
treasury
  73:18.
treated
  14:17.
Treatment 81:7,
  81:9.
tremendous
  84:4.
trespassed
  14:5.
trial 20:1,
  20:14, 27:13,
  46:1,
  46:15.
tried 26:9,
  56:18,
  68:4.
troubled 40:25,
  49:12.
troubling
  47:7.
True 39:9,
  72:5, 75:1.
Trump 9:17,
  33:9, 34:9,
  39:20, 48:9,
  55:3, 55:12,
  56:21, 59:4,
  64:20, 66:1,
  72:21.
trust 10:10,
  26:3, 27:2,
  30:5, 32:21,
  37:19, 48:10,
  51:9, 52:14,
  52:20.
truth 33:23.
trying 20:10,
  20:13, 22:22,
  41:1, 48:15,
  48:17, 67:3,
  67:4,
  67:24.
Tucker 6:2.
turn 26:23,
  54:1.
turned 74:7,
  74:12.

Turning 6:25,
  12:4.
twice 65:7.
Two 3:19, 6:10,
  10:22, 11:3,
  11:10, 15:6,
  25:25, 28:4,
  28:6, 29:21,
  30:1, 30:16,
  47:19, 58:23,
  61:14, 64:17,
  65:14, 75:5,
  75:6, 75:13,
  76:11, 76:22,
  77:16.
two- 13:1,
  37:17,
  71:21.
two-level 10:8,
  10:14,
  10:25.
type 29:10,
  40:11, 44:3,
  64:23,
  72:22.
typically 3:5,
  19:17.
.
.
< U >.
Ultimately
  20:9, 21:17,
  23:4, 23:17,
  24:8, 25:9,
  30:17.
unable 38:22,
  83:5.
unauthorized
  3:1, 16:6,
  41:4, 41:5,
  41:8, 70:20,
  72:23.
unaware
  74:16.
unbreakable
  59:2.
uncertain
  76:13.
undercover
  50:22.

undermine
  31:7.
undermined
  27:1, 42:18,
  52:17.
understand
  20:12, 20:25,
  22:23, 24:7,
  28:10, 31:20,
  34:18, 45:20,
  46:12, 52:5,
  57:6, 61:13,
  62:7, 65:14,
  72:13, 76:7,
  76:9.
understanding
  17:22, 75:20,
  81:25.
Understood
  28:12.
undertake
  31:9.
undeserved
  67:16.
undoubtedly
  84:11.
unfair 7:22.
unfavorable
  41:6.
Unfortunately
  3:19, 33:8,
  49:16,
  84:4.
unglamorous
  63:7.
uniformly
  3:13.
uniquely
  31:12.
United 1:1,
  1:5, 1:18,
  1:43, 2:2,
  2:7, 2:12,
  3:3, 4:6,
  5:4, 5:7,
  33:5, 39:12,
  39:16, 39:23,
  39:24, 40:1,
  44:23, 45:3,
  45:4, 47:16,

50:18, 54:7, 57:5, 72:10, 73:10, 73:12, 77:20, 78:11.

unjust 67:14, 68:21, 69:4, 69:7, 69:11, 69:14, 70:3, 70:15.

unlawful 29:4, 58:7, 59:17.

unlawfully 60:13, 60:22, 61:7, 73:25, 74:4, 79:7.

unless 47:13.

unlike 74:3, 75:14.

unlimited 5:24.

unmasked 10:12, 26:2.

unparalleled 25:17, 59:17.

unpatriotic 57:21.

unprecedented 29:13, 45:15.

unreasonable 35:22, 35:25, 37:8.

unremarkable 6:7.

unscrupulous 14:4, 60:6.

unsuccessful 26:11.

unsuccessfully 41:1.

until 54:16, 68:9, 80:22.

unusual 29:16, 72:2, 72:7, 73:8.

unwarranted

53:22, 71:18, 75:24.

unwavering 3:15.

unwelcome 60:24.

unwillingness 19:5.

unwound 6:13.

upended 45:18.

upper 37:7.

upstanding 3:18.

upward 12:17, 12:19, 13:2, 13:13, 14:23, 15:3, 15:15, 17:6, 24:20, 24:22, 24:23, 25:2, 54:3, 54:9, 54:10, 54:14, 57:11, 59:6, 63:25, 65:18, 71:21, 75:21, 75:25, 77:13, 78:13, 78:14.

upwards 24:17.

urging 39:11.

USB 28:5.

useful 49:22.

using 10:4.

.

.

< V >.

v. 6:1, 6:2, 57:16, 73:17.

vacuum 70:6.

variance 24:19, 24:20, 24:22, 25:2, 29:14, 30:10, 36:3, 54:9, 54:13, 57:11, 59:7, 63:25, 65:18, 75:25, 77:13, 78:14.

variances 11:22.

variety 16:2.

various 55:22.

vary 24:17, 24:23.

verge 32:9.

Veritas 34:6.

version 83:20.

versus 2:3, 20:14, 43:25, 70:9, 73:13.

via 5:12, 5:15, 5:17.

viable 23:17.

Vice 58:11.

victim 7:7, 8:13, 13:20, 26:6, 29:2, 29:3, 33:6, 33:7, 33:16, 59:22, 60:16, 72:24.

victims 5:20, 14:10, 14:20, 26:19, 28:23, 32:7, 33:8, 33:15, 38:16, 46:5, 50:8, 53:24, 57:14, 59:23, 60:8, 61:1, 61:5, 85:3.

video 38:24.

view 64:23, 65:16, 65:19, 84:17.

viewed 9:17.

views 41:13, 67:22.

violate 52:16, 63:12, 64:18, 69:24, 74:12, 77:17.

violated 14:2, 14:9, 32:24.

violating 57:9.

violation 3:2, 33:3, 33:4, 56:9, 69:2, 80:4, 80:6.

violations 71:22.

volume 24:21, 28:17.

voluntarily 11:10, 61:14.

voluntary 81:11, 81:13, 81:17.

volunteer 79:15, 79:16.

volunteered 49:9, 49:11, 49:18.

vote 51:25, 55:7, 55:8, 69:18.

voted 58:14.

voting 65:11.

vs 1:8.

.

.

< W >.

W. 1:34.

wait 28:24, 37:12.

waive 82:21.

waived 82:18.

waives 82:22.

walk 46:4, 78:4.

walked 32:1.

wanted 35:12, 38:2, 38:15, 38:18, 73:2.

wants 84:25.

War 6:18, 6:21.

warn 79:25.

warranted 12:20,

17:23.
Washington
1:10, 1:29,
1:36, 1:46,
30:21, 68:2,
68:3, 68:7.
Waters 68:24.
Ways 5:14,
6:11, 6:20,
11:19, 14:18,
49:21, 53:1,
55:1, 56:8,
59:12.
wealthiest
52:2, 55:24,
55:25,
72:15.
wealthy 14:11,
14:18, 33:11,
55:19,
72:21.
weaponize
27:5.
Wednesday
76:11.
week 5:12,
6:13, 29:1,
81:15,
81:16.
weekend 7:14,
35:22, 36:8,
38:7.
weigh 65:18.
weighed
74:15.
weighing
54:8.
West 1:35,
6:12.
Whatever 5:8,
20:16, 27:9,
63:21,
68:17.
whereas 19:3.
Whether 20:1,
21:20, 21:21,
23:20, 25:7,
25:10, 31:18,
43:23, 54:14,
69:16,

77:7.
Whiskey 68:3.
White 55:22.
whole 52:1,
68:9.
wholeheartedly
59:21.
whom 28:19,
59:11.
wife 13:25,
14:7.
willfully
10:16,
64:17.
willing
81:11.
willingly
30:7.
willingness
70:3.
Wilson 1:39,
2:22, 2:24,
82:10.
Wing 6:12.
wish 3:11,
32:7, 32:11,
83:22.
Within 23:1,
25:12, 27:19,
27:20, 28:13,
28:14, 75:17,
80:14, 80:20,
82:1, 83:2,
83:3.
Without 21:11,
21:12, 24:17,
58:6, 58:7,
62:16, 64:3,
79:18,
83:7.
witnesses 8:11,
8:14.
won 55:15.
words 21:6,
24:3, 61:9.
work 21:12,
38:8, 38:10,
42:15, 43:20,
62:16, 63:1,
63:5, 64:19,

68:1, 68:22,
84:5.
worked 4:20,
42:19,
84:3.
working 57:6,
62:11,
62:15.
works 14:18.
worse 14:17.
worst 3:7,
3:10.
worth 26:14,
64:24,
84:17.
write 38:17,
72:20.
writing
63:10.
wrote 13:20,
66:8,
69:25.
.
.
< Y >.
year 16:14,
16:17, 17:1,
29:2.
Years 16:7,
16:12, 16:14,
16:24, 17:1,
18:12, 25:25,
29:21, 30:4,
42:19, 44:1,
55:17, 62:9,
62:21, 64:2,
64:17, 67:22,
68:25, 70:21,
70:24, 70:25,
71:9, 73:5,
75:13, 77:18,
80:18.
Yeoman 38:10.
Yesterday 4:17,
7:17.
yielded 25:4,
30:16.
York 56:14,
72:11,
72:19.

young 38:8.
yourself 25:23,
52:23, 66:21,
83:20,
83:21.
.
.
< Z >.
zero 6:9, 12:6,
35:19.
Zone 15:4,
15:5, 15:11,
15:16, 15:17,
71:4.