**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

RICHARD LYNN SCOTT,
Plaintiff,

v. Case No. 2:26-cv-00845-KCD-KRH

BOOZ ALLEN HAMILTON, INC., and
CHARLES EDWARD LITTLEJOHN,
Defendants.
_________________________________/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT CHARLES EDWARD LITTLEJOHN'S MOTION TO DISMISS**

Plaintiff Richard Lynn Scott respectfully submits this Response in Opposition to Defendant Charles Edward Littlejohn's ("Littlejohn") Motion to Dismiss Counts III and IV of the First Amended Complaint (the "Motion") (Doc. 54).

## INTRODUCTION

The Motion inappropriately asks the Court to resolve factual questions, draw inferences against Plaintiff, and accept Littlejohn's characterization of his criminal conduct over the well-pleaded allegations of the First Amended Complaint ("FAC").

None of Littlejohn's asserted grounds warrants dismissal. The Court may exercise specific personal jurisdiction over Littlejohn because, as alleged, his conduct in perpetrating the Breach[1] was sufficiently connected to Florida, where Plaintiff suffered the resulting injury, including in this District. Venue is also proper in this

[1] The FAC defines Littlejohn's unauthorized access, extraction, and disclosure of taxpayer information as the "Breach." (Doc. 14 ¶ 3).

District, where Plaintiff resides and suffered the privacy and emotional-distress injuries that form an essential part of his claims.

Littlejohn likewise cannot establish a statute-of-limitations bar from the face of the FAC. His argument depends on treating a November 4, 2021, *ProPublica* article as the dispositive accrual event. But the FAC does not plead that date as the date on which either claim accrued and the article does not mention Littlejohn whatsoever.

The FAC also plausibly pleads both Counts on the merits. Littlejohn cannot avoid liability for public disclosure of private facts merely because he supplied stolen taxpayer information to national media organizations and left the final act of publication to journalists. Moreover, the FAC plausibly alleges extreme and outrageous conduct based on Littlejohn's repeated exploitation of privileged access to federal databases to steal protected taxpayer information and provide it to the media. Accordingly, the Motion should be denied.

## LEGAL STANDARD

At the Rule 12(b)(6) stage, the Court evaluates the sufficiency of the pleaded allegations, not the evidence that may ultimately establish them. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts well-pleaded factual allegations as true and draws reasonable inferences in Plaintiff's favor. *Iqbal*, 556 U.S. at 678. Additionally, because the statute of limitations is an affirmative defense, dismissal at the pleading stage is appropriate "only where it is apparent from the face of the complaint that the claim is time-barred." *Wainberg v. Mellichamp*, 93 F.4th 1221, 1224 (11th Cir. 2024) (citation and internal quotation

marks omitted).

That pleading-stage limitation is particularly important here because the Motion repeatedly relies on factual assertions and materials outside the FAC. Although a court may consider an extrinsic document when the document is central to the plaintiff's claim and its authenticity is undisputed, *Johnson v. City of Atlanta*, 107 F.4th 1292, 1298–1300 (11th Cir. 2024), it may not use extrinsic material to resolve disputed facts against Plaintiff. If matters outside the pleadings are considered beyond that exception, the motion "must be treated as one for summary judgment under Rule 56," and Plaintiff must be afforded a reasonable opportunity to present pertinent material. Fed. R. Civ. P. 12(d). Accordingly, for purposes of Littlejohn's Rule 12(b)(6) arguments, his competing factual assertions may not be credited over the FAC unless the Court converts the relevant portions of the Motion into a motion for summary judgment under Rule 12(d).

## ARGUMENT

### I. THE COURT MAY EXERCISE SPECIFIC PERSONAL JURISDICTION.

Littlejohn's jurisdictional argument begins from an incorrect premise. His Motion asserts that Florida's long-arm statute extends to the full limits of due process, effectively collapsing the statutory and constitutional inquiries. (Doc. 54 at 4–5). The Eleventh Circuit, however, applies a two-step analysis: the Court first determines whether Florida's long-arm statute authorizes jurisdiction and, if so, whether exercising jurisdiction comports with the Due Process Clause. *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1222–23 (11th Cir. 2023); *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*,

358 F.3d 1312, 1319 (11th Cir. 2004). The Court can resolve a Rule 12(b)(2) motion without an evidentiary hearing, in which case Plaintiff need only make a *prima facie* showing of jurisdiction, with factual conflicts and reasonable inferences resolved in Plaintiff's favor. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).[2]

### A. Florida's Long-Arm Statute Authorizes Specific Jurisdiction.

Florida's long-arm statute authorizes specific jurisdiction over a nonresident who "[c]ommit[s] a tortious act within this state." Fla. Stat. § 48.193(1)(a)(2). Physical presence in Florida is unnecessary. *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002). Rather, the Eleventh Circuit has recognized that, under Florida law, a nonresident may commit a tortious act within Florida by committing an act outside the State that causes injury within Florida. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353 (11th Cir. 2013).

The Eleventh Circuit has applied that principle where a defendant acted outside Florida but caused injury within the State. See *Mosseri*, 736 F.3d at 1354; *Licciardello v. Lovelady*, 544 F.3d 1280, 1282–83 (11th Cir. 2008). A sister court has recently found that it had specific personal jurisdiction over an out-of-state airline for invasion of privacy claims "from Plaintiffs that do live in Florida or have Florida as their work location" because the claims "necessarily affected employees at their workplace and their home" in Florida and therefore the airline "should reasonably anticipate being

[2] As discussed *infra* Section I.C, Plaintiff submits that an evidentiary hearing is neither necessary nor warranted because Littlejohn identifies no material jurisdictional factual dispute requiring live testimony or a credibility determination.

haled into Florida court." *Est. of Caviness v. Atlas Air, Inc.*, 693 F. Supp. 3d 1271, 1281 (S.D. Fla. 2023).

Section 48.193(1)(a)(2)'s standard is satisfied here. Counts III and IV arise directly from Littlejohn's alleged intentional access and disclosure of Plaintiff's confidential tax return information. (Doc. 14 ¶¶ 103–19). Plaintiff is a Florida citizen domiciled in Naples and a duly elected United States Senator for the State of Florida. (*Id.* ¶¶ 10, 16). The FAC alleges that, as a direct result of Littlejohn's conduct, Plaintiff suffered loss of privacy and personal security, economic loss and mitigation expenses, ongoing concern over further dissemination of his financial information, and significant personal distress. (*Id.* ¶¶ 56, 110, 118–19). The FAC further expressly alleges that Plaintiff "suffered injury in this District." *Id.* ¶ 15.

The required "connexity" is likewise satisfied because the injuries alleged in Counts III and IV arise from the very access and disclosure constituting the alleged torts. *See Wendt*, 822 So. 2d at 1260. The FAC alleges that Littlejohn affirmatively provided stolen tax information to national media organizations and knew that unauthorized disclosure would expose affected individuals, including Plaintiff, to public dissemination, scrutiny, reputational harm, financial exposure, and significant personal distress. (Doc. 14 ¶¶ 50, 106, 112–16). Those allegations are sufficient at this stage to establish a tortious act causing injury in Florida under § 48.193(1)(a)(2).[3]

[3] Alternatively, if this Court determines that Littlejohn's torts were committed outside of Florida, it may nevertheless exercise specific personal jurisdiction over Littlejohn via Section 48.193(1)(a)(6)(b) for similar reasons as discussed under 48.193(1)(a)(2).

### B. Exercising Jurisdiction Over Littlejohn Comports with Due Process.

Specific jurisdiction comports with due process where: (1) the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum; (2) the defendant purposefully availed himself of the privilege of conducting activities within the forum; and (3) exercising jurisdiction comports with traditional notions of fair play and substantial justice. *SkyHop*, 58 F.4th at 1227–30. In intentional-tort cases, purposeful availment may be established under the *Calder* effects test where the tort was intentional, aimed at the forum, and caused harm the defendant should have anticipated would be suffered there. *Id.* at 1228–29; *Lovelady*, 544 F.3d at 1285–88.

The first requirement is readily satisfied. Plaintiff's claims arise directly from Littlejohn's alleged intentional access and disclosure of Plaintiff's confidential tax information. The same conduct that forms the basis of Counts III and IV forms the basis for Plaintiff's asserted jurisdiction over Littlejohn. (Doc. 14 ¶¶ 103–19).

The FAC also sufficiently alleges purposeful direction at the *prima facie* stage. It alleges that Littlejohn deliberately accessed and disclosed Plaintiff's legally protected financial information to media organizations, "executed targeted queries," and knew that unauthorized disclosure would expose affected individuals, including Plaintiff, to public dissemination, scrutiny, reputational harm, financial exposure, and significant personal distress. (*Id.* ¶¶ 106, 111–16). Throughout the relevant period, Plaintiff was domiciled in Naples and served as a United States Senator representing Florida. (*Id.* ¶¶ 10, 16). Accepting the FAC's allegations and drawing reasonable inferences in Plaintiff's favor, the alleged intentional tort concerned the confidential financial

information of a specific Florida individual and caused the very privacy and emotional injuries Littlejohn allegedly knew his disclosures would inflict.

Littlejohn attempts to avoid those allegations by characterizing Plaintiff as merely one unidentified person within a generalized dataset. He argues that he "never sought information related to Plaintiff as an individual" and relies on his criminal plea materials to emphasize that he initially obtained data through generalized search parameters. (Doc. 54 at 8–9). That characterization, however, goes beyond what the cited materials establish. The plea materials establish that Littlejohn used generalized parameters to obtain portions of a larger dataset; they do not establish that he remained unaware that Plaintiff's information was included in the data he subsequently reviewed, retained, or disclosed, much less establish that he never identified Plaintiff's information before disclosing it. The FAC, by contrast, expressly alleges that Littlejohn accessed and unlawfully disclosed Plaintiff's confidential tax return information, executed targeted queries, and knew that his disclosures would expose affected individuals, including Plaintiff, to public dissemination and resulting harm. (Doc. 14 ¶¶ 106, 112–16). Nothing in the materials Littlejohn cites conclusively controverts those allegations, and the reasonable inferences from the present record must be drawn in Plaintiff's favor at this stage. To dismiss on the basis of factual assertions that Littlejohn's own jurisdictional materials do not establish would reward argument by assertion rather than application of the governing *prima facie* standard.

Nor does *Walden v. Fiore*, 571 U.S. 277 (2014), compel dismissal. *Walden* prohibits the exercise of jurisdiction when the plaintiff's connections to the forum,

rather than the defendant's own conduct, supply the only jurisdictional link. *Id.* at 285–86. This case, as pleaded, involves more. The FAC alleges Littlejohn's intentional access and disclosure of the confidential financial information belonging to a Florida domiciliary coupled with his knowledge that the unauthorized disclosure of the information would expose affected individuals to public dissemination and resulting harm. Thus, Plaintiff does not rely merely on the location where he ultimately experienced the effects of conduct otherwise unrelated to the forum. At the *prima facie* stage, the FAC sufficiently alleges an intentional tort directed at Plaintiff and causing the contemplated injury in Plaintiff's forum. *See Lovelady,* 544 F.3d at 1287–88.

The fact that Littlejohn allegedly stole information belonging to thousands of taxpayers does not require a different conclusion. An intentional tort does not cease to be intentional as to one victim merely because the defendant committed the same or similar conduct against many others. The pertinent question at this stage is whether the FAC sufficiently alleges that Littlejohn intentionally accessed and disclosed Plaintiff's protected information under circumstances establishing the necessary connection to Florida. It does.[4]

Finally, once Plaintiff establishes the first two prongs, Littlejohn bears the burden of making a "compelling case" that exercising jurisdiction would violate

[4] In an analogous context, "[n]umerous courts have held that, in [Fair Credit Reporting Act] cases, a defendant's accessing or requesting a plaintiff's credit report is sufficient to confer personal jurisdiction over the defendant in the place where the plaintiff lives and was injured by the defendant's actions." *Forbes v. Concord Advice, LLC,* No. 8:20-cv-405-VMC-AEP, 2020 WL 7421383, at *6 (M.D. Fla. May 5, 2020).

traditional notions of fair play and substantial justice. *SkyHop*, 58 F.4th at 1230. He has not done so. Florida has a substantial interest in providing a forum for a resident allegedly injured by intentional tortious conduct, and Plaintiff has a corresponding interest in obtaining relief in the State where he resides and alleges that the injury occurred. On the present record, exercising specific personal jurisdiction over Littlejohn therefore comports with due process.

Accordingly, Littlejohn's Motion to dismiss Counts III and IV for lack of personal jurisdiction should be denied.

### C. An Evidentiary Hearing is Not Necessary or Warranted.

Littlejohn requests an evidentiary hearing but identifies no jurisdictional dispute requiring live testimony or a credibility determination. An evidentiary hearing is not required, and absent one Plaintiff need only make a *prima facie* showing of jurisdiction, with factual conflicts and reasonable inferences resolved in his favor. *Mut. Serv. Ins. Co.*, 358 F.3d at 1319 n.6; *Madara*, 916 F.2d at 1514. Because Littlejohn identifies no testimony or material factual dispute requiring a hearing, his request should be denied.

## II. VENUE IS PROPER IN THE MIDDLE DISTRICT OF FLORIDA.

Littlejohn's venue argument incorrectly postulates that only his physical location during the Breach matters for venue purposes. But under 28 U.S.C. § 1391(b)(2), venue is proper where "a substantial part of the events or omissions giving rise to the claim occurred"; the forum need not have the *most* substantial nexus. *See Person v. ACS Techs. Grp., Inc.*, No. 8:25-cv-961-TPB-AEP, 2025 WL 2106093, at *3

(M.D. Fla. July 29, 2025) (plaintiff need not select venue with the "most substantial nexus"; substantiality is qualitative rather than quantitative) (citations and internal quotation marks omitted).

Here, Plaintiff resides in Naples, Florida, within this District. (Doc. 14 ¶¶ 10, 16). The FAC expressly alleges that Plaintiff "suffered injury in this District." *Id.* ¶ 15. Those injuries include the loss of privacy and personal security and the substantial and enduring emotional harm alleged in Counts III and IV. *Id.* ¶¶ 110, 118–19.

Courts in this District have recognized that the place where a plaintiff suffers the injury caused by a defendant's conduct can constitute a substantial part of the events giving rise to a claim. *See Person*, 2025 WL 2106093, at *3; *Fentriss v. Gateway Bank FSB*, No. 8:15-cv-2675-T-23MAP, 2016 WL 4097066, at *2 (M.D. Fla. Aug. 2, 2016). *Jenkins Brick* does not compel a different result. Although it requires a "close nexus" between the events occurring in the forum and the wrong alleged, it also recognizes that § 1391(b)(2) "contemplates some cases in which venue will be proper in two or more districts." *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371–72 (11th Cir. 2003). Thus, even if some of Littlejohn's underlying conduct occurred in Maryland or the District of Columbia, venue remains proper if a substantial part of the events giving rise to Plaintiff's claims occurred here. That nexus is especially direct for Count IV because Plaintiff alleges that he suffered an essential element, severe emotional distress, in this District. Accordingly, venue is proper in this district.

Alternatively, if the Court finds venue improper, Plaintiff requests transfer rather than dismissal. *See* 28 U.S.C. § 1406(a).

## III. THE STATUTE OF LIMITATIONS DOES NOT SUPPORT DISMISSAL OF COUNTS III OR IV.

Littlejohn's statute-of-limitations argument fails because Counts III and IV are intentional torts subject to a four-year limitations period, not the two-year negligence period he invokes.

### A. Florida Applies a Four-Year Limitations Period for Intentional Torts.

The Motion initially recognizes that Florida applies a four-year statute of limitations to intentional torts. (Doc. 54 at 12–15). That is correct. Florida law provides four years for an action for "assault, battery, false arrest, malicious prosecution, malicious interference, false imprisonment, or *any other intentional tort*." Fla. Stat. § 95.11(3)(n) (emphasis added).

Littlejohn then invokes House Bill 837 and asserts that, for claims accruing after March 24, 2023, Florida reduced the limitations period for "negligence and tort actions" to two years. (Doc. 54 at 15). That is not what the statute says. Section 95.11(5)(a) provides a two-year period for "[a]n action founded on negligence." Counts III and IV are intentional torts. Indeed, Littlejohn affirmatively relies on the intentional nature of public disclosure of private facts when attacking Count III on the merits. (Doc. 54 at 16). The four-year period in § 95.11(3)(n), not the two-year negligence period, therefore governs.

This disposes of Littlejohn's fallback argument that, if his identity matters for accrual, Plaintiff had only two years after the government identified Littlejohn in September 2023. (Doc. 54 at 15–16). Under the applicable four-year period, a claim

accruing in September 2023 remained timely when Plaintiff filed suit in March 2026.

**B. Count III is Not Facially Time-Barred.**

Littlejohn contends that Count III necessarily accrued on November 4, 2021, when *ProPublica* published an article discussing Plaintiff. (Doc. 54 at 13). That date is Littlejohn's characterization of the record, not an accrual date pleaded in the FAC. Nor did the November 4 article identify Littlejohn as the source of the information; indeed, Littlejohn's name does not appear in the article.

The FAC alleges that Littlejohn disclosed taxpayer information in stages to multiple media organizations and that those disclosures "resulted in the publication of numerous articles publicly disseminating sensitive tax return information of various individuals, including Plaintiff." (Doc. 14 ¶ 50). It does not allege that November 4, 2021, was the actionable publication of the private facts forming Count III, much less establish that in a manner permitting dismissal. *See Wainberg*, 93 F.4th at 1224.

Florida's single-publication statute does not cure that defect at the pleading stage. Sections 770.05 and 770.07 do not collapse separate publications into one event. *See Swedberg v. Goldfinger's S., Inc.*, 338 So. 3d 332, 335–36 (Fla. 3d DCA 2022) (a separate and distinct decision to republish can constitute a new publication even where the information republished is identical). The FAC alleges multiple disclosures and multiple resulting publications. (Doc. 14 ¶ 50). Littlejohn therefore cannot designate one article as dispositive before the publication chronology is developed.

The contradiction within Littlejohn's own Motion illustrates the problem. To establish his limitations defense, Littlejohn treats the November 4 article as the event

that completed Plaintiff's privacy injury. (Doc. 54 at 13–14). Yet, on the merits, he insists that he did not publish Plaintiff's information, that *ProPublica* independently decided what to publish, and, most significantly, that the article disclosed none of Plaintiff's sensitive private information. (*Id.* at 17–21). If the November 4 article did not disclose the private information forming Count III, as Littlejohn argues, the Court cannot simultaneously hold as a matter of law that publication of that article necessarily completed the tort. The article's statement that Plaintiff "declined to comment" likewise does not establish that it was the first actionable publication triggering Count III's limitations period. At minimum, the FAC does not establish on its face that November 4, 2021, was the first actionable publication, precluding dismissal on limitations grounds. Instead, the FAC specifically alleges the first date to be on January 29, 2024, when Plaintiff delivered a victim-impact statement addressing the harm caused by Littlejohn's criminal conduct. (Doc. 14 ¶¶ 53).

### C. Count IV is Timely Because the FAC Does Not Allege Severe Emotional Distress in November 2021.

The limitations argument is weaker still as to Count IV. A cause of action ordinarily accrues "when the last element constituting the cause of action occurs." Fla. Stat. § 95.031(1). IIED requires resulting emotional harm. *Gallogly v. Rodriguez*, 970 So. 2d 470, 471 (Fla. 2d DCA 2007). Littlejohn therefore cannot establish accrual merely by identifying the date of a media article.

The Motion attempts to bridge that gap by asserting that Plaintiff's distress "necessarily began no later than November 4, 2021." (Doc. 54 at 14). The FAC says

no such thing and does not identify that date at all. On a Rule 12(b)(6) motion, the Court cannot infer against Plaintiff that an essential element "necessarily" occurred on a date the pleading itself does not supply.

The FAC instead alleges a concrete later manifestation of the harm caused by Littlejohn: on January 29, 2024, Plaintiff delivered a victim-impact statement at Littlejohn's sentencing addressing the harm he had already suffered as a result of Littlejohn's criminal conduct. (Doc. 14 ¶¶ 53). At this stage, the clearest alleged date by which Plaintiff's harm had manifested is therefore January 29, 2024, when Plaintiff described the harm he had already suffered from Littlejohn's breach. Count IV further alleges that Littlejohn's actions caused Plaintiff loss of personal security, fear of future misuse and dissemination of his confidential financial information, and concern that was "substantial, enduring, and not trivial or transitory." *Id.* ¶¶ 118–19.

Thus, accepting the allegations as true and drawing all reasonable inferences in Plaintiff's favor, nothing in the pleading establishes that Plaintiff suffered emotional distress more than four years before filing the present case. To the contrary, its first specifically pleaded date (January 29, 2024) tying Plaintiff to the harm caused by Littlejohn falls well within four years of the March 2026 filing.

Littlejohn's reliance on *Boyce v. Cluett*, 672 So. 2d 858 (Fla. 4th DCA 1996), does not dictate otherwise. *Boyce* applied § 95.031's last-element rule where the conduct completing the intentional tort had indisputably occurred decades earlier. *Id.* at 859. Here, the FAC does not establish when the final element of Plaintiff's IIED claim occurred. Count IV therefore is not facially time-barred.

## IV. COUNT III PLAUSIBLY ALLEGES PUBLIC DISCLOSURE OF PRIVATE FACTS.

A public-disclosure claim requires "(1) the publication, (2) of private facts, (3) that are offensive, and (4) are not of public concern." *Cape Publ'ns, Inc. v. Hitchner*, 549 So. 2d 1374, 1377 (Fla. 1989). The FAC plausibly alleges each element.

### A. Littlejohn Cannot Escape Liability Merely Because He Used the Media to Disseminate Plaintiff's Information.

Littlejohn first argues that he did not "publish" Plaintiff's information because he delivered a dataset to *ProPublica*, which made the ultimate editorial decision to publish. (Doc. 54 at 16–18). That argument elevates form over substance.

"Publicity" for purposes of this tort exists when private information is communicated to the public at large or communicated in circumstances making it substantially certain to become public knowledge. *See Guarino v. Mandel*, 327 So. 3d 853, 864 (Fla. 4th DCA 2021); *Williams v. City of Minneola*, 575 So. 2d 683, 689 (Fla. 5th DCA 1991). *Guarino* is particularly instructive. There, allegations that private financial information was provided to another person with the expectation that the recipient would disclose it to others were treated as sufficient, at the pleading stage, to support the asserted invasion-of-privacy theory. *Guarino*, 327 So. 3d at 864.

The allegations here go further. The FAC alleges that Littlejohn did not accidentally lose data or disclose it to a private individual for an unrelated purpose. He deliberately removed confidential taxpayer information and repeatedly provided it to national media organizations. (Doc. 14 ¶¶ 45, 50, 111–14). The FAC supports the reasonable inference that Littlejohn provided the stolen information to national media

organizations for dissemination, and that is precisely what followed. *Id.* ¶ 50. Littlejohn did not need editorial control over *ProPublica*, or the ability personally to press "publish," to plausibly be responsible for publicizing information he deliberately furnished to the press for public dissemination.

The Motion also relies heavily on Littlejohn's own factual characterization that he did not know which taxpayers were within the dataset, did not control how the information would be used, and did not target Plaintiff individually. (Doc. 54 at 16–18). Those are not allegations of the FAC. They are Littlejohn's competing account of the facts, which cannot be credited over Plaintiff's well-pleaded allegations on a Rule 12(b)(6) motion. The FAC alleges that Littlejohn deliberately accessed and disclosed Plaintiff's confidential tax-return information and knew that his disclosures would expose affected taxpayers to public dissemination. (Doc. 14 ¶¶ 106, 111–16). Those allegations control at this stage.[5]

### B. The FAC Plausibly Alleges Disclosure of Private Information.

The FAC expressly alleges that Plaintiff's tax-return information contains confidential details that were not publicly available and were protected from disclosure by federal law. (Doc. 14 ¶¶ 103–05). Littlejohn's contrary reliance on Plaintiff's Senate financial disclosures and previously released tax returns requires factual comparisons

[5] To the extent Littlejohn asks the Court to consider his extrinsic factual assertions for their truth, rather than exclude them, Rule 12(d) requires that those portions of the Motion be treated as a motion for summary judgment under Rule 56 and that Plaintiff be afforded a reasonable opportunity to present pertinent material. Fed. R. Civ. P. 12(d); *see Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350–51 (11th Cir. 2018) (explaining that the Federal Rules contemplate assessment of a claim "on the pleadings alone or under the summary judgment standard").

the FAC does not resolve. The existence of some public financial information does not establish that the particular IRS information disclosed by Littlejohn was already public. (Doc. 14 ¶¶ 103–08). Littlejohn's argument again depends on materials outside the FAC and asks the Court to draw from them a factual inference directly contrary to Plaintiff's allegations. That is not a proper basis for dismissal under Rule 12(b)(6).[6] Whether those public disclosures contain the same information as the approximately fifteen years of tax information Littlejohn leaked is a factual question the FAC does not resolve and that cannot be decided against Plaintiff at the Rule 12(b)(6) stage.

The same is true of Littlejohn's assertion that *ProPublica* disclosed no sufficiently "sensitive PII" to warrant Plaintiff's claimed damages. (Doc. 54 at 18, 20). That assertion likewise rests on Littlejohn's characterization of materials outside the FAC. Count III is not limited to Social Security numbers or information capable of facilitating identity theft. It protects private facts. The FAC alleges disclosure of confidential financial details and the resulting loss of privacy and personal security. (Doc. 14 ¶¶ 103–10). Littlejohn's characterization of the information disclosed, and his attack on Plaintiff's claimed damages, depend on factual issues that cannot be resolved in his favor at the Rule 12(b)(6) stage.

### C. Public Office Does Not Make Confidential Tax Information a Matter of Public Concern.

[6] The Court may consider qualifying documents under the incorporation-by-reference doctrine where they are central to Plaintiff's claims and their authenticity is undisputed. *See Johnson,* 107 F.4th at 1300. However, that doctrine does not permit Littlejohn to transform outside materials into disputed factual findings in his favor. If the Court considers matters outside the pleadings to resolve Littlejohn's Rule 12(b)(6) arguments on the merits, Rule 12(d)'s conversion requirement applies. *See* Fed. R. Civ. P. 12(d); *Carbone*, 910 F.3d at 1350–51.

Littlejohn's principal merits argument is that Plaintiff is a United States Senator and taxation is a subject of public debate. (Doc. 54 at 18–21). That is far too categorical. The inquiry focuses on the particular information disclosed, not merely whether the broader subject matter is newsworthy. *See Doe v. Univision Television Group, Inc.*, 717 So. 2d 63, 65 (Fla. 3d DCA 1998) (distinguishing between a broadcast topic that was of legitimate public concern and the plaintiff's identity, which was not); *Cape Publ'ns,* 549 So. 2d at 1377. A general subject may be newsworthy while particular private facts revealed in connection with that subject remain protected. *See Doe*, 717 So. 2d at 65. A contrary rule would lead to the untenable result of effectively immunizing those who unlawfully disclose the confidential information of public figures.

Plaintiff does not allege that tax policy or elected officials' financial affairs can never be matters of public concern. He alleges that the specific confidential tax-return information stolen from protected IRS systems was neither public nor required to be disclosed by virtue of his office. (Doc. 14 ¶¶ 103–08). Littlejohn cannot resolve that fact-sensitive inquiry merely by labeling Plaintiff a public official.

*Cape Publications* does not require a different result. There, the Florida Supreme Court stressed that the newspaper had lawfully obtained the information from government officials and that the information had legitimately entered the public domain in connection with judicial proceedings. 549 So. 2d at 1379. The facts alleged here are the opposite. Littlejohn obtained confidential tax-return information through unauthorized access to protected government systems and pleaded guilty to unlawfully

disclosing it. (Doc. 14 ¶¶ 52, 103–108). Thus, *Cape Publications* does not establish as a matter of law that the particular information Littlejohn is alleged here to have leaked was of legitimate public concern.

## V. COUNT IV PLAUSIBLY ALLEGES INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

To plausibly state an IIED claim, a plaintiff must allege intentional or reckless conduct that is sufficiently outrageous, that causes emotional distress, and that the resulting distress is severe. *Gallogly*, 970 So. 2d at 471. The FAC does so.

### A. The Deliberate Abuse of Privileged Access to Confidential IRS Data is Sufficiently Outrageous at the Pleading Stage.

Littlejohn characterizes his conduct as disclosing information about "legal tax loopholes" to journalists. (Doc. 54 at 23). The FAC alleges something materially different: Littlejohn repeatedly abused privileged access to protected IRS systems to extract confidential records and transmit stolen taxpayer information to media organizations, despite knowing that disclosure would expose affected persons, including Plaintiff, to public scrutiny, financial exposure, reputational harm, and significant distress. (Doc. 14 ¶¶ 111–16).

Florida law recognizes that conduct may be particularly outrageous where it involves abuse of a position giving the defendant power to affect another's interests. *Gallogly*, 970 So. 2d at 472. Plaintiff was legally required to provide his tax information to the government (Doc. 14 ¶ 39), and Littlejohn exploited privileged access to steal and disseminate that protected information. Those allegations plausibly satisfy the outrageousness requirement at this stage.

The fact that Littlejohn victimized many taxpayers rather than Plaintiff alone does not make the conduct toward each victim less extreme. Nothing in Florida's IIED elements requires a defendant to conduct an individualized campaign of harassment against a single plaintiff. Intentional or reckless conduct is sufficient where the defendant knew or should have known emotional distress was likely to result. *Gallogly*, 970 So. 2d at 471. The FAC expressly alleges that knowledge. (Doc. 14 ¶¶ 113–16).

**B. Plaintiff Adequately Pleads Emotional Distress.**

Littlejohn argues that Plaintiff fails to plead severe distress because the FAC does not allege medical treatment, inability to work, physical manifestations, or impairment of daily functioning. (Doc. 54 at 24–25). None of those circumstances is itself an element of IIED; the relevant requirement is that the resulting emotional distress be severe. *Gallogly*, 970 So. 2d at 471. The FAC alleges loss of personal security, ongoing concern that fifteen years of confidential financial information may be disseminated again, fear of future misuse, and "substantial, enduring" concern affecting Plaintiff and his family. (Doc. 14 ¶¶ 60, 115, 118–19). Those allegations describe both the nature and duration of Plaintiff's alleged distress, rather than merely reciting the element in conclusory terms.

Furthermore, this case is at the pleading stage. Plaintiff need not attach medical records to his complaint or prove his damages before discovery begins. Therefore, the FAC plausibly alleges both outrageous conduct and resulting distress. Count IV should proceed.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Littlejohn's Motion to Dismiss Counts III and IV. To the extent the Court concludes that venue is improper, Plaintiff respectfully requests transfer rather than dismissal.

Date: August 24, 2026

Respectfully submitted,

*<u>/s/ Nadin Linthorst</u>*
Nadin Linthorst*
New York State Bar No. 5559042
Jessica Furst Johnson
Florida State Bar No. 43929
Dennis Polio*
District of Columbia Bar No. 198054
Lex Politica PLLC
611 Pennsylvania Ave SE #353
Washington, DC 20003
Telephone: 512-354-1785
nlinthorst@lexpolitica.com
jessica@lexpolitica.com
dpolio@lexpolitica.com

**COUNSEL FOR PLAINTIFF**

* Admitted *pro hac vice*