**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

RICHARD LYNN SCOTT,

Plaintiff,

v. Case No. 2:26-cv-00845-KCD-KRH

BOOZ ALLEN HAMILTON INC.,

Defendant.

---

# DEFENDANT BOOZ ALLEN HAMILTON INC.'S MOTION TO DISMISS PLAINTIFF SENATOR SCOTT'S SECOND AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendant Booz Allen Hamilton Inc. ("Booz Allen"), pursuant to Federal Rule of Civil Procedure 12(b)(6), moves to dismiss Plaintiff Richard Lynn Scott's ("Senator Scott") Second Amended Complaint. In support thereof, Booz Allen states as follows:

## INTRODUCTION

The unauthorized disclosure of Senator Scott's tax return information was criminal. Charles Littlejohn used his position as an IRS contractor to steal and disclose the confidential tax return information of wealthy Americans, including Senator Scott. Littlejohn pleaded guilty and is serving the maximum five-year prison sentence. His actions betrayed his co-workers, the public servants with whom he worked, and the taxpayers whose information he stole.

Littlejohn deserves the condemnation he has received. But while Senator Scott is rightly upset about Littlejohn's disclosure of his personal information, this lawsuit

is a misdirected response to that conduct. It seeks to hold Booz Allen responsible for a crime Littlejohn admits he committed alone, for entirely personal reasons, and in direct contravention of his training, Booz Allen's interests, and the IRS protocols designed to prevent such misconduct. Littlejohn used personal devices, private websites, and virtual machines to steal data directly from IRS systems, then destroyed the evidence to conceal what he had done. Booz Allen condemned the crime, cooperated with the Department of Justice ("DOJ") investigation, provided information contributing to Littlejohn's prosecution, and opposed his attempt to evade the maximum sentence.

Not only is Senator Scott's lawsuit misdirected, it comes too late. Based on the facts articulated in his complaint, his claim accrued no later than November 4, 2021—when ProPublica published his "confidential tax return information"—yet he did not file suit until March 2026, more than four months after the statute of limitations expired. That untimeliness alone compels dismissal of the Second Amended Complaint ("SAC").

Senator Scott's negligence claim also fails under Rule 12(b)(6). Having abandoned the hiring, supervision, and retention theories he pleaded in his two prior complaints, Senator Scott now repackages his claim as a negligence claim premised on Booz Allen's alleged failure to "implement and maintain" cybersecurity safeguards. But Senator Scott alleges no physical harm, which is a prerequisite to pleading a "negligent undertaking" claim under Florida law. And his reliance on Booz Allen's contractual obligations (to the IRS) cannot support an independent tort duty. Even if

there were such a duty—and there is not because Booz Allen had no obligation or authority to monitor or control *IRS* data on *IRS* systems—the SAC's conclusory allegations of breach and causation are contradicted by Littlejohn's own sworn admissions that he intentionally designed his scheme to evade the very monitoring Senator Scott says should have caught him.

For the reasons set forth below, Senator Scott's Second Amended Complaint should be dismissed with prejudice.

## BACKGROUND

### I. Littlejohn's Theft of Senator Scott's Tax Return Information.

Plaintiff Richard Lynn Scott is a United States Senator for the State of Florida. SAC ¶ 14.[1] Defendant Booz Allen Hamilton Inc. is a government contractor that provides services to federal agencies, including the IRS. *Id.* ¶ 15.

Littlejohn is the criminal wrongdoer who stole and disclosed Senator Scott's confidential tax return information. *Id.* ¶¶ 4–6. The IRS authorized Littlejohn, pursuant to 26 U.S.C. § 6103(n), to access taxpayer data on IRS databases, and he "received regular training about protecting taxpayer data and about the potential criminal consequences of inspecting or disclosing, without authorization, taxpayer returns and return information." Ex. 1, Factual Basis for Plea ¶¶ 3–4, *United States v. Littlejohn*, No. 1:23-cr-343 (D.D.C. Oct. 12, 2023), ECF No. 9.[2]

---

[1] The facts found in the SAC are assumed true only for purposes of this Motion.

[2] The Court may consider the Factual Basis for Littlejohn's Plea on a motion to dismiss both through judicial notice of public records and because (1) Senator Scott refers to Littlejohn's guilty plea in his complaint, SAC ¶ 40 n.8, (2) the Factual Basis for Littlejohn's Plea is central to Senator Scott's claim, and (3) its "contents are undisputed." *Baker v. City of Madison*, 67 F.4th 1268, 1276 (11th Cir. 2023).

While working at the IRS and on "IRS systems," Littlejohn searched IRS databases for the tax return information of "high-net-worth individuals." SAC ¶¶ 35, 39. These "queries" were "unrelated to any legitimate . . . work task." *Id.* ¶ 38. He thereafter "extracted confidential tax return information belonging to numerous American taxpayers," including that of Senator Scott. *Id.* Littlejohn uploaded this data directly from the IRS databases to a private website. *Id.* ¶¶ 35, 39, 41; Ex. 1 ¶¶ 3, 6. Littlejohn took elaborate steps and used "specialized technical skills" to evade any IRS controls that could "detect and prevent large downloads or uploads from IRS devices or systems." Ex. 1 ¶¶ 6, 11, 15; SAC ¶ 39. He "used two virtual machines (essentially simulated versions of physical computers)" to upload the stolen taxpayer information to a private website. Ex. 1 ¶ 11. He then "promptly destroyed these machines" to "conceal his activities"—in one case, just minutes after stealing a data set. *Id.* ¶¶ 11, 14(b). He deleted "[a]lmost all of the files in [his] user profile on his assigned IRS laptop computer" before returning it to the IRS. *Id.* ¶ 14(a). And he "promptly contacted the domain registration service to cancel the private website's domain registration" after uploading the data. *Id.* ¶ 14(c). In short, Littlejohn "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice," and his conduct was "purposefully calculated, and likely, to thwart the investigation or prosecution of his offenses." *Id.* ¶ 14.

Littlejohn then disclosed the stolen data to reporters, including "substantial volumes of taxpayer information" in "late 2020" to ProPublica. SAC ¶ 40; Ex. 1 ¶ 12. Littlejohn's "disclosure of the tax returns and return information . . . was not

authorized, and was knowing and willful." Ex. 1 ¶ 16. ProPublica then published articles about the tax filings and financial holdings of certain Americans. SAC ¶ 6. One of those articles—titled *How These Ultrawealthy Politicians Avoided Paying Taxes*, published on November 4, 2021—discussed Senator Scott's tax return information. *Id.* ¶¶ 6, 40; Ex. 2. The article included a photograph of Senator Scott and noted that he "declined to comment" on the story. Ex. 2.

Littlejohn was prosecuted for his crime. On October 12, 2023, he pleaded guilty in the United States District Court for the District of Columbia to one count of unauthorized disclosure of tax return information in violation of 26 U.S.C. § 7213(a)(1) and admitted that he had "abused a position of trust" to further his criminal activity. SAC ¶ 42; Ex. 1 ¶ 15. As this Court has observed, the facts of Littlejohn's criminal offense are "settled" and his criminal case "established" the "basic mechanics of his theft." Order at 2, 4 (ECF No. 64).

Littlejohn was sentenced to the five-year statutory maximum prison sentence on January 29, 2024. SAC ¶ 42. Senator Scott appeared at Littlejohn's sentencing hearing and delivered a victim impact statement. *See* Ex. 3, Sentencing Hr'g Tr. at 32:13–34:25, *United States v. Littlejohn*, No. 1:23-cr-343 (D.D.C. Jan. 29, 2024), ECF No. 40.

## II. Senator Scott's Lawsuit Against Littlejohn and Booz Allen.

On March 23, 2026—more than four years after his tax return information was published by ProPublica, and more than two years after Littlejohn's sentencing—Senator Scott filed this lawsuit against Littlejohn and Booz Allen. His original claims

against Booz Allen included (1) "Negligence (Negligent Hiring, Supervision, Retention, and Failure to Safeguard)" (Count I); (2) "Vicarious Liability/Respondeat Superior" (Count II); and (3) "Invasion of Privacy" (Count III). Compl. ¶¶ 86–112 (ECF No. 1). After the Court dismissed Senator Scott's original complaint without prejudice (ECF No. 12), Senator Scott filed a First Amended Complaint ("FAC"), asserting the same three claims against Booz Allen. *See* FAC ¶¶ 86–110 (ECF No. 14). Booz Allen and Littlejohn each moved to dismiss. *See* Booz Allen's Mot. to Dismiss (ECF No. 28); Littlejohn's Mot. to Dismiss (ECF No. 54). Booz Allen argued that Counts I and III of Senator Scott's FAC were barred by Florida's statute of limitations and that he failed to state plausible claims for relief under each theory against Booz Allen. Def. Booz Allen's Mot. to Dismiss at 2–3 (ECF No. 28). Littlejohn argued that this Court lacked personal jurisdiction over him and that venue in the Middle District of Florida was improper. Def. Littlejohn's Mot. to Dismiss at 1, 7–12 (ECF No. 54).

On September 25, 2026, the Court granted in part Littlejohn's motion to dismiss on jurisdictional grounds, severing Senator Scott's claims against Littlejohn and transferring them to the U.S. District Court for the District of Columbia ("D.D.C."). Order at 2, 9 (ECF No. 60). The Court also ordered Senator Scott and Booz Allen to show cause "why the claims against Booz Allen should not also be transferred to D.C.," given that "at least one" of Senator Scott's claims "against Booz Allen [was] contingent on Littlejohn's liability." *See* Order at 1–2 (ECF No. 61).

Seeking to avoid transfer of his claims against Booz Allen, Senator Scott responded to the Court's show-cause order by proposing to "withdraw Counts II and

III as against Booz Allen," and file "an amended complaint that proceeds against Booz Allen only on Count I," which would "eliminate the derivative theories that gave rise to the Court's concern about proceeding with related claims in separate forums." Pl.'s Resp. to Order at 1, 4 (ECF No. 63). Senator Scott described his proposal as "narrow[ing], rather than expand[ing], the case" because his proposed amendment "would not add new claims, parties, or factual theories and would not require Booz Allen to defend against any allegation not already at issue." *Id.* at 3–4. He cited Booz Allen's "fully briefed" motion to dismiss as a reason for this Court to retain his case against Booz Allen, to avoid having that motion "be taken up anew" by a different court. *Id.* at 14.

The Court granted Senator Scott's request to "amend the complaint to dismiss the derivative claims" (Counts II and III) and "proceed only on the direct liability claim" (Count I). Order at 2, 6 (ECF No. 64). In so doing, the Court reasoned that "Senator Scott is not trying to smuggle in different legal theories or force Booz Allen to defend against new allegations. Just the opposite." *Id.* at 3. The Court denied as moot Booz Allen's motion to dismiss the First Amended Complaint. *Id.* at 6.

Senator Scott filed his Second Amended Complaint on October 19, 2026. SAC (ECF No. 65). Although he had proposed simply to "withdraw" Counts II and III of the FAC, the changes to his new pleading extend well beyond removing those two counts. *See* Ex. 4 (Redline Comparison of FAC and SAC). Seeking to avoid the inevitable dismissal of his claim, Senator Scott removed from the SAC certain factual allegations that had appeared in the FAC—including, for example, the fact that he

delivered a victim impact statement at Littlejohn's sentencing hearing. *Compare* FAC ¶ 53 *with* SAC ¶ 42. He also added new allegations about federal regulations allegedly "governing contractor access to confidential taxpayer information" (SAC ¶ 36), as well as Booz Allen's so-called "safeguarding failures" (*id.* ¶¶ 50, 51, 61, 62, 65). And he substantially changed his "negligence" theories—despite previously emphasizing that Count I was the subject of a fully briefed motion to dismiss that was "ripe" for the Court's resolution. Instead of pursuing theories of negligence premised on Booz Allen's "hiring, vetting, supervision, monitoring, and retention of employees," Senator Scott now contends that Booz Allen's negligence derives from its alleged failure to "exercise reasonable care" in its "undertaking [of] information-security responsibilities" and "implementation and maintenance of its cybersecurity safeguards." *Id.* ¶¶ 61, 62. In short, rather than simply dropping derivative claims, the SAC does indeed "smuggle in" different "legal theories" about Booz Allen's supposed negligence. Whether procedurally proper or not, these new claims fail on their merits.

## **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Nor is it enough for a plaintiff to plead facts that are "'merely consistent with' a defendant's liability," as

such allegations fall short of being facially plausible. *Id.* (quoting *Twombly*, 550 U.S. at 557).

Beyond requiring plausible factual allegations, a motion to dismiss under Rule 12(b)(6) is the appropriate vehicle for disposing of stale claims. "Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate if it is apparent from the face of the complaint that the claim is time-barred." *Trump v. Clinton*, 161 F.4th 671, 684 (11th Cir. 2025) (citation modified).

In evaluating a motion to dismiss, the Court's review is not limited to the four corners of the complaint. Courts consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). Under the incorporation-by-reference doctrine, a court may consider evidence if "(1) the plaintiff refers to certain documents in the complaint, (2) those documents are central to the plaintiff's claim, and (3) the documents' contents are undisputed." *Baker*, 67 F.4th at 1276 (citation modified). "Evidence is 'undisputed' in this context if its authenticity is unchallenged." *Id.* And where an incorporated document "is clear and obviously contradicts the plaintiff's alleged facts," courts accept the incorporated document rather than the complaint's account. *Id.* at 1277–78.

## ARGUMENT

Senator Scott's negligence claim fails as a matter of law and should be dismissed with prejudice for two independent reasons. ***First***, it is time-barred. The claim accrued no later than November 2021, when ProPublica published an article discussing

Senator Scott's tax return information, but Senator Scott did not sue until March 2026—months after the four-year limitations period expired. Even accounting for the latest conceivable accrual date—his January 2024 victim impact statement at Littlejohn's sentencing—the two-year period that applies to later-accruing claims still expired before he filed. ***Second***, the SAC's negligence theory fails under Rule 12(b)(6). The SAC does not plausibly allege that Booz Allen owed Senator Scott any independent tort duty, and its allegations of breach and causation are conclusory and contradicted by the Factual Basis for Littlejohn's Plea.

## I. Senator Scott's Negligence Claim Is Time-Barred.

### A. Injury Triggers the Statute of Limitations for Negligence.

Under Florida law, "the time within which an action shall be begun under any statute of limitations runs from the time the cause of action accrues," and "[a] cause of action accrues when the last element constituting the cause of action occurs." Fla. Stat. § 95.031(1). Because the last element of a negligence claim is injury, the limitations period runs from the date of the plaintiff's injury—***not*** from when the plaintiff learns the full extent of his damages or identifies a potential wrongdoer.[3] *See R.R. v. New Life Cmty. Church of CMA, Inc.*, 303 So. 3d 916, 921, 923 (Fla. 2020) (holding that "negligence and respondeat superior claims like the ones at issue here would

[3] While Florida law provides a delayed discovery doctrine for "cases of fraud, products liability, professional and medical malpractice, and intentional torts based on abuse," the Supreme Court of Florida has held that this doctrine does not extend beyond those enumerated categories. *New Life Cmty. Church*, 303 So. 3d at 921 (quoting *Davis v. Monahan*, 832 So. 2d 708, 710 (Fla. 2002)). The delayed discovery doctrine thus does not apply to Senator Scott's negligence claim, as he has already conceded. *See* Pl.'s Resp. to Def.'s Mot. to Dismiss at 10 (ECF No. 32).

accrue at the time of injury" and that "[t]he statutory framework leaves no room for supplemental common law accrual rules"); *McConley v. Wells Fargo Bank, N.A.*, No. 4:24cv484-MW/MAF, 2025 WL 3190880, at *6 (N.D. Fla. Oct. 15, 2025), *report and recommendation adopted*, 2025 WL 3033907 (N.D. Fla. Oct. 29, 2025) ("Plaintiff's claims accrued in 2015 when he suffered injury, not when he ultimately discovered in further detail how the injury was facilitated by his son and others involved in the criminal conspiracy.").

Florida law is equally clear that a plaintiff's ignorance of the identity of the alleged wrongdoer does not delay accrual. *See Int'l Bhd. of Carpenters & Joiners of Am., Local 1765 v. United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus., Local No. 803*, 341 So. 2d 1005, 1006 (Fla. Dist. Ct. App. 1976). Although this may foreclose some claims, "[h]arsh results represent a trade-off which the Legislature has decided it is willing to make in exchange for the burying of stale claims." *Id.* For this reason, "when construing statutes of limitations, courts generally will not write in exceptions when the legislature has not." *Putnam Berkley Grp., Inc. v. Dinin*, 734 So. 2d 532, 533 (Fla. Dist. Ct. App. 1999) (quoting *Fed. Ins. Co. v. Sw. Fla. Ret. Ctr., Inc.*, 707 So. 2d 1119, 1122 (Fla. 1998)).

### B. The Untimeliness of Senator Scott's Negligence Claim Is Apparent on the Face of the Second Amended Complaint.

Senator Scott's own allegations establish that his negligence claim is time-barred. The SAC alleges that Littlejohn "disclosed portions of the stolen data to *ProPublica* and other media outlets" and that "*ProPublica* thereafter published articles

based on that information, including at least one discussing Plaintiff's tax return information." SAC ¶ 6. That article was published on November 4, 2021.[4] Ex. 2. It included a photograph of Senator Scott, described his confidential tax return information in detail, and reported that "Scott declined to comment"—confirming that he was contacted about the story before it ran. *Id.* at 8.

The alleged injury—the unauthorized disclosure of Senator Scott's tax return information—therefore occurred no later than November 4, 2021, and his claim accrued on that date. Fla. Stat. § 95.031(1). "The statute of limitations for negligence claims accruing prior to March 24, 2023, is four years." *McConley*, 2025 WL 3190880, at *6. The limitations period therefore expired on November 4, 2025. Senator Scott did not file this lawsuit until March 23, 2026—more than four months too late.[5]

Even if the Court were to disregard the ProPublica article entirely—and it should not—Senator Scott's negligence claim would still be untimely. Senator Scott delivered a victim impact statement addressing the harm caused by Littlejohn's criminal conduct at Littlejohn's sentencing on January 29, 2024. *See* Ex. 3 at 32:13–

[4] The Court may consider this article on a motion to dismiss because (1) Senator Scott refers to it in the SAC, (2) the article is central to his claims, and (3) its contents are undisputed. *Baker*, 67 F.4th at 1276. Alternatively, the Court may take judicial notice of the publication date of this article on a motion to dismiss as a fact that is not subject to reasonable dispute that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

[5] The SAC's allegation of "ongoing" harm, SAC ¶ 45, cannot save this claim. Courts distinguish between a continuing violation and the continuing effects of a completed violation, and only the former extends the limitations period. *Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003). The SAC alleges that Littlejohn stole and disclosed Senator Scott's tax return information by late 2020. SAC ¶¶ 39–40. Littlejohn's tortious conduct was therefore complete by then. Any ongoing or future harms to Senator Scott—including the continued retention of his data by media organizations or their additional publication of stories—are merely the continuing effects of Littlejohn's completed crime, which do not extend the statute of limitations. *Lovett*, 327 F.3d at 1183.

34:25. Although Senator Scott removed this fact from his Second Amended Complaint (presumably so that he can now argue that the time bar is not "apparent from the face of the complaint," ECF No. 63 at 5 (citation modified)), he cannot plead around a fact he previously alleged by deleting it from his pleading "in order to avoid a dispositive [statute of limitations] defense raised by" Booz Allen. *Castillo v. Fisher Island Club, Inc.*, No. 20-24504-CV, 2021 WL 12313359, at *2 (S.D. Fla. Aug. 2, 2021) (quotation omitted). And in any event, the Court may still take judicial notice of the "transcript of a hearing in another case" on a motion under Rule 12(b)(6). *United States ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811–12 & n.4 (11th Cir. 2015).

By the time Senator Scott appeared at Littlejohn's sentencing to describe his injury, that injury had indisputably occurred. This means his negligence claim accrued—***at the latest***—by January 29, 2024. The statute of limitations for negligence claims accruing after March 24, 2023 is two years. Fla. Stat. § 95.11(5)(a).[6] So even on this accrual date, the limitations period expired on January 29, 2026. Senator Scott waited until March 2026 to file this lawsuit—again, too late.

Attempting to evade these statutory time limits, Senator Scott points to a January 26, 2026 statement by Treasury Secretary Scott Bessent, claiming that the statement was the first time he learned of Booz Allen's alleged negligence.[7] SAC ¶¶ 53–

[6] In 2023, the Florida Legislature reduced the statute of limitations to two years for "[a]n action founded on negligence." Fla. Stat. § 95.11(5)(a). The change affects claims that accrued after March 24, 2023. *See* Act of Mar. 24, 2023, ch. 2023-15, § 28, 2023 Fla. Laws.

[7] Contrary to the Treasury Secretary's statement, the IRS itself had already accepted responsibility for "fail[ing] to prevent" Littlejohn's crimes. *See* Press Release, IRS, *IRS Statement as Part of the Resolution of Kenneth C. Griffin v. IRS, Case No. 22-cv-24023 (S.D. Fla.)* (June 25, 2024),

60. But the fact that Littlejohn was a Booz Allen employee when he stole tax return information was publicly known well before January 2026. That fact was discussed openly at Littlejohn's plea hearing in October 2023. Ex. 5, Plea Hr'g Tr. at 15:23–16:1, *United States v. Littlejohn*, No. 1:23-cr-343 (D.D.C. Oct. 12, 2023), ECF No. 13. It was also widely reported in the months leading up to Littlejohn's sentencing in January 2024 (which Senator Scott attended in person).[8]

But more to the point, these allegations do not fix Senator Scott's timing problem; his supposed "ignorance as to the identity of the potential defendant does not affect" when he "knew that [he] had a cause of action in tort." *Local 1765*, 341 So. 2d at 1006. It is the "occur[rence]" of ***the injury***—not the plaintiff's knowledge of the wrongdoer—that starts the clock. Fla. Stat. § 95.031(1); *New Life Cmty. Church*, 303 So. 3d at 921. And the injury Senator Scott alleges against Booz Allen is the same one he suffered in 2021: the disclosure of his tax return information. His theory is that Booz Allen's negligence allowed Littlejohn to steal and disclose that information; he does not allege any separate ***injury*** caused by Booz Allen. *See* SAC ¶¶ 1–7. Even if Senator Scott could credibly claim that he was previously unaware of Booz Allen's connection to the matter (and he cannot), learning in 2026 of a new potential defendant for an old

https://www.irs.gov/newsroom/irs-statement-as-part-of-the-resolution-of-kenneth-c-griffin-v-irs-case-no-22-cv-24023-sd-fla.

[8] *See, e.g.*, Ex. 6, *IRS Leaker Sought Consultant Role with Express Purpose of Releasing Trump's Tax Returns, DOJ Says*, Fox News (Jan. 17, 2024); Ex. 7, *IRS Leaker Sought Job With Aim of Releasing Trump Tax Returns, DOJ Says*, Wall St. J. (Jan. 16, 2024); Ex. 8, *IRS Ordered to Reveal Contracts That Led to Ken Griffin Tax Leak*, Bloomberg L. (Dec. 1, 2023).

injury does not restart the limitations period. Senator Scott's negligence claim is time-barred and should be dismissed with prejudice.

## II. Senator Scott Fails to State a Claim for Negligence.

In addition to its fatal untimeliness problem, Senator Scott's Second Amended Complaint also fails to state a plausible claim for negligence.

Although Senator Scott previously asserted theories of "negligent hiring, supervision, retention, and failure to safeguard," he has now abandoned those theories. In contravention of his assurances that he would advance no new claims, Senator Scott now focuses on an entirely new theory of general "negligence" premised on Booz Allen's alleged failure to "implement and maintain adequate safeguards" ***on the IRS's own internal systems***, which Littlejohn used to commit his crime. SAC ¶¶ 35, 65. Even as amended, Senator Scott's negligence theory fails because he does not—and cannot—allege that Booz Allen owed him any duty of care, and he offers no facts plausibly establishing breach or causation. *See Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1339 (11th Cir. 2012) (describing the "four elements" of negligence under Florida law as "a duty, breach of that duty, causation, and damages"). Accordingly, Senator Scott's negligence claim should be dismissed under Rule 12(b)(6).

### A. Senator Scott Fails to Establish Any Duty Owed to Him by Booz Allen.

Senator Scott (inaccurately) alleges that Booz Allen owed ***him*** a "duty of reasonable care to implement and maintain" various "safeguards" over the taxpayer data that Littlejohn accessed and stole from IRS systems. SAC ¶ 61. Even setting aside

that Booz Allen had ***no*** authority or ability to control or monitor the IRS systems on which Littlejohn committed his crime, Senator Scott's "negligence" theory fails on multiple fronts.

Senator Scott's allegations suggest that he intends to pursue a new theory that Booz Allen's "undertaking" of "information-security responsibilities" gave rise to a duty of care to "protect against foreseeable harm to affected taxpayers, including Plaintiff." SAC ¶¶ 2, 61. Although Florida law recognizes that someone who "undertakes" to perform a service has a duty to "perform that service carefully," this "common-law undertaker doctrine is limited to *physical harms*, not economic ones." *In re Jan. 2021 Short Squeeze Trading Litig.*, 76 F.4th 1335, 1353 (11th Cir. 2023) (citing Restatement (Second) of Torts §§ 323, 324A (Am. L. Inst. 1965)); *see also Pishevar v. Hotels.com*, No. 24-cv-22081, 2024 WL 4602798, at *5–6 (S.D. Fla. Oct. 29, 2024) (dismissing negligence claim based on "undertaker doctrine" that alleged only "economic harm"); *Rehab. Ctr. at Hollywood Hills, LLC v. Fla. Power & Light Co.*, 299 So. 3d 16, 21 (Fla. Dist. Ct. App. 2020) (a person who undertakes services they should recognize as necessary to protect a third person is liable for *physical harm* (citation omitted)). Senator Scott alleges no physical harm. SAC ¶ 67. That alone forecloses his "undertaking" theory.

The SAC's references to "foreseeability" are also insufficient to establish any duty owed by Booz Allen to Senator Scott, even under a theory of "negligent undertaking." The "duty element" of a negligence claim "focuses on whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a general

threat of harm to others." *Rosenfeld Gallery, LLC v. Truist Bank*, 719 F. Supp. 3d 1270, 1277 (S.D. Fla. 2024) (quoting *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992)). To "determine whether the risk of injury to a plaintiff is foreseeable . . . courts must look at whether it was objectively reasonable to expect the specific danger causing the plaintiff's injury, not simply whether it was within the realm of any conceivable possibility." *Josefsberg v. Uber Techs., Inc.*, No. 22-cv-23961, 2023 WL 5670301, at *4 (S.D. Fla. Aug. 31, 2023) (citation omitted); *see also Saunders v. Baseball Factory, Inc.*, 361 So. 3d 365, 371 (Fla. Dist. Ct. App. 2023) ("Foreseeability must mean something more than awareness of [a] remote possibility[.]").

Senator Scott fails to plead facts demonstrating that it was "objectively reasonable" for Booz Allen to expect that Littlejohn would steal his tax return information. He offers only the conclusory assertion that "[i]nsider misuse of privileged access" was a "foreseeable risk in federal data environments." SAC ¶ 64. In support of that theory, the SAC points only to other data breach "incidents" involving different actors, different systems, and different agencies, including one that happened *after* Littlejohn's theft. SAC ¶¶ 21–30, 48, 64. Those incidents provide no basis, much less an objectively reasonable one, for Booz Allen to anticipate Littlejohn's crime here. *See Pishevar*, 2024 WL 4602798, at *5 ("Generally, no duty exists to prevent the misconduct of third persons."). The SAC does not allege that any prior incident involved Littlejohn, tax return information, data theft from IRS databases, or even Booz Allen's relationship with the IRS more broadly. SAC ¶¶ 21–27. Booz Allen employs thousands nationwide. *Id.* ¶ 15. It is not foreseeable that any given Booz Allen

employee will commit what the SAC calls "the largest known data theft in IRS history" merely because a different employee was involved in a different incident at a different time with a different agency. *Id.* ¶ 5.

The SAC also does not plausibly allege that these incidents are part of a purported "broader pattern of disregarding core obligations" because the SAC fails to allege (1) what these supposedly "core" obligations are, (2) how Booz Allen disregarded its obligations in any one incident, and (3) how the disregard across incidents constitutes a relevant pattern. SAC ¶¶ 29–31. Such abstract risks are insufficient to establish foreseeability under Florida law. *See Grieco v. Daiho Sangyo, Inc.*, 344 So. 3d 11, 23, 26 (Fla. Dist. Ct. App. 2022); *Byndom v. Waffle House, Inc.*, No. 25-11410, 2026 WL 913631, at *7 (11th Cir. Apr. 3, 2026). And the barebones, "fact-free wholly conclusory . . . allegations" that Booz Allen should have foreseen this risk do not make Senator Scott's claims "plausible." *Christie v. Royal Caribbean Cruises, Ltd.*, 497 F. Supp. 3d 1227, 1235–36 (S.D. Fla. 2020).

Even if Senator Scott could demonstrate that Littlejohn's criminal theft and subsequent publication of his tax return information was "foreseeable," he cannot establish that Booz Allen owed him a duty of care "merely because the harm in question was foreseeable." *Saunders*, 361 So. 3d at 369 (citing *Aguila v. Hilton, Inc.*, 878 So. 2d 392, 396 (Fla. Dist. Ct. App. 2004)). Instead, he must demonstrate that Booz Allen's conduct "create[d]" the risk that his tax return information would be stolen from IRS systems. *See id.* Senator Scott's factual allegations fail to demonstrate how any conduct by *Booz Allen* "created" the risk that Littlejohn would steal and leak his

tax return information. The Factual Basis for Littlejohn's Plea—incorporated by reference in the SAC—makes clear that Littlejohn downloaded Senator Scott's tax return information from *IRS systems*, not Booz Allen's, and used private computers, private data storage systems, and private websites to steal and disclose the information he obtained from IRS systems to ProPublica. *See* SAC ¶¶ 43–45; Ex. 1 ¶¶ 3–7, 10–11.[9] In light of those facts, Senator Scott offers no allegations that plausibly establish that *Booz Allen* created a "risk" of unauthorized disclosure when Littlejohn's crime was committed on IRS systems.

Moreover, Senator Scott fails to demonstrate that he falls within the requisite "zone of foreseeable risk." Nowhere does Senator Scott allege that Booz Allen undertook any "voluntary" duty to him (a third party not identified in Booz Allen's contract with the IRS) above and beyond what was required under Booz Allen's contract with the IRS or applicable law. *See Dent v. Dennis Pharm., Inc.*, 924 So. 2d 927, 929–30 (Fla. Dist. Ct. App. 2006) (dismissing negligence claim by plaintiff who failed to allege "any voluntary undertaking" by a pharmacy above what was required by law). Accordingly, he cannot "broaden the zone of foreseeable risk" to encompass every taxpayer whose return information resides on IRS systems. *Id.* at 929. Florida law does not countenance "zone[s] of risk [which] would encompass the entire population of" taxpayers. *Rehab. Ctr.*, 299 So. 3d at 20 (no duty to all "persons and

---

[9] On a motion to dismiss, it is proper for the Court to accept this clear and specific account, which contradicts the generalized allegations of the SAC. *See Baker*, 67 F.4th at 1277–78 (where evidence incorporated by reference in the complaint "obviously contradicts" the plaintiff's allegations, courts "accept the [incorporated evidence's] depiction instead of the complaint's account").

property for which electricity is supplied"); *see also Abad v. G4S Secure Sols. (USA), Inc.*, 293 So. 3d 26, 29–31 (Fla. Dist. Ct. App. 2020) (no duty to prevent decedents from mass shooting by defendant's employee because "zone of risk" did not encompass "general public"). "[A] duty of reasonable care is not owed to the world at large but arises out of a relationship between the parties." *Grieco*, 344 So. 3d at 25. Senator Scott cannot allege such a relationship here because he is situated like every other taxpayer in the United States.

Finally, to the extent Senator Scott relies on Booz Allen's contract with the IRS (to which he is not a party) as the source of any tort "duty," that theory also fails.[10] *See, e.g.*, SAC ¶ 34 ("In performing its federal contracts with the Treasury and the IRS, Booz Allen was responsible for implementing and maintaining safeguards"); *id.* ¶ 50 (alleging "deficiencies . . . in connection with [Booz Allen]'s IRS contractual work"); *id.* ¶ 63 ("Booz Allen breached its duties in implementing and maintaining the safeguards within the scope of its contractual responsibilities[.]"). Florida law does not permit a "cause of action in tort" where the claim alleges only "a breach of contract." *AFM Corp. v. S. Bell Tel. & Tel. Co.*, 515 So. 2d 180, 181 (Fla. 1987) (quoting *Elec. Sec. Sys. Corp. v. S. Bell Tel. & Tel. Co.*, 482 So. 2d 518, 519 (Fla. Dist. Ct. App. 1986)).

[10] Senator Scott's passing reference to federal regulations confirms that each of the alleged "duties" owed by Booz Allen arises from its contract. He cites 26 C.F.R. § 301.6103(n)-1(e)(2)–(3), SAC ¶ 36, which requires government agencies to include provisions about protecting taxpayer data in their ***contracts***. Senator Scott never alleges that Booz Allen violated a statute or regulation—and even if he did, not every regulatory violation creates a privately enforceable negligence duty. *See Est. of Johnson ex rel. Johnson v. Badger Acquisition of Tampa LLC*, 983 So. 2d 1175, 1182–83 (Fla. Dist. Ct. App. 2008) (recognizing a tort duty arising out of federal regulations would "invite an unusual federal encroachment into Florida common law").

Because Senator Scott fails to allege a tort duty owed to him by Booz Allen, his negligence claim should be dismissed.

### B. Senator Scott Does Not Adequately Plead Breach or Causation.

Even assuming the existence of a cognizable duty, the SAC fails to plausibly allege either breach or causation. Each deficiency provides an additional, independent basis for dismissal.

***First***, the SAC does not and cannot adequately plead that Booz Allen "breached" any duty of care. Its breach allegations are boilerplate. Senator Scott alleges Booz Allen breached its duty by "[f]ailing to implement . . . adequate . . . monitoring and anomaly detection systems," "[f]ailing to conduct reasonable audit review of database queries," "[f]ailing to restrict or segment elevated access privileges," and "[f]ailing to detect . . . abnormal or bulk data extraction activity." SAC ¶ 63. But even setting aside that *Booz Allen* is not alleged to have owned, operated, or controlled the *IRS databases* (which were within the exclusive control of the IRS), labels are not facts. These "conclusory" assertions cannot survive a motion to dismiss absent "additional factual allegations" to support them. *Crowe v. Managed Care of N. Am., Inc.*, No. 23-61065-CIV, 2024 WL 6863341, at *6 (S.D. Fla. Aug. 16, 2024).

The SAC's allegations track nearly verbatim the kind of generalized pleading that courts in this Circuit routinely reject. In *Crowe*, for example, the court dismissed a negligence claim where the plaintiffs alleged the defendant failed to "exercise reasonable care and implement adequate security systems, protocols and practices sufficient to protect" individuals' private information and to "detect the [d]ata [b]reach

while it was ongoing." *Id.* The court held that these allegations were "all conclusory," requiring dismissal without "additional factual allegations" to support them. *Id.* The SAC suffers from the same defect. Not one paragraph identifies what specific monitoring protocols were deficient, what specific audit procedures should have been in place but were not, or what specific access-segmentation controls Booz Allen allegedly failed to implement.

The SAC insinuates that because Littlejohn's crimes occurred, Booz Allen's controls must have been deficient. SAC ¶¶ 4, 7. But that reasoning is impermissibly circular. As the *Crowe* court explained, "the existence of a breach, by itself, does not show that systems were inadequate." 2024 WL 6863341, at *6. Littlejohn's conduct—even accepting the SAC's allegation that his crime continued "over an extended period" and without detection, SAC ¶¶ 4, 39—is not itself evidence of *how* Booz Allen breached any duty. The SAC's breach allegations amount to nothing more than the impermissible inference that because harm resulted, the defendant must have been negligent—exactly the kind of post hoc reasoning that *Crowe* rejected. 2024 WL 6863341, at *6; *see also Allgood v. PaperlessPay Corp.*, No. 3:20-cv-516, 2022 WL 846070, at *10–11 (M.D. Fla. Mar. 22, 2022) (dismissing negligence claim in data-breach action where plaintiffs alleged inadequate safeguards of sensitive information but offered no specific factual allegations to make the claim more plausible than any alternative explanation for the breach, and holding that such generalized allegations "raise the possibility" of liability but "do not cross the line from possible to plausible").

***Second***, the SAC does not and cannot adequately plead causation. It alleges Booz Allen could have prevented Littlejohn's crimes with different monitoring systems. *See* SAC ¶ 63. But a "possible" story is not one that is "plausible on its face." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (citation omitted); *see also Sanderson v. Eckerd Corp.*, 780 So. 2d 930, 933 (Fla. Dist. Ct. App. 2001) (merely alleging a computer system "would have detected" dangers is not the same as alleging a defendant acted negligently).

The primary support Senator Scott offers for causation is that "[u]pon information and belief, database logging and audit functionality were capable of recording Littlejohn's repeated access" and that "[r]easonable cybersecurity safeguards" would have identified abnormal access patterns. SAC ¶¶ 50–51. Even setting aside that only the IRS (not Booz Allen) could have implemented such protocols on IRS databases, courts routinely refuse to credit such hypothetical assertions. "Conclusory allegations made upon information and belief are not entitled to a presumption of truth[.]" *Scott v. Experian Info. Sols., Inc.*, No. 18-CV-60178, 2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018) (citation omitted).

The SAC's reliance on Secretary Bessent's statement that Booz Allen allegedly "failed to implement adequate safeguards" fares no better. SAC ¶¶ 55–56. This statement does not explain *how* any alleged safeguard failure caused the disclosure of Senator Scott's tax return information. As the court recognized in *Allgood*, allegations that raise only "the possibility" that a defendant's conduct "could have caused" the plaintiff's harm are "not the same thing as a plausible claim." 2022 WL 846070, at

*11. That is the case here. Senator Scott has not alleged facts making it plausible—rather than merely possible—that different monitoring systems would have stopped Littlejohn.

Worse still, these allegations flatly contradict the Factual Basis for Littlejohn's Plea, which demonstrates that Littlejohn deliberately circumvented the very supervision and detection measures that the SAC alleges would have prevented his crime. *See Baker*, 67 F.4th at 1278. Littlejohn "queried the database using more generalized parameters . . . in order to avoid detection by the IRS." Ex. 1 ¶ 5; *see also* SAC ¶ 39. He "elected to upload the data to a personal, private website . . . to avoid IRS protocols designed to detect and prevent large downloads or uploads from IRS devices or systems." Ex. 1 ¶ 6. He used "virtual machines" to conceal his activities and "promptly destroyed these machines." *Id.* ¶ 11. And he deleted "[a]lmost all of the files in [his] user profile on his assigned IRS laptop computer" before returning it to the IRS, while also canceling the domain registration for his private website. *Id.* ¶¶ 14(a)–(c). In short, the Factual Basis for Littlejohn's Plea shows that Littlejohn was a sophisticated criminal actor who specifically designed his scheme to evade the very monitoring systems Senator Scott now claims would have caught him. The SAC's assertions that "reasonable cybersecurity safeguards" by Booz Allen somehow could have stopped Littlejohn's crimes on IRS systems, SAC ¶ 51, are "particularly strained" given that Littlejohn concealed his crimes even from the IRS by evading IRS security protocols. *J.F. v. Carnival Corp.*, 141 F.4th 1164, 1174 (11th Cir. 2025).

Because the SAC fails to plausibly allege either breach or causation, Senator Scott's negligence claim must be dismissed.

## CONCLUSION

For the foregoing reasons, Booz Allen respectfully requests that the Court dismiss the Second Amended Complaint with prejudice.

Dated: November 9, 2026

Respectfully submitted,

*/s/ A. Lee Bentley, III*
A. Lee Bentley, III
Fla. Bar No. 1002269
Giovanni P. Giarratana
Fla. Bar No. 125848
Sarah A. Chen
Fla. Bar No. 1069100
**Bradley Arant Boult Cummings LLP**
1001 Water Street, Suite 1000
Tampa, Florida 33602
Ph: (813) 559-5500
Fax: (813) 229-5946
Primary E-mail: lbentley@bradley.com
Primary E-mail: ggiarratana@bradley.com
Primary E-mail: schen@bradley.com
Secondary E-mail: jbrandt@bradley.com

*Counsel for Defendant Booz Allen Hamilton Inc.*

**LOCAL RULE 3.01(g) CERTIFICATE**

Pursuant to Local Rule 3.01(g), counsel for Booz Allen Hamilton Inc. conferred with counsel for Plaintiff by email on November 6, 2026, regarding the foregoing motion. Plaintiff opposes the motion.

Dated: November 9, 2026

Respectfully submitted,
*/s/ A. Lee Bentley, III*
A. Lee Bentley, III
Fla. Bar No. 1002269
Giovanni P. Giarratana
Fla. Bar No. 125848
Sarah A. Chen
Fla. Bar No. 1069100
Bradley Arant Boult Cummings LLP
1001 Water Street, Suite 1000
Tampa, Florida 33602
Ph: (813) 559-5500
Fax: (813) 229-5946
Primary E-mail: lbentley@bradley.com
Primary E-mail: ggiarratana@bradley.com
Primary E-mail: schen@bradley.com
Secondary E-mail: jbrandt@bradley.com

*Counsel for Defendant Booz Allen Hamilton Inc.*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 9th day of November 2026, a true and correct copy of the foregoing was electronically filed in the United States District Court, Middle District of Florida, using the CM/ECF system, which will serve all counsel of record.

*/s/ A. Lee Bentley, III*
A. Lee Bentley, III